# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TEXARKANA DIVISION

| | | |
|---|---|---|
| **ESN, LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | **CIVIL ACTION NO. 5:08-CV-20** |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **CISCO SYSTEMS, INC., and** | ) | |
| **CISCO-LINKSYS, LLC,** | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANTS' MOTION TO STAY PENDING REEXAMINATION

Cisco's reply brief confirms that it has grossly underestimated the length of time this case would be delayed if a stay is granted pending final resolution of the *inter partes* reexamination ("IPR") of the '519 Patent. Cisco, therefore, fails to consider, much less rebut, the substantial, undue prejudice to plaintiff ESN that would inherently result. Cisco also fails to demonstrate how it will endure any <u>undue</u> hardship if this litigation proceeds expeditiously as scheduled.

## I. Cisco's Argument Regarding Unreasonable Delay Is Disingenuous

Cisco has used an incorrect interpretation and illogical analysis of the IPR statistics to reach the dubious conclusion that this particular IPR will miraculously be completed in one-quarter of the time of all others. This could be characterized as wishful thinking on Cisco's part, but for the fact that Cisco's conduct clearly shows that it wishes to drag out this conflict and avoid any possibility of an injunction until the later part of the next decade.

The statistics show that contested IPR proceedings are likely to take at least 6.5 years. (ESN Opp. Br. Ex. A.) There is no basis for Cisco's assertion that the present IPR will be completed any faster than the approximately 390 other IPRs to-date, including the 343 that came before the present one. The fact is that since 2001, no IPR has reached a final conclusion through internal and external appeals. (ESN Opp. Br. Ex. A at 1.) The number of IPRs has increased six-fold in the last few years. (*Id*.) If history is any lesson, the rapidly increasing backlog of IPRs indicates that it is far more likely that the IPR of the '519 Patent will languish for longer than the current average pendency of 6.5 years. The IPR process is not working as it was intended and, until Congress and the PTO figure out a way to make it work, the only basis for filing an IPR during litigation is to delay the plaintiff's right to a just and speedy trial.

Cisco's assertion that there is a correlation between the time it takes for the PTO to issue a first office action and the total time it takes to reach final resolution of an IPR is wholly

1

unsupported. Even if this "leap-of-faith" was true, application of the actual statistics to the timeline of the IPR of the '519 Patent to date would lead one to the opposite conclusion than Cisco reached – the IPR of the '519 Patent will take longer than 6.5 years.

Cisco's "faulty" analysis begins with a misrepresentation of ESN's position. Cisco states that: "ESN calculates that the median time to first office action is 18 months." (Cisco Reply at 4.) ESN did not calculate any such statistics. The statistics were calculated by the Institute for Progress and there is nothing in its report that suggests that the median time to a first office action is anywhere near 18 months. These statistics plainly show that the mean time from a request for IPR to a first office action is 4.1 months, **not** 18 months as Cisco asserts. (*See* ESN Opp. Br. Ex. A at 19 (mean time from IPR request to decision to proceed with IPR is 2.4 months; mean time from decision to first office action is 1.7 months; 2.4 + 1.7 = 4.1 months).) Thus, a proper reading of the independent statistical report provides no basis for concluding that the IPR of the '519 Patent (first office action reached at 4 months and 7 days) would not fall squarely within the predicted average pendency of at least 78.4 months.

Assuming, *arguendo*, that a prediction of the total length of an IPR can be made based upon the timing of a first office action, the data suggests that the IPR of the '519 Patent will take longer than the average. 70% of first office actions are issued on the **same day** as the decision to grant an IPR. (ESN Opp. Br. Ex. A at 17.) Indeed, the portion of the MPEP cited by Cisco states that: "In order to further the requirement for special dispatch, the examiner's first Office action on the merits in an *inter partes* reexamination should ordinarily be mailed together with the order for reexamination." (MPEP § 2661.) In this case the first office action was issued June 13, 2008, nearly two months after the request was granted on April 16, 2008. Thus, under Cisco's rationale, the IPR of the '519 Patent will take longer than 78.4 months.

Because Cisco misinterprets the statistics and incorrectly concludes that the IPR will be completed quickly, it has left entirely unrebutted the substantial, undue prejudice to ESN that would be inherent in delaying any trial in this action until 2016 or later. ESN's right to a just and speedy trial would be destroyed. Half of the life of ESN's patent would be gone. Lost evidence, fading memories, aging trial counsel and even deceased witnesses would hinder ESN's ability to present the case that it brought before this Court. Contrary to Cisco's assertion, the availability of money damages cannot cure these issues. In direct contradiction to Cisco's arguments to this Court, Cisco V.P. and General Counsel, Mark Chandler, testified before Congress that the Supreme Court in its recent *eBay* decision "rejected the district court's 'categorical[]' rule that a patent holder's 'lack of commercial activity in practicing the patents' and 'willingness to license its patents' sufficed to demonstrate that the patent holder would not suffer irreparable harm in the absence of an injunction." (ESN Op. Br. Ex. C at 7.)

## II. ESN Will Suffer A Tactical Disadvantage

Cisco argues that "[t]here is no obstacle to ESN collecting and submitting to the PTO whatever evidence it desires." (Cisco Reply at 5.) This statement ignores the fact that much of the evidence that ESN may need to rebut Cisco's assertion that the inventions of the '519 Patent are obvious is in Cisco's possession.

The secondary considerations of non-obviousness include the commercial success of the inventions as embodied in an infringer's products. Relevant facts will include the technical details of Cisco's products from which infringement may be proven, the amount of money Cisco is making on these products (i.e., the magnitude of success of the inventions) and Cisco's understanding of what features of the accused products are driving the success. Evidence that Cisco recognized an unsolved problem, that it failed in its attempts to solve the problem, and that

it ultimately copied the invention is also highly relevant to the obviousness question. This information is undoubtedly confidential and exclusively in Cisco's possession. Even if the PTO was a competent forum for weighing this evidence,[1] ESN's inability to get the evidence as part of discovery in this litigation, would operate as a severe tactical disadvantage.

**III.    A Stay Will Not Provide The Benefit Of Issue Simplification**

Cisco's reply brief misstates ESN's position regarding whether a stay is likely to provide any benefit to weigh against the obvious prejudice that ESN will suffer. Even Cisco's brief is internally inconsistent on this point. In the second sentence of its reply, Cisco states that ESN "agrees that reexamination will either completely resolve this case or, at a minimum, dispose of all of Cisco's printed publication invalidity defenses." (Cisco Reply at 1.) Then in the first sentence of section I, it states that "ESN contends that a stay will neither simplify the case nor preserve judicial resources." (Cisco Reply at 1.) Only the latter is true. As pointed out in ESN's opposition brief, in addition to the 13 prior art references asserted in the IPR, Cisco has identified over 100 additional alleged prior art products in its P.R. 3-3 invalidity contentions. (ESN Op. Br. Ex. B at 5-7.) The raw numbers alone – 13 items of prior art out of 113 – indicate that at best there would be only a *de minimus* narrowing of the invalidity issues. Moreover, because the 100-plus products overlap and are cumulative to the 13 prior art patents and printed publications, the invalidity issues that the Court and jury will ultimately be required to resolve will not be materially narrowed by the IPR. For example, two of the prior patents at issue in the IRP are Cisco patents and several of the asserted prior art products are Cisco products, which are purportedly the commercial embodiments of these Cisco patents. Hence, Cisco ultimately plans to make the same invalidity arguments in this litigation as it is making in the IPR – except that

---

[1] The fact that the MPEP tells patent examiners to make findings on the secondary considerations of non-obviousness does not mean that examiners are better equipped to weigh this evidence than are judges and juries.

4

the 100-plus products will be substituted for the 13 patents and printed publications.

In an attempt to bolster its argument that the PTO's initial rejection of the '519 claims in a first office action suggests that the claims will ultimately be eliminated or modified, Cisco quotes this Court: "[T]hat the PTO has issued an Office Action rejecting all 210 claims in both patents indicates that there is a large amount of uncertainty regarding the scope of the claims. *Premier Int'l Assoc. LLC v. Hewlett-Packard Co.*, No. 2:07-cv-395, 2008 WL 2138158 (E.D. Tex. May 19, 2008) (Folsom, J.)" (Cisco Reply at 2, fn 2.) Cisco conveniently omits the first part of this Court's sentence, which highlights the fact that the patentee had already filed several amendments to the patents during the reexamination. It was this fact that the Court deemed persuasive in concluding that the scope of the claims in the reexamined patents would likely be different than those then before the Court, not the mere fact that the first office action rejected all claims. *See Premier Int'l*, 2008 WL 2138158 at \*\*1, 2, 4, 6. ESN has not amended the claims of the '519 Patent and remains confident in the validity of the '519 Patent.

## IV. Cisco's Conduct Before And After the Filing Of This Action Is Relevant

Cisco complains that ESN is interjecting Cisco's pre- and post-litigation conduct for inflammatory purposes only. To the contrary, this conduct demonstrates that Cisco's motive for filing the IPR was to unduly prejudice ESN and deny its right to a just and speedy resolution of this dispute. *Anascape, Ltd. v. Microsoft Corp.*, 475 F. Supp. 2d 612, 615 (E.D. Tex. 2007). ("[T]he Court must be aware that a request for [re]examination can be used as a tactical tool to delay a case and impose costs, with no real expectation that any controversy will be resolved.").

## V. Conclusion

For the reasons stated in ESN's opposition brief and this sur-reply, ESN respectfully requests the Court to deny Cisco's motion to stay.

Respectfully submitted,

 /s/ Peter J. McAndrews
George P. McAndrews
Thomas J. Wimbiscus
Peter J. McAndrews
Gerald C. Willis
McAndrews, Held & Malloy, Ltd.
500 West Madison, Suite 3400
Chicago, IL 60661
Telephone (312) 775-8000
Fax (312) 775-8100
pmcandrews@mcandrews-ip.com

Eric M. Albritton
Texas State Bar No. 00790215
Albritton Law Firm
P.O. Box 2649
Longview, Texas 75606
Telephone (903) 757-8449
Fax (903) 757-2323
ema@emafirm.com

T. John Ward Jr.
Texas State Bar No. 00794818
Ward & Smith Law Firm
111 West Tyler Street
Longview, Texas 75601
Telephone (903) 757-6400
Fax (903) 757-2323
jw@jwfirm.com

**Attorneys for Plaintiff ESN, LLC**

# CERTIFICATE OF SERVICE

I hereby certify that on the date this proof of service is signed below, I served the foregoing:

**PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANTS' MOTION TO STAY PENDING REEXAMINATION**

via the Court's Electronic Filing System, on the following:

Charles K Verhoeven
Quinn Emanuel Urquhart Oliver & Hedges, LLP
50 California St., 22nd Floor
San Francisco, CA 94111
charlesverhoeven@quinnemanuel.com

Victoria F. Maroulis
Quinn Emanuel Urquhart Oliver & Hedges, LLP
555 Twin Dolphin Dr., Suite 560
Redwood Shores, CA 94065
victoriamaroulis@quinnemanuel.com

Sam Baxter
McKool Smith, P.C.
104 E. Houston Street, Suite 300
P.O. Box 0
Marshall, Texas 75670
sbaxter@mckoolsmith.com

Garrett W. Chambers
McKool Smith, P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
gchambers@mckoolsmith.com


Date: August 4, 2008          /s/ Peter J. McAndrews_____
                              Peter J. McAndrews