1          UNITED STATES DISTRICT COURT

2          EASTERN DISTRICT OF TEXAS

3             TEXARKANA DIVISION

4   ESN, L.L.C.                    .  DOCKET NO. 5:08CV20

5   V.                             .  TEXARKANA, TEXAS

6   CISCO SYSTEMS, INC., ET AL     .  AUGUST 26, 2008

7                                  .  10:55 A.M.

8          <u>DEFENDANT'S MOTION TO STAY</u>

9      BEFORE THE HONORABLE DAVID FOLSOM,

10          UNITED STATES DISTRICT JUDGE.

11  APPEARANCES:

12  FOR PLAINTIFF
    ESN, L.L.C.:                   MR. PETER J. MCANDREWS
13                                 MCANDREWS HELD & MALLOY
                                   500 W. MADISON STREET
14                                 SUITE 3400
                                   CHICAGO, IL. 60661
15
                                   MR. THOMAS JOHN WARD, JR.
16                                 WARD & SMITH LAW FIRM
                                   P.O. BOX 1231
17                                 LONGVIEW, TX. 75606-1231

18  FOR DEFENDANT
    CISCO SYSTEMS, INC.:           MS. VICTORIA F. MAROULIS
19                                 QUINN EMANUEL URQUHART
                                   OLIVER & HEDGES - REDWOOD
20                                 555 TWIN DOLPHIN DR.
                                   SUITE 560
21                                 REDWOOD SHORES, CA. 94065

22                                 MR. IVAN WANG
                                   MCKOOL SMITH - DALLAS
23                                 300 CRESCENT COURT
                                   SUITE 1500
24                                 DALLAS, TX. 75201

25

1  COURT REPORTER:                MS. LIBBY CRAWFORD, CSR
                                  OFFICIAL COURT REPORTER
2                                 500 STATE LINE AVENUE
                                  TEXARKANA, TX. 75501
3                                 903/794-4067

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24  PROCEEDINGS RECORDED BY STENOMASK VERBATIM REPORTING,

25  TRANSCRIPT PRODUCED BY CAT SYSTEM.

1                              INDEX

2   THE COURT................................................  4

3   DEFENDANT'S MOTION BY MS. MAROULIS........................  4

4   PLAINTIFF'S RESPONSE BY MR. MCANDREWS..................... 10

5   DEFENDANT'S REPLY BY MS. MAROULIS........................ 21

6   THE COURT................................................ 24

7   REPORTER'S CERTIFICATION................................. 25

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        <u>P R O C E E D I N G S</u>

2                TEXARKANA, TEXAS

3                AUGUST 26, 2008

4        (OPEN COURT)

5            THE COURT: PLEASE BE SEATED.  GOOD MORNING.  WE ARE

6   HERE ON A MOTION TO STAY PENDING REEXAMINATION.  I HAVE GIVEN

7   EACH SIDE FIFTEEN MINUTES.  ARE YOU READY TO GO FORWARD?

8            MR. WANG: YES, YOUR HONOR.

9            THE COURT: YOU MAY RESERVE SOME TIME.  ARE

10  PLAINTIFFS READY TO GO FORWARD, OR PLAINTIFF?

11           MR. MCANDREWS: YES, SIR.

12           THE COURT: VERY WELL, YOU MAY PRESENT YOUR MOTION,

13  AND RESERVE SOME REPLY TIME IF YOU WISH.

14           MR. WANG: IVAN WANG, MCKOOL SMITH ON BEHALF OF

15  CISCO.  WITH ME TODAY ARE VICTORIA MAROULIS WITH QUINN EMANUEL

16  ALSO ON BEHALF OF CISCO, AND MARTA BECKWITH, DIRECTOR OF IP

17  LITIGATION AT CISCO.  VICTORIA WILL BE MAKING THE ARGUMENT.

18           THE COURT: WE ARE STARTING A LITTLE EARLY.  I TRUST

19  EVERYONE IS HERE THAT WE NEED.

20           MS. MAROULIS: YES, YOUR HONOR.  THANK YOU.  GOOD

21  MORNING, YOUR HONOR.  I AM VICTORIA MAROULIS WITH QUINN

22  EMANUEL ON BEHALF OF CISCO AND CISCO-LINKSYS.  THIS IS OUR

23  MOTION TO STAY.  THE MOTION TO STAY SHOULD BE GRANTED BECAUSE

24  REGARDLESS OF THE OUTCOME OF THE INTER PARTES REEXAMINATION

25  CURRENTLY PENDING BEFORE THE PTO, THE CASE WILL BE GREATLY

1    SIMPLIFIED.  AT BEST, IT WILL BECOME MOOT IF THE PATENT IS

2    INVALIDATED, OR IT WILL SIMPLIFY THE ISSUES BY REMOVING THE

3    LARGE CHUNK OF CISCO'S INVALIDITY DEFENSE AND AID --

4            THE COURT: HOW LONG DO WE EXPECT THIS PROCESS WOULD

5    TAKE?

6            MS. MAROULIS: YOUR HONOR, I HAVE NO WAY TO EXACTLY

7    ASCERTAIN HOW LONG THE PTO WILL TAKE.  THE STATISTICS THE PTO

8    ISSUED IN MARCH OF THIS YEAR SUGGEST THAT THE MEDIAN TIME IS

9    ABOUT 29 MONTHS FOR A REEXAM TO GO THROUGH.  BUT IT COULD BE

10   FASTER.  IT COULD BE A LITTLE BIT LONGER AS WELL.  SO FAR WE

11   ARE ENCOURAGED BY HOW FAST THE PROCEEDINGS HAVE BEEN GOING

12   THROUGH.  WE FILED THE REEXAM IN FEBRUARY.  THE INITIAL

13   DETERMINATION WAS MADE IN APRIL TO PROCEED, AND IN JUNE THE

14   OFFICE ACTION ISSUED REJECTING ALL CLAIMS THAT WE MOVED ON, ON

15   MULTIPLE GROUNDS.

16           THE COURT: MR. WARD WAS HERE YESTERDAY AWAITING A

17   JURY VERDICT, AND WE HAD A MOTION TO STAY FILED BY THE

18   PLAINTIFF, OPPOSED BY THE DEFENDANT.  I THOUGHT I HAD SEEN

19   EVERYTHING, BUT YESTERDAY WAS A FIRST.

20           MS. MAROULIS: YES, YOUR HONOR, THERE ARE SOME CASES

21   --

22           THE COURT: MORE TRADITIONAL TODAY.

23           MS. MAROULIS: THAT'S CORRECT.  THERE ARE SOME CASES

24   IN WHICH THE PLAINTIFF SEEKS THE STAY, BUT MORE TRADITIONALLY,

25   IT'S THE PARTY WHO SOUGHT THE REEXAMINATION.

1          THE COURT: RIGHT.

2          MS. MAROULIS:  IN THIS COURT AND IN OTHER COURTS IN

3  THIS DISTRICT THERE IS BASICALLY A THREE-PART ANALYSIS THE

4  COURT GOES THROUGH TO DETERMINE WHETHER THE STAY IS

5  APPROPRIATE.  FIRST, WHETHER THE STAGE OF THE LITIGATION

6  FAVORS THE IMPOSITION OF THE STAY.  IN OTHER WORDS, IS IT

7  EARLY ENOUGH IN THE CASE THAT THE STAY MAKES SENSE?  SECOND,

8  WHETHER THE STAY WOULD SIMPLIFY THE CASE UPON PTO'S

9  DETERMINATION.  AND FINALLY, WHETHER THERE IS UNDUE PREJUDICE

10 TO THE NONMOVING PARTY, IN THIS CASE, PLAINTIFF ESN.

11         THE FIRST FACTOR CLEARLY FAVORS GRANTING THE MOTION TO

12 STAY.  THIS CASE IS IN THE VERY EARLY STAGES.  WE JUST HAD A

13 STATUS CONFERENCE BEFORE YOUR HONOR IN APRIL AND THE TRIAL IS

14 SCHEDULED ALMOST TWO YEARS FROM NOW IN APRIL 2010.  THE CLAIM

15 CONSTRUCTION HEARING STARTS IN JUNE OF NEXT YEAR, 2009, AND

16 CRUCIALLY THE PARTIES HAVE NOT YET STARTED THE CLAIM

17 CONSTRUCTION PROCESS UNDER THE LOCAL RULES.  AND A NUMBER OF

18 COURTS NOTED THAT THE STAY IS PARTICULARLY APPROPRIATE WHERE

19 THE PARTIES HAVE NOT YET COMMENCED CLAIM CONSTRUCTION.

20         WE HAVE COMMENCED CERTAIN DISCOVERY BUT NO DEPOSITIONS

21 HAVE TAKEN PLACE, AND THERE HAS BEEN MINIMAL PROCEEDINGS IN

22 THIS CASE SINCE IT WAS FILED IN JANUARY.

23         THE SECOND FACTOR IS WHETHER THE STAY WOULD SIMPLIFY THE

24 CASE, AND THIS IS THE CRUX OF OUR MOTION, WHICH IS WE BELIEVE

25 THAT THE PATENT IS INVALID AND THAT THE PTO WOULD AGREE WITH

1    US AND FINALLY REJECT THE CLAIMS.  IF WE ARE CORRECT AND IF

2    THAT'S THE CASE, THIS COURT AND THE JURY IN THIS COURT AND THE

3    PARTIES WOULD NOT NEED TO SPEND THE RESOURCES INTERPRETING THE

4    CLAIMS AND PROCEEDING WITH A COSTLY PATENT LITIGATION THROUGH

5    TRIAL AND POST-TRIAL PROCEEDINGS.

6         THERE ARE SOME STATISTICS SUGGESTING THAT INTER PARTES

7    REEXAMS RESULT IN 76 PERCENT OF REJECTION.  THAT'S THE

8    STATISTICS THAT ESN ATTACHED TO THE PLEADINGS AS EXHIBIT R.

9    BUT MORE IMPORTANTLY, WE BELIEVE THAT THE INITIAL OFFICE

10   ACTION SHOWS THAT THE PATENT OFFICE SEES THIS PATENT AS A

11   CANDIDATE FOR CANCELING THE CLAIMS.

12        BUT IT'S NOT -- IT WOULDN'T JUST SIMPLIFY THE CASE IF THE

13   PATENT IS COMPLETELY CANCELED.  THE REEXAMINATION PROCEEDING

14   ALSO PROVIDES THE COURT WITH GUIDANCE ON CLAIM CONSTRUCTION

15   BECAUSE IT'S BASICALLY THE CONTINUATION OF PROSECUTION.  AND

16   EVEN IF THE CLAIMS ARE NOT CANCELED, THERE WILL BE MORE

17   GUIDANCE FROM THE PTO IN THE PARTIES' STATEMENTS ON THE

18   VARIOUS ESTOPPEL ISSUES AND CLAIM TERMS.

19        ALSO IMPORTANT IS THAT THE CLAIMS TEND TO CHANGE

20   THROUGHOUT THE REEXAMINATION.  AND TO QUOTE JUDGE CRAVEN IN

21   THE *ECHOSTAR* DECISION, IT WOULD BE EGREGIOUS WASTE OF THE

22   COURT'S TIME TO HAVE TO CONSTRUE THE CLAIMS ONLY TO LEARN

23   SEVERAL MONTHS LATER THAT THE CLAIMS HAVE CHANGED AS A RESULT

24   OF AMENDMENT OR SOME OTHER PROCEEDINGS UNDER THE REEXAM

25   PROCESSES.

1    FINALLY, IF WE ARE WRONG AND IF PTO DOES NOT AGREE WITH

2  US AND DOES NOT CANCEL THE CLAIMS BUT IN FACT ISSUE THEM AS

3  THEY ARE NOW, THE CASE WILL BE GREATLY SIMPLIFIED AS WELL

4  BECAUSE CISCO AT THAT POINT WILL BE ESTOPPED FROM RELYING ON

5  ANY PRINTED PUBLICATION THAT WAS OR COULD HAVE BEEN PRESENTED

6  TO THE PATENT OFFICE.  AND IN THEIR PAPERS ESN SEEMS TO

7  SUGGEST A DICHOTOMY BETWEEN THIRTEEN PRINTED PUBLICATIONS THAT

8  WE PRESENTED TO THE PTO AND THE PRODUCTS.  WHAT THEY DON'T

9  SEEM TO REALIZE IS THAT WE WILL BE BARRED FROM ANY PRINTED

10  PUBLICATION WHETHER WE SHOW THEM TO THE PTO OR NOT.

11    FOR EXAMPLE, IF UPON THE CONCLUSION OF THE PTO

12  PROCEEDINGS WE WERE TO FIND AN ARTICLE THAT WORD FOR WORD HAD

13  THE SAME CONTENT AS THE PATENT AT ISSUE HERE, YOUR HONOR, WE

14  COULD NOT PRESENT IT TO THE COURT BECAUSE WE ARE BOUND NOT

15  ONLY BY WHAT WE PRESENTED TO THE PTO BUT WHAT WE COULD HAVE

16  PRESENTED TO THE PTO.  SO ONCE AGAIN, THAT FACTOR ALSO WEIGHS

17  IN FAVOR OF STAYING THIS ACTION.

18    FINALLY, WE NEED TO LOOK AT WHETHER THE STAY WOULD

19  PREJUDICE ESN OR UNDULY PREJUDICE ESN.  AND A NUMBER OF COURTS

20  HAVE CONSIDERED THE SITUATION WHERE AS HERE ESN'S MAIN

21  BUSINESS IS THE ENFORCEMENT OF THE PATENT.  IN OTHER WORDS,

22  THEY ARE NOT A COMPETITOR IN THE MARKETPLACE WHO OTHERWISE

23  COULD BE LOSING THE MARKET SHARE, LOSING CUSTOMERS, AND SEEING

24  ITS PRICES DECREASE.  IN THIS CASE, AS IN OTHERS, THE COURTS

25  HAVE CONSIDERED ESN IS AN ENTITY THAT CAN BE COMPENSATED VIA

1  MONETARY DAMAGES IF THE CASE IS STAYED AND IF THERE IS A DELAY

2  AND IF ULTIMATELY THE PTO CONFIRMS THE PATENT.  FOR THAT

3  REASON A NUMBER OF COURTS HAVE DECIDED THAT DELAY ITSELF IS

4  NOT ENOUGH OF A PREJUDICE, ESPECIALLY IN INSTANCES WHERE THE

5  PLAINTIFF IS A NON-PRACTICING ENTITY.

6       I WOULD LIKE TO HAVE THE COURT'S ATTENTION FOCUSED ON A

7  COUPLE OF CASES WE CITED IN OUR PAPERS, SPECIFICALLY *ALZA V.*

8  *WYETH* AND *KRAFT V. PROCTOR & GAMBLE*.  BOTH OF THOSE CASES

9  INVOLVED INTER PARTES REEXAM PROCEEDINGS AND IN BOTH OF THEM

10 THERE WERE COMPETITORS ON EACH SIDE, WHICH MEANS THAT THE

11 COURT DECIDED THERE WAS NO PREJUDICE EVEN WHEN THERE WAS A

12 COMPETITIVE ENTITY ON THE OTHER END.

13      BY CONTRAST, IF THE STAY IS NOT ENTERED, CISCO WOULD BE

14 SEVERELY PREJUDICED BECAUSE WE WOULD HAVE TO LITIGATE THIS

15 CASE TO A CONCLUSION AND IT COULD BE AN ENORMOUS WASTE OF THE

16 COURT AND PARTIES' RESOURCES.  AND THE STAY SEEMS TO BE THE

17 BEST WAY TO PROCEED HERE.

18      IN CONCLUSION, I WOULD LIKE TO SAY THAT ESN CANNOT REALLY

19 POINT TO ANY CASE THAT IS SQUARELY ON POINT WITHOUT FACTS

20 WHERE THE STAY HAS BEEN DENIED.  AND BY --

21           THE COURT: I WAS READING THROUGH THE PAPERS AND

22 PLAINTIFF'S CITE TO MR. CHANDLER'S TESTIMONY BEFORE CONGRESS

23 ABOUT THE UNFAIRNESS OF THESE LONG DELAYS WHEN CISCO IS

24 INVOLVED IN THE REEXAM PROCESS.  WHAT IS YOUR REPLY TO THAT?

25           MS. MAROULIS: YOUR HONOR, MR. CHANDLER'S TESTIMONY

1   WAS TAKEN A BIT OUT OF CONTEXT BECAUSE IN FACT BEFORE CONGRESS

2   HE IS PROPOSING THE POST-GRANT PROCEEDINGS AND HE IS SAYING

3   THAT IT'S A GOOD THING TO HAVE THESE PROCEEDINGS IN THE PTO.

4   HE IS MERELY SAYING THAT, YES, AS A PATENT HOLDER YOU DON'T

5   WANT THIS DELAY, BUT YOU HAVE TO BALANCE THAT AGAINST OTHER

6   FACTORS.

7           THE COURT: I TRY TO LOOK AT THESE ALL ON THE MERITS

8   OF EACH INDIVIDUAL CASE.  I HAVE YET TO SEE MR. BAXTER UP HERE

9   IN A CASE THAT MCKOOL SMITH IS ON THE PLAINTIFF'S SIDE THAT

10  DIDN'T OPPOSE THESE, BUT I WILL TRY TO LOOK AT IT

11  INDIVIDUALLY.

12          MS. MAROULIS: WE APPRECIATE THAT, YOUR HONOR.  IT'S

13  AN INDIVIDUAL CASE BY CASE ANALYSIS.  AND TURNING BACK TO OUR

14  CASE, THIS IS A CASE WHERE WE HAVE INTER PARTES PROCEEDING AND

15  ESTOPPEL THAT GOES WITH IT.  WE HAVE A CASE WITH A SINGLE

16  DEFENDANT WHICH SETS THIS CASE APART FROM CASES LIKE *MP3* WHERE

17  JUDGE WARD DECLINED THE STAY BECAUSE THERE WERE MULTIPLE

18  DEFENDANTS, NOT ALL OF WHOM WERE BOUND BY THE ESTOPPEL.  THE

19  CASE IS IN EARLY STAGES, WOULD HAVE A NONCOMPETITOR ENTITY ON

20  THE OTHER SIDE.  AND ALL OF THE FACTORS THAT I JUST WENT

21  THROUGH FAVOR THE STAY.

22          YOUR HONOR, I'D LIKE TO RESERVE MY REMAINING TIME FOR THE

23  REBUTTAL.

24          THE COURT: RESPONSE.

25          MR. MCANDREWS: THANK YOU, YOUR HONOR.  MY NAME IS

1   PETER MCANDREWS.  I REPRESENT THE PLAINTIFF, ESN.  WITH ME I

2   HAVE JOHNNY WARD AND BRIAN HOLLANDER, THE CLIENT

3   REPRESENTATIVE.

4       I HAVE A BRIEF POWERPOINT PRESENTATION, BEAR WITH ME

5   HERE, TO HIGHLIGHT SOME OF THE POINTS OF OUR ARGUMENTS.  ESN

6   OBVIOUSLY OPPOSES CISCO'S MOTION FOR A STAY.  AS THIS COURT

7   HAS POINTED OUT, CISCO'S MOTIVE TO UNDULY DELAY THIS CASE IS

8   HIGHLY RELEVANT TO THE CIRCUMSTANCES OF THE CASE.  THE COURT

9   MUST BE AWARE THAT THE REEXAMINATION CANNOT BE USED AS A

10  TACTICAL TOOL, AND WE BELIEVE THAT THE HISTORY OF THIS CASE

11  SHOWS THAT THAT IS EXACTLY WHAT CISCO IS USING THE

12  REEXAMINATION FOR.

13      AS YOU POINTED OUT, YOUR HONOR, CISCO HAS RECOGNIZED THAT

14  IT UNDERSTANDS THE IMPACT OF THE ACTIONS.  IT UNDERSTANDS THAT

15  BY SEEKING A REEXAMINATION THEY CAN UNDULY DELAY THE CASE.

16  MARK CHANDLER, THE VICE PRESIDENT GENERAL COUNSEL OF CISCO, IN

17  TESTIFYING BEFORE CONGRESS STATED THAT THE PRINCIPLE THAT

18  JUSTICE DELAYED IS JUSTICE DENIED, AND IT APPLIES WITH EQUAL

19  FORCE TO THE PATENT PROCESS.

20      WE BELIEVE THAT MR. CHANDLER WAS SPEAKING IN TERMS OF THE

21  PREJUDICE THAT THEY MAY SUFFER AND HE WANTED TO BALANCE THAT,

22  OF COURSE. AS MS. MAROULIS POINTED OUT, THAT THEY NEED TO

23  BALANCE THAT AGAINST THE VALUE THAT CAN APPLY TO THE INTER

24  PARTES REEXAMINATION PROCESS.  HOWEVER, AT THE TIME WHEN HE

25  WAS SPEAKING, THEY WERE NOT SPEAKING IN THE CONTEXT OF THE

- 12 -

1  REEXAMINATION PROCESS AS IT EXISTS TODAY.  AND IT IS BROKEN.

2  THE REEXAMINATION PROCESS IS NOT WORKING THE WAY CONGRESS

3  INTENDED.  IT IS TAKING MUCH LONGER.

4      THIS IS A BRIEF TIMELINE OF CISCO'S DILATORY CONDUCT THAT

5  LED UP TO THIS LAWSUIT.  CISCO WOULD HAVE YOU BELIEVE THAT

6  THIS LAWSUIT BEGAN ON JANUARY 31ST, OR THAT THE DISPUTE BEGAN

7  ON JANUARY 31ST AND THEY SUGGEST THAT THIS CASE IS YOUNG.

8  HOWEVER, IF YOU LOOK AT THE OCTOBER 16TH, 2007 DATE WHEN WE

9  ORIGINALLY FILED OUR COMPLAINT, THIS CASE IS NEARLY A YEAR

10 OLD.  HOWEVER, ALL THE WAY BACK TO AUGUST 2006, ESN APPROACHED

11 CISCO TO DISCUSS LICENSING OR POSSIBLE PURCHASE OF THE '519

12 PATENT, OR THE APPLICATION THAT WAS PENDING AT THE TIME.

13     THROUGHOUT THE PERIOD BETWEEN AUGUST AND MARCH OF 2007

14 ESN CONTINUED TO ATTEMPT TO ENGAGE CISCO IN NEGOTIATIONS.  IN

15 MARCH 2007, ESN RECEIVED AN ORIGINAL NOTICE OF ALLOWABILITY OF

16 THE CLAIMS OF THE '519 PATENT AND INFORMED CISCO OF THAT FACT.

17 AND IT WAS ONLY AFTER THAT TIME THAT CISCO PLACED US IN TOUCH

18 WITH BAKER AND BOTTS FOR THE STATED PURPOSE OF GETTING DOWN TO

19 BUSINESS AND TALKING ABOUT THE MERITS OF OUR CLAIM AGAINST

20 CISCO.

21     ON MAY 26 BAKER AND BOTTS SENT A LETTER IDENTIFYING PRIOR

22 ART TO US THAT SHOULD HAVE BEEN CITED TO THE PTO.  IT WAS A

23 THINLY VEILED ATTEMPT TO SET UP AN INEQUITABLE CONDUCT

24 DEFENSE.  WE RECOGNIZED THAT, AND SO IN RESPONSE TO THAT WE

25 TURNED AROUND AND CITED THAT PRIOR ART TO THE PATENT OFFICE.

1  ON JUNE 8 WE INFORMED CISCO OF THAT FACT, THAT THE PRIOR ART

2  HAD BEEN CITED.  HOWEVER, BECAUSE A NOTICE OF ALLOWABILITY HAD

3  ALREADY BEEN RECEIVED, WE HAD TO FILE WHAT'S CALLED A REQUEST

4  FOR CONTINUED EXAMINATION AND THAT DELAYED THE ISSUANCE OF THE

5  PATENT FOR AT LEAST FOUR, FIVE, POSSIBLY AS LONG AS SIX

6  MONTHS.

7      WHAT'S IMPORTANT ABOUT THIS PERIOD OF TIME IS THAT AFTER

8  JUNE 8TH WHEN WE NOTIFIED CISCO THAT WE HAD CITED THE PRIOR ART

9  THAT THEY INFORMED US OUGHT TO BE CITED TO THE PATENT OFFICE,

10  THEY WENT ESSENTIALLY RADIO SILENT ON US.  THEY DID NOT

11  PROVIDE ANY ADDITIONAL PRIOR ART DURING THE TIME THAT THE

12  PATENT WAS PENDING BETWEEN JUNE AND OCTOBER OF 2007.  IF THEY

13  HAD PROVIDED IT TO US THEN WE COULD HAVE PROVIDED IT TO THE

14  PATENT OFFICE THE FIRST TIME AROUND, AND IF AS THEY BELIEVE

15  THE PRIOR ART WOULD INVALIDATE THE CLAIMS, WE DON'T BELIEVE

16  THAT IT WOULD; HOWEVER, THE PATENT OFFICE WOULD HAVE HAD AN

17  OPPORTUNITY TO INVESTIGATE THAT THE FIRST TIME AROUND WITHOUT

18  HAVING TO GO THROUGH A REEXAMINATION PROCESS.

19      SO DURING THIS TIME AFTER WE SENT THEM A LETTER, THE

20  LETTER BY THE WAY ALSO IDENTIFIED IN CLAIM CHART FORM HOW THEY

21  INFRINGED, CISCO DID NOT RESPOND IN ANY WAY.  SO ON OCTOBER

22  16TH, WHEN THE PATENT ISSUED WE FILED SUIT IN TEXAS.  THEY

23  FILED A CORRESPONDING SUIT IN THE DISTRICT OF CONNECTICUT.

24  AND ULTIMATELY THE PARTIES AGREED TO DISMISS THOSE SUITS.

25  HOWEVER, CISCO HAD REPRESENTED TO US THAT THEY WANTED TO WORK

1   IN EARNEST TO SETTLE THE DISPUTE. IN FACT, THAT'S WHAT THEIR

2   LEAD COUNSEL TOLD THE DISTRICT COURT IN CONNECTICUT. AND THE

3   QUOTE IS THEY WANTED TO WORK IN EARNEST TO SETTLE THE DISPUTE

4   OVER A 90-DAY STAND DOWN PERIOD. SO WE AGREED VOLUNTARILY TO

5   DISMISS OUR CASE HERE.

6       DURING THAT 90-DAY STAND DOWN PERIOD, HOWEVER, CISCO

7   REFUSED TO DISCLOSE ANY FINANCIAL INFORMATION TO US. THEY

8   CONTINUED TO REFUSE TO IDENTIFY A NON-INFRINGEMENT DEFENSE.

9   AND THEY ONLY PROVIDED TWO ITEMS OF PRIOR ART TO US AS AN

10   ALLEGED INVALIDITY CASE. WHAT'S SIGNIFICANT ABOUT THAT IS

11   THAT LESS THAN A WEEK AFTER WE REFILED THE SUIT ON JANUARY

12   31ST, THEY FILED A 400-SOME-ODD PAGE REQUEST FOR INTER PARTES

13   REEXAMINATION THAT NAMED 13 ITEMS OF PRIOR ART.

14       YOUR HONOR, I SUGGEST THAT THEY SANDBAGGED US. THEY

15   WANTED TO WAIT. THEY KNEW THAT THEY WERE GOING TO USE THE

16   INTER PARTES REEXAMINATION AS A TOOL TO DELAY THE CASE.

17   WHAT'S SIGNIFICANT ABOUT THIS IS THAT THERE WAS A 14-MONTH

18   PERIOD AFTER WE NOTIFIED THEM ABOUT THE PENDING PATENT

19   APPLICATION THAT THEY COULD HAVE PROVIDED PRIOR ART TO US. IT

20   COULD HAVE BEEN SUBMITTED TO THE PATENT OFFICE. IT COULD HAVE

21   BEEN FULLY CONSIDERED BEFORE THE PATENT ISSUED THE FIRST TIME.

22       MS. MAROULIS MENTIONED THAT THE -- THAT INTER PARTES

23   REEXAMINATIONS ARE TAKING SOMEWHERE ON THE ORDER OF 28 MONTHS.

24   HOWEVER, A RECENT STUDY PUBLISHED IN APRIL OF THIS YEAR SHOWS

25   THAT THAT NUMBER IS HIGHLY MISLEADING. THE 28-MONTH PERIOD

1    APPLIES ONLY TO INTER PARTES REEXAMINATIONS WHERE EITHER THE

2    PATENTEE DID NOT PARTICIPATE AT ALL IN THE PROCESS, AND THERE

3    ARE 10 OF THOSE OUT OF 16 TOTAL REEXAMINATIONS THAT HAVE BEEN

4    COMPLETED OUT OF THE NEARLY 400 THAT HAVE BEEN FILED TO DATE.

5    SO THERE ARE ONLY 16 THAT HAVE BEEN COMPLETED.  OF THOSE 16,

6    10 OF THEM ARE A SITUATION WHERE THE PATENTEE DID NOT

7    PARTICIPATE AT ALL.  SO THEY ESSENTIALLY DEFAULTED ON THEIR

8    RIGHTS.  THE OTHER SIX REPRESENT A SITUATION WHERE THE

9    PATENTEE PARTICIPATED INITIALLY BUT DID NOT PARTICIPATE IN ANY

10   APPEALS PROCESS INTERNAL TO THE PATENT OFFICE.  THAT'S WHERE

11   THEY GET THE 28-MONTH FIGURE.

12        THE ACTUAL FIGURES ARE MUCH LONGER THAN THAT.  IN FACT,

13   NO INTER PARTES REEXAMINATION HAS BEEN COMPLETED TO DATE.  THE

14   NUMBERS IN THE INSTITUTE FOR PROGRESS REPORT SHOW THAT THE

15   AVERAGE PENDENCY IS 78.4 MONTHS.  HOWEVER, YOUR HONOR, THAT

16   WAS IN APRIL.  BY NOW, FOUR MONTHS LATER, THAT NUMBER IS UP TO

17   82 MONTHS.  THERE IS STILL TO DATE, AND WE UPDATED OUR

18   RESEARCH JUST LAST WEEK, TO DATE THERE HAS STILL NOT BEEN A

19   SINGLE INTER PARTES REEXAMINATION THAT HAS BEEN COMPLETED

20   THROUGH THE APPEALS WHERE THE PATENTEE DECIDES TO PARTICIPATE

21   IN ALL STAGES OF THE PROCESS.

22        THE INSTITUTE FOR PROGRESS REPORT PUTS THE CONFIDENCE

23   INTERVAL AT 95 PERCENT ON THE INTER PARTES REEXAMINATION

24   TAKING BETWEEN FIVE AND EIGHT YEARS.  IT APPEARS THAT MAYBE

25   EVEN THAT NEEDS TO BE UPDATED THOUGH BECAUSE THERE STILL HAS

1    NOT BEEN A SINGLE INTER PARTES REEXAMINATION COMPLETED.

2         YOUR HONOR, I PUT THIS DETAILED INFORMATION UP ON THE

3    SCREEN HERE.   THIS IS A DIRECT CUT AND PASTE OUT OF THE

4    INSTITUTE FOR PROGRESS REPORT.   THERE IS A LOT OF INFORMATION

5    HERE.   THE POINT IS THAT THIS REPORT IS HIGHLY DETAILED.   THEY

6    WENT THROUGH REEXAMINATION BY REEXAMINATION.   THEY WENT

7    THROUGH ALL OF THE FILES AND PULLED TOGETHER THIS INFORMATION.

8    SO IT'S A HIGHLY DETAILED REPORT.   WE BELIEVE IT TO BE

9    ACCURATE.

10        THE OTHER SIGNIFICANT POINT THAT CAN BE SEEN ON THIS

11   SLIDE IS THAT WE BELIEVE CISCO MAY HAVE UNINTENTIONALLY

12   MISINTERPRETED THE DATA SHOWN HERE TO SUGGEST THAT OUR INTER

13   PARTES REEXAMINATION, UNLIKE ALL OTHERS, WILL BE COMPLETED IN

14   ONE QUARTER OF THE TIME.   THEY SUGGESTED THAT THE AVERAGE TIME

15   TO A FIRST OFFICE ACTION IN A TYPICAL INTER PARTES

16   REEXAMINATION IS SOMEWHERE ON THE ORDER OF 16 TO 18 MONTHS.

17   THEY MISINTERPRETED THESE SLIDES.

18        WHAT HAPPENS AT 16 TO 18 MONTHS IS NOT THE FIRST OFFICE

19   ACTION.   IT'S THE ACP.   AND THE ACP IS AN ACTION CLOSING

20   PROSECUTION.   IN OTHER WORDS, IT'S THE SECOND OFFICE ACTION.

21   AND THEY SUGGESTED BECAUSE THE FIRST OFFICE ACTION IS AT 18

22   MONTHS AND OURS TOOK ROUGHLY FOUR AND SEVERAL WEEKS, FOUR

23   MONTHS, JUST OVER FOUR MONTHS, THEY SUGGESTED THAT OURS WOULD

24   BE COMPLETED IN ONE QUARTER OF THE TIME. BUT IF YOU ACCURATELY

25   READ THESE STATISTICS, THE AVERAGE TIME TO A FIRST OFFICE

1   ACTION IS EXACTLY 4.1 MONTHS.  OURS TOOK 4.2 MONTHS.  SO IF

2   YOU USE CISCO'S LOGIC, OURS WILL ACTUALLY TAKE LONGER THAN THE

3   TYPICAL.

4        NOW THE PREJUDICE THAT WOULD RESULT IS SHOWN ON THIS

5   SLIDE HERE.  UNDER THE CURRENT SCHEDULE WHICH HAS BEEN SET, WE

6   ARE SCHEDULED TO HAVE A *MARKMAN* HEARING IN JUNE OF NEXT YEAR

7   AND WE WILL GET TO TRIAL IN APRIL OF 2010.  UNDER CISCO'S

8   DESIRED SCHEDULE, WE WOULD STOP THE CASE NOW.  WE WOULD DELAY

9   FOR SIX AND A HALF YEARS, SOMETIME INTO THE LATTER HALF OF

10  2014.  WE WOULD PICK UP THE -- WE WOULD RESUME THE PRETRIAL

11  SCHEDULE AND WE WOULD LIKELY NOT GET TO TRIAL UNTIL AT LEAST

12  THE LATTER HALF OF 2016 OR LATER.  SUBSEQUENT TO THAT, THERE

13  WOULD BE AN APPEAL TO THE FEDERAL CIRCUIT.  WE ARE INTO 2018,

14  POSSIBLY 2019 BEFORE WE HAVE A RESOLUTION OF THE DISPUTE

15  BETWEEN THE PARTIES.

16       THE PREJUDICE TO OUR PLAINTIFF IF -- THE PREJUDICE TO OUR

17  CLIENT IF THAT WERE TO TAKE PLACE IS THAT MORE THAN HALF OF

18  THE LIFE OF THE PATENT WILL BE GONE BEFORE THERE IS ANY

19  RESOLUTION OF THE RIGHTS.  HE WOULD NOT HAVE THE ABILITY TO GO

20  OUT AND ATTEMPT TO LICENSE OTHER PARTIES DURING THAT PENDENCY.

21  THERE WOULD BE WITNESSES LOST.  THERE WILL BE MEMORIES THAT

22  FADE.  THERE WILL BE DOCUMENTS THAT ARE LOST.  THE TECHNOLOGY

23  MAY MOVE ON BY THAT TIME.  THE TECHNOLOGY COULD BE UNIMPORTANT

24  IN THE LATTER HALF OF THE NEXT DECADE.  THERE ARE A LARGE

25  NUMBER OF CIRCUMSTANCES WHY OUR CLIENT WOULD SUFFER UNDUE

1    PREJUDICE IF WE HAD TO WAIT UNTIL THE LATTER HALF OF THE NEXT

2    DECADE.

3        NOW, MS. MAROULIS SUGGESTED THAT THERE IS LIKELY TO BE A

4    NARROWING OF THE ISSUES.  HOWEVER, THEY HAVE PRESENTED TO THE

5    PATENT OFFICE ONLY THIRTEEN ITEMS OF PRIOR ART.  THERE ARE

6    OVER A HUNDRED ADDITIONAL ITEMS OF PRIOR ART THAT THEY HAVE

7    IDENTIFIED IN THEIR RULE 3-3 INVALIDITY CONTENTIONS.  SHE

8    SUGGESTED THAT -- I DON'T KNOW IF THIS WAS INTENTIONAL.  I

9    THINK IT WAS UNLIKELY THAT SHE WAS GOING TO SUGGEST THAT THOSE

10   HUNDRED, THOSE HUNDRED PRODUCTS ARE PUBLICATIONS.  THEY ARE

11   NOT PUBLICATIONS, YOUR HONOR.  THEY ARE NOT THE TYPE OF PRIOR

12   ART THAT CAN BE PRESENTED TO THE PATENT OFFICE.  THERE WILL BE

13   NO ESTOPPEL EFFECT WITH RESPECT TO A PRODUCT THAT THEY CAN

14   PROVE WAS ON SALE ACCORDING TO 102(B), 35 U.S.C. 102(B), OR IF

15   THERE WAS A PRIOR INVENTION DEFENSE ACCORDING TO 102(G).  SHE

16   IS NOT -- I DON'T BELIEVE SHE IS SUGGESTING THAT THERE IS

17   GOING TO BE AN ESTOPPEL EFFECT.

18       SO THE ADDITIONAL HUNDRED PRIOR ART REFERENCES WHICH ARE

19   GENERALLY PRODUCTS FOR WHICH THEY ARE NOT, TO MY

20   UNDERSTANDING, RELYING ON A PRINTED PUBLICATION THAT DESCRIBES

21   THAT PRODUCT, INSTEAD, THEY WILL RELY ON POSSIBLY INTERNAL

22   SPECIFICATIONS OF THESE COMPANIES THAT MADE THE PRODUCTS.

23   THERE ARE A HUGE NUMBER OF ADDITIONAL PRIOR ART ISSUES THAT

24   THEY ARE RESERVING IF WE SHOULD GET BACK TO TRIAL.

25       SHE ALSO SUGGESTS THAT BECAUSE ALL OF THE CLAIMS HAD BEEN

1 REJECTED TO DATE THAT IT IS LIKELY THAT THEY WILL CONTINUE TO

2 BE THAT WAY.  HOWEVER, YOUR HONOR, THE REPORT FOR PROGRESS

3 STUDY SHOWED THAT IT IS NEARLY ALWAYS THE CASE THAT THE FIRST

4 OFFICE ACTION WILL REJECT ALL OF THE CLAIMS.  IN OTHER WORDS,

5 THE PATENT OFFICE IS SAYING IF WHAT THE REQUEST OF THE

6 DEFENDANT, THE REQUESTOR OF THE INTER PARTES REEXAMINATION, IF

7 WHAT THEY SAY IS TRUE, THEN THIS IS THE REJECTION.  IT TREATS

8 IT -- THAT'S ONLY THE FIRST VOLLEY.  SO THERE HAS BEEN A

9 REJECTION MADE THAT ADOPTED, LITERALLY ADOPTED VERBATIM THE

10 REQUESTOR'S POSITION.  THERE IS ONLY ONE INSTANCE WHERE WE CAN

11 EVEN IDENTIFY WHERE THE EXAMINER PIECED TOGETHER TWO PORTIONS

12 OF AN ARGUMENT THAT THEY MADE.  BUT EVEN IN THAT CASE THE

13 EXAMINER LITERALLY CUT AND PASTED THE REQUESTOR'S ARGUMENT

14 ONTO THE PAGE.

15      SO THERE HAS BEEN VERY LITTLE INDEPENDENT ANALYSIS BY THE

16 PATENT OFFICE AT THIS STAGE.  THEY ARE JUST SAYING IF WHAT YOU

17 SAY IS TRUE, HERE IS THE REJECTION.  WE HAVE RESPONDED AND WE

18 HAVE POINTED OUT THAT THE PRIOR ART DOES NOT INVALIDATE.  WE

19 ARE CONFIDENT THAT THE CLAIMS WILL REMAIN AS THEY ARE AND THAT

20 THEY WILL ISSUE, REISSUE WHEN THEY DO.

21      WHAT I SHOULD POINT OUT ABOUT THE SCHEDULE HERE THOUGH,

22 YOUR HONOR, CISCO'S DESIRED SCHEDULE, ASSUMING THE CASE IS NOT

23 STAYED AS WE BELIEVE IT SHOULD NOT BE, WE WILL GET TO TRIAL IN

24 2010.  IT WILL BECOME A FINAL NONAPPEALABLE DECISION SOMETIME

25 IN MID-2011 IF WE GET THROUGH THE FEDERAL CIRCUIT.  AT THE

1  STAGE THAT OUR CASE BECOMES FINAL AND NONAPPEALABLE, IF THE

2  DEFENDANT HAS NOT CARRIED ITS BURDEN TO SHOW THAT THE CLAIMS

3  ARE INVALID, THE PATENT OFFICE MUST SUSPEND ITS PROCEEDINGS

4  AND CAN NO LONGER MAINTAIN THE INTER PARTES REEXAMINATION.  SO

5  THERE WILL NOT BE PARALLEL TRACKS.  THERE WILL NOT BE WASTED

6  RESOURCES.

7       THE *SONY V. DUDAS* CASE THAT WE CITE IN OUR BRIEF SAYS

8  THAT IT'S LIKE A HORSE RACE.  THE DEFENDANTS CAN CHOOSE TO

9  RIDE TWO HORSES IN PARALLEL, BUT WHEN ONE OF THEM REACHES THE

10 FINISH LINE THE OTHER HORSE MUST STOP.  35 U.S.C. 117(B)

11 INDICATES THAT IF WE GET TO A FINAL DECISION FIRST, THE PATENT

12 OFFICE MUST SUSPEND ITS PROCEEDINGS.

13      YOUR HONOR, IF THE STAY IS GRANTED, WE BELIEVE THAT IT

14 WOULD BE CONTRARY TO RULE 1 THAT ENTITLES US TO A JUST,

15 SPEEDY, AND INEXPENSIVE DETERMINATION OF THIS MATTER.  AND A

16 FINAL POINT, YOUR HONOR.  MS. MAROULIS POINTED OUT THAT

17 BECAUSE OUR CLIENT IS AN INDIVIDUAL INVENTOR WHO DOES NOT

18 PRACTICE THE PATENT, DOES NOT MAKE A PRODUCT, THAT HE IS NOT

19 ENTITLED TO AN INJUNCTION AND SO THERE CAN BE NO IRREPARABLE

20 HARM.  THAT IS NOT TRUE.  THE *EBAY* CASE HAS SAID THAT

21 INDIVIDUAL INVENTORS, ESPECIALLY ALONG WITH THE UNIVERSITIES,

22 MAY BE ENTITLED TO AN INJUNCTION.  THEY ARE ENTITLED TO PROVE

23 IRREPARABLE HARM.  THEY ARE ENTITLED TO SEEK AN INJUNCTION.

24 IF WE WERE NOT ALLOWED TO SEEK AN --

25           THE COURT: I AM TOLD YOUR TIME IS CONCLUDED IF YOU

1   WILL WRAP UP YOUR COMMENTS.

2           MR. MCANDREWS: THANK YOU, YOUR HONOR.

3           THE COURT: VERY WELL.  REPLY?  HOW MUCH TIME

4   REMAINS?

5           THE CLERK: SIX MINUTES.

6           THE COURT: SIX MINUTES.

7           MS. MAROULIS: THANK YOU, YOUR HONOR.  LET ME BEGIN

8   WITH OBJECTING TO THE USE OF CONFIDENTIAL SETTLEMENT

9   INFORMATION IN THE COUNSEL'S SLIDES AND POINT OUT THAT IT IS

10  HIGHLY INAPPROPRIATE TO RELY ON CONFIDENTIAL SETTLEMENT DATA

11  TO MAKE A POINT IN THESE PROCEEDINGS.

12      THAT SAID, CISCO CATEGORICALLY REJECTS AN INSINUATION

13  THAT WE HAD ANY DILATORY MOTIVE IN FILING THE REEXAM GENERALLY

14  OR FILING IT AT ANY TIME THAT WAS ASSERTED.  IN FACT, SOME OF

15  THE COURTS WHO GRANTED STAYS IN THE CASES FOUND THAT REEXAM

16  NATURALLY OR CLOSELY FOLLOWS REEXAMINATION, OR THE

17  REEXAMINATION FOLLOWS THE SETTLEMENT NEGOTIATIONS THAT FALL

18  APART.

19      THAT SAID, ALTHOUGH THERE IS A NOTION THAT BAD FAITH

20  SHOULD BE CONSIDERED, WE DON'T BELIEVE THAT ESN HAS

21  ESTABLISHED AND SHOWN ANY BAD FAITH ON BEHALF OF CISCO IN

22  BRINGING EITHER REEXAM OR THE STAY PROCEEDINGS.

23      SECONDLY, LET ME ADDRESS THE ISSUE OF PURPORTED DELAY.

24  THE INSTITUTE FOR PROGRESS STATISTICS ARE JUST ONE WAY OF

25  LOOKING AT THE STATISTICS.  YOUR HONOR, WE WENT WITH THE PTO

1  STATISTICS THAT PTO ITSELF PUT ON ITS WEBSITES IN MARCH OF

2  THIS YEAR.  BUT REGARDLESS WHO INTERPRETS THEM, THE

3  ASSUMPTIONS ARE HIGHLY SPECULATIVE.  OUR REEXAM CAN GO TWO

4  YEARS OR IT CAN GO A YEAR AND A HALF.  IT CAN BE A LOT SHORTER

5  THAN ESN SUGGESTS OR IT POSSIBLY COULD BE A SLIGHTLY LONGER

6  THAN THE AVERAGE AND MEDIAN TIME.

7      HOWEVER, IN THE FACE OF THESE STATISTICS AND THE FACE OF

8  THE INSTITUTE'S STUDY, THERE ARE THE COURTS AROUND THE COUNTRY

9  THAT ARE ROUTINELY GRANTING STAY IN THE INTER PARTES

10 PROCEEDING.  IN OUR PAPERS WE CITED THE *TOMCO* CASE OUT OF

11 GEORGIA AND THE *PROCTOR & GAMBLE* CASE OUT OF THE NORTHERN

12 DISTRICT OF CALIFORNIA WHERE SIMILAR ARGUMENTS WERE MADE.

13      THE COURT: WELL, IT'S NOT MY PRACTICE TO ROUTINELY

14 GRANT THEM, AS YOU HAVE EARLIER SAID.  I LOOK AT THEM ON A

15 CASE BY CASE BASIS.  IF I ROUTINELY GRANTED THEM, I WOULDN'T

16 HAVE A DOCKET IN THIS AREA.  I'D STAY ALL OF THEM, WHICH IS

17 SOMETIMES INVITING. BUT MY RESPONSIBILITY IS TO MOVE THESE

18 CASES ALONG AND GRANT A STAY IF APPROPRIATE, AND DENY IT IF

19 INAPPROPRIATE.

20      MS. MAROULIS: ABSOLUTELY RIGHT, YOUR HONOR.  A LOT

21 OF THE CASES WHERE STAY IS SOUGHT, HOWEVER, ARE EX PARTE

22 REEXAM CASES.  WE HAVE BEEN TRYING TO FOCUS BOTH IN OUR PAPERS

23 AND MY ARGUMENT ON THE INTER PARTES WHICH WE BELIEVE IS VERY

24 DIFFERENT FROM THE EX PARTE IN THE WAY THAT IT BINDS THE

25 REQUESTOR AND POSES ESTOPPEL ON THEM.  AND AS I SAID IN MY

1  EARLIER ARGUMENTS, WE WILL BE ESTOPPED FROM ASSERTING ANY

2  PRINTED PUBLICATION WHETHER IT HAS BEEN OR HAS NOT BEEN SHOWN

3  TO THE PATENT OFFICE.

4       I SHOULD ALSO POINT OUT THAT COUNSEL SAID THEY ARE

5  CONFIDENT IN THEIR PATENT EMERGING FROM THE REEXAM.  IF THE

6  PATENT OFFICE AGREES WITH THEM AND ISSUES ALL CLAIMS ON THE

7  FIRST OFFICE ACTION, IT MIGHT BE A VERY SHORT REEXAM

8  PROCEEDING.  BUT THE POINT IS THAT IT IS VERY IMPOSSIBLE TO

9  PREDICT PRECISELY HOW MANY MONTHS IT WOULD TAKE.  WE WOULD DO

10 OUR BEST TO EXPEDITE IT, AND AS YOUR HONOR POINTED IN SOME

11 DECISIONS, BECAUSE THE PATENT IS IN LITIGATION THE PTO WOULD

12 TREAT IT WITH A SPECIAL DISPATCH AND MAKE AN EFFORT TO PROCESS

13 IT EXPEDITIOUSLY AS WELL.

14      SIMILARLY, IN DISCUSSING THE ESN'S PREJUDICE, WE POINTED

15 OUT THAT DELAY ALONE IS NOT ENOUGH TO ESTABLISH PREJUDICE.  IN

16 THE INSTANCES WHERE THE COURTS LOOKED OUT WHETHER THERE WAS A

17 PREJUDICE TO THE PARTY THERE WAS SPECIFIC SHOWINGS THAT

18 CERTAIN WITNESSES WOULD BE UNAVAILABLE.

19      FOR EXAMPLE, IN THE *ANASCAPE* CASE THE COURT FOUND

20 SPECIFICALLY THAT ONE OF THE PARTIES WAS NOT ABLE TO LINE UP

21 THE WITNESSES ON ONE OF THE ISSUES BECAUSE OF HOW OLD THE

22 PATENTS WERE.  IN THIS CASE NO SHOWING OF PREJUDICE HAS BEEN

23 MADE, AND THE ONLY SHOWING OF PREJUDICE OR THE ONLY ILLUSION

24 OF PREJUDICE WAS LINKED TO THE DELAY ARGUMENT WHICH WE ALREADY

25 DISCUSSED.

1    FINALLY, LET ME ADDRESS THE POINT REGARDING THE FACT THAT

2    WE ALSO ASSERTED SOME OF THE PRODUCTS.  THAT IS CORRECT.  WE

3    HAVE SOME OF THE PRODUCT BASED PRIOR ART THAT WE ARE RELYING

4    ON.  HOWEVER, YOUR HONOR, BECAUSE THE PTO'S DETERMINATION

5    WOULD ONLY ADDRESS ALL THE PRINTED PUBLICATIONS, EVEN THOUGH

6    WE ARE ASSERTING PRODUCTS THAT WILL GREATLY SIMPLIFY THE CASE.

7    AND BECAUSE WE CANNOT SHOW THE PRODUCTS TO THE PTO, THERE IS

8    NO CHOICE FOR US BUT TO ASSERT THEM HERE IN THE CASE.

9    NONETHELESS, BECAUSE THE PTO WILL TAKE AWAY THE LARGE

10   CHUNK OF THE DEFENSE, THIS IS SOMETHING THAT WILL GREATLY

11   SIMPLIFY THE CASE BEFORE THE COURT AND THE JURY.  AND OTHER

12   COURTS WILL HAVE CONSIDERED THIS ISSUE, HAVE LOOKED AT THE

13   OTHER INVALIDITY DEFENSES IN THE CASE AND HAVE DECIDED THAT

14   DESPITE THE PRESENCE OF SUCH OTHER DEFENSES, SUCH AS

15   INEQUITABLE CONDUCT OR ANTITRUST DEFENSES, IT WAS STILL

16   APPROPRIATE TO STAY THE CASE BECAUSE THE KEY TO PATENT

17   INFRINGEMENT CASES IS VALIDITY OF THE PATENT.  AND ONCE THAT'S

18   RESOLVED, THAT STREAMLINES THE CASE.

19   I WOULD LIKE TO ANSWER ANY QUESTIONS YOUR HONOR MIGHT

20   HAVE.

21   THE COURT: I DON'T HAVE ANY ADDITIONAL QUESTIONS.  I

22   HAVE HAD MORE THAN A FEW OF THESE.  I APPRECIATE EVERYONE'S

23   COMMENTS, AND I'LL TAKE IT UNDER ADVISEMENT AND TRY TO HAVE A

24   RULING WITHIN THE NEXT 30 DAYS.

25   MS. MAROULIS: THANK YOU, YOUR HONOR.

1        THE COURT: WE WILL BE IN RECESS.

2     (ADJOURNED AT 11:24 A.M.)

3

4

5

6                    REPORTER'S CERTIFICATION

7        I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM

8  THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

9

10 DATE: SEPTEMBER 7, 2008              /S/LIBBY CRAWFORD

11                                  LIBBY CRAWFORD, CSR

12                                  OFFICIAL COURT REPORTER

13

14

15

16

17

18

19

20

21

22

23

24

25