IN THE UNITED DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| ESN, LLC, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § CIVIL ACTION NO. 5:08-CV-20 |
| | § |
| CISCO SYSTEMS, INC., and | § |
| CISCO-LINKSYS, LLC, | § |
| | § |
| Defendants. | § |

## O R D E R

Before the Court is Cisco's Motion to Stay Litigation Pending *Inter-Partes* Reexamination (IPR) of U.S. Patent No. 7,283,519. Dkt. No. 35. Also before the Court are ESN's Response in Opposition (Dkt. No. 37), Cisco's Reply (Dkt. No. 39), and ESN's Sur-Reply (Dkt. No. 41). A hearing on this Motion was held August 26, 2008. *See* Dkt. No. 42 (hearing minute entry). Having considered the arguments of counsel in conjunction with all relevant papers, pleadings, and case law, the Court finds Cisco's Motion to Stay should be **DENIED** for the reasons discussed below.

### I. BACKGROUND

ESN filed this suit on January 31, 2008, although it had previously filed suit on the same patent against the same defendants in October of 2007. Both complaints allege that Cisco infringes U.S. Patent No. 7,283,519 ("the '519 Patent") entitled "Distributed Edge Switching System for Voice-Over-Packet Multiservice Network." Dkt. No. 1, ¶ 6; Civil Action No. 5:07-CV-156, Dkt. No. 1, ¶ 6. The '519 Patent claims a distributed edge switch (network device) and a method for establishing a voice-over-packet network architecture. One function of the distributed edge switch is to "support the delivery of voice, video (multimedia) and data services—multi-service

delivery—to the subscriber" through a shared internet protocol (IP) path, thereby aggregating several functions together into "a single, cost-effective device." '519 Patent, col. 11, l.65 – col. 12, l. 4.

Cisco petitioned the U.S. Patent and Trademark Office (PTO) for *inter partes* reexamination of the '519 Patent on February 6, 2008. Dkt. No. 21, at 6. The PTO granted the reexamination request on April 16, 2008, prior to the scheduling conference in this case. Dkt. No. 37-21 (Exh. T). Although Cisco did not request a stay at the scheduling conference held before this Court on April 22, 2008, Cisco did note that it might wish to pursue a motion to stay. *See* Dkt. No. 22, at 2 (hearing minute entry). The PTO issued its First Office Action on June 13, 2008, which rejected every claim of the '519 Patent. Dkt. No. 36-3, at 6. Almost two and a half months after the PTO granted Cisco's reexamination request and after several disclosures under the Local Patent Rules, on June 30, 2008, Cisco filed this motion to stay.

## II. LEGAL PRINCIPLES

"The district court has the inherent power to control its own docket, including the power to stay proceedings." *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005) (Davis, J.). "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* at 254-55.

This Court has no "automatic" policies regarding stays pending reexamination; rather, "each motion to stay pending reexamination filed in this Court is considered on a case-by-case basis with each cause of action presenting distinct circumstances." *DataTreasury Corp. v. Wells Fargo & Co.*, 490 F. Supp. 2d 749, 754 (E.D. Tex. 2006). In deciding whether to stay litigation pending reexamination, this Court considers "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the non-moving party, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set." *See Soverain*, 356 F. Supp. 2d at 662.

### III. PARTIES' POSITIONS & DISCUSSION

**A.    Undue prejudice and tactical disadvantage to the nonmoving parties**

Cisco argues that "ESN has no colorable argument that it will be prejudiced by a stay." Dkt. No. 35, at 4. Cisco's major thrust is that the PTO has a mandate to resolve *inter partes* reexaminations expeditiously and that the PTO has proceeded very quickly in this case. *Id.* at 5. Cisco next argues that because ESN does not practice the patent, it will not incur market share or customer loss for the duration of the stay—any injury is compensable with money damages. *Id.* at 6. Cisco also contends ESN will suffer no prejudice because it has no other claims in the lawsuit other than those based on the '519 Patent. *Id.* Finally, Cisco argues that the estoppel effect of *inter partes* reexamination, which prevents Cisco from using at trial any art submitted to the PTO during IPR, makes it less likely that a plaintiff will be prejudiced by a stay. *Id.* at 7.

ESN counters that the IPR process is very lengthy and will result in a "clear case of substantial prejudice." Dkt. No. 37, at 9-10. ESN notes that since IPR was instituted in 2001, only three proceedings had been completed as of 2006 and in all of those cases, neither party appealed

the decision to the Board of Patent Appeals and Interferences (BPAI) or the Federal Circuit. *Id.* at 10 (citing Roger Shang & Yar Chaikovsky, Inter Partes *Reexamination of Patents: An Empirical Evaluation*, 15 Tex. Intell. Prop. L.J. 1, 16 (2006)). ESN also cites statistics from the Institute for Progress, an independent organization that has recently analyzed the IPR process. *Id* (report attached as Exh. A to Dkt. No. 37). Significant findings of the Institute, according to ESN, include:

- "To date [since the first IPR started in 2001], there has never been a single *inter partes* reexamination that has gone through the entire reexamination process (including appeal) and made it to completion." Dkt. No. 37-2 (Exh. A), at 2.

- The PTO's report citing the average pendency of an *inter partes* case as 28.5 months is "mathematically accurate" but "highly misleading. . . . An appropriate reading of the statistic is that the Patent Office takes two years to dispose of a patent through *inter partes* reexam if the patent holder doesn't care to defend its rights. It takes significantly longer to get to a resolution if the patent holder participates in the process." Dkt. No. 37-2, at 6.

- "Without appeal, the average pendency period for *inter partes* reexam is 43.5 months, much longer than the 28.5 months reported by the USPTO—a 95% confidence interval would put the pendency between 34 and 53 months." Dkt. No. 37-2, at 2.

- "Although no *inter partes* reexam has ever been completed after being appealed, the average pendency for appealed *inter partes* reexam is 78.4 months (assuming no rework by the patent office or secondary appeal)—a 95% confidence interval would put the pendency between 5 and 8 years." Dkt. No. 37-2, at 2.

Thus, under the Institute statistics, ESN contends this stay will delay litigation for six and a half years or more. Dkt. No. 37, at 11. ESN next argues that a stay will certainly injure ESN beyond money damages as a stay would "essentially eliminate[] ESN's right to exclusivity and effectively grant[] Cisco a compulsory license until at least 2016." *Id.* ESN further argues that granting the stay will write off half of the life of ESN's patent. Dkt. No. 41, at 4. ESN also notes that the Supreme Court and Cisco's V.P. and General Counsel Mark Chandler has cautioned against viewing non-

practicing entities as incapable of showing irreparable harm. Dkt. No. 37, at 11 (citing *eBay, Inc. v. MercExchange*, 547 U.S. 388, 393 (2006)); Dkt. No. 41, at 4.

ESN also contends a stay will create tactical disadvantages to ESN for several reasons: (1) a stay will prejudice ESN's ability to prosecute patent infringement when the stay is lifted because crucial witnesses are more likely to be unavailable, memories will fade, and evidence will be lost during the stay; (2) because Cisco's invalidity defense involves products that cannot be presented to the PTO in IPR and because discovery is needed to rebut the defense of obviousness, the Court is the best forum to adjudicate Cisco's invalidity defenses; and (3) this Court will provide a more timely resolution to the dispute. Dkt. No. 37, at 12-13. Finally, ESN notes that it gave Cisco an opportunity to bring this art to the attention of the PTO *prior* to the '519 Patent being issued. *Id.* at 5. In fact, Cisco did provide some art that ESN gave to the PTO *after* a Notice of Allowability had already been issued, the net result being the final issuance of the '519 Patent was delayed from June 2007 to October 2007. *Id.* However, during the period of June through October 2007, Cisco did not disclose any of the art to ESN or the PTO that it now asserts in IPR . *Id.* Cisco does not dispute these statements by ESN; instead, Cisco states this information, as "settlement discussions," has no relevance to the Motion. Dkt. No. 39, at 2 n.1.

The Court finds ESN would be significantly prejudiced and suffer tactical disadvantages by a stay in this case. Mark Chandler, Cisco's V.P. and General Counsel perhaps said it best when he noted in testimony before the Senate Subcommittee on Intellectual Property in a hearing on patent post-grant review, "The principle that justice delayed is justice denied applies with full force to the

patent process."[1] Staying this case for six-plus years when this Court can resolve the matter more expeditiously is unfairly prejudicial to ESN. Accordingly, this factor weighs heavily against granting the stay.

**B.      Simplification of the issues in question and trial of the case**

The Court first notes that reexamination may result in simplification of the issues due to elimination, narrowing, or amendment of the claims. In *Soverain*, Judge Davis noted that while cancellation of all claims occurs in only twelve-percent of reexaminations, "[t]he unlikelihood of this result, which favors not staying the case, is offset by the possibility that some of the claims may change during reexamination, which favors staying the case." *Soverain Software LLC v. Amazon.com, Inc.*, F. Supp. 2d at 662.

Cisco argues that a "stay of this case is especially likely to simplify the issues for trial." Dkt. No. 35, at 7. First, contends Cisco, if the patent claims are found to be invalid by the PTO, then the trial goes away. *Id.* Second, because the reexamination is *inter partes*, Cisco is estopped from using at trial any prior art publication that it might have presented to the PTO. *Id.* (citing 35 U.S.C. § 315(c)). Cisco also argues that because the PTO has affirmatively rejected each and every claim of the '519 Patent in the First Office Action, the chance that some claims will be cancelled is "highly likely." *Id.* at 8 (citing Shang & Chaikovsky, *supra*, at 14). Cisco further argues that the reexamination process is likely to force ESN to "modify one or more claims to avoid prior art." *Id.* at 10. Because of the number of references before the PTO, Cisco argues, there is a "high likelihood

---

[1] *Perspectives on Patents: Post-Grant Review Procedures and Other Litigation Reforms Before the S. Comm. on the Judiciary Subcomm. on Intell. Prop.*, 109th Cong. (2006) (statement of Mr. Mark Chandler, Senior Vice President and General Counsel, Cisco Systems, Inc.), *available at* http://judiciary.senate.gov/hearings/testimony.cfm?id=1911 (select "Mr. Mark Chandler" from Witness Testimony at the right).

that any surviving claims will be different from and narrower than the current claims." *Id.* at 11. Finally, argues Cisco, even if all the ESN claims remain in tact, the issues will be simplified because (1) Cisco will be estopped from presenting some invalidity defenses at trial, and (2) the Court will have additional guidance from the PTO regarding claim construction. *Id.* at 11-12.

ESN argues, however, that Cisco has cited over 100 alleged prior art products in its initial invalidity contentions, none of which are before the PTO in the IPR process. Dkt. No. 37, at 13-14. Further, ESN argues, the IPR is limited to the review of the publications cited to the PTO, of which there are only thirteen. *Id.* Thus, although Cisco will be estopped from asserting at trial the thirteen publications disclosed to the PTO in the IPR process, all of the alleged prior art products will still be in play at trial. *Id.* ESN concludes that it would be far more simple for all of the prior art to be considered at the same time and in the same forum and that the significant number of invalidity art remaining for consideration at trial (100-plus products) when compared to the small number of references (thirteen) cited to the PTO during IPR means "at best there would be only a *de minimus* narrowing of the invalidity issues." by a stay. *Id*; Dkt. No. 41, at 4. As for the initial Office Action, ESN argues that success in reexamination cannot be predicted by an initial office action because rejecting claims in a first office action is standard practice. Dkt. No. 37, at 14. ESN also contends Cisco's conclusion that that the IPR in this case is "highly likely" to result in cancellation of claims is unfounded because Cisco only considers the "*number* of rejections made by the Patent Office without any discussion of the *merits* or *quality* of those rejections." *Id.* at 15. ESN also notes that Cisco's data is based on a small sample of 30 proceedings, which the authors acknowledge "still does not provide a large data set." *Id.* at 15 (citing Shang & Chaikovsky, *supra*, at 11).

The Court is not convinced that IPR will simplify the issues for trial in this case. It is difficult to gauge, at this early stage in the IPR process, how likely it is that any of the '519 Patent claims will be cancelled or modified through amendment. Further, Cisco's invalidity defense relies on a significant number of products (over 100), which will not be before the PTO in the IPR process. It has cited only thirteen pieces of art to the PTO and many of these are likely to be overlapped by the over 100 products. Thus, it is not clear whether the invalidity issues will be clarified much, if at all. Finally, the Court is not persuaded that claim-construction will be simplified by IPR to any significant degree. However, because the Court also recognizes that IPR has the potential, theoretically, of simplifying issues for trial to at least some degree, the Court finds this factor is neutral.

## C. Completion of discovery and trial date

Cisco argues that this litigation is still in its "infancy" as "no significant resources have been expended to make a stay pending completion of reexamination improper. Dkt. No. 35, at 12. Cisco also notes that the trial date for the case is not until April 6, 2010. *Id.*

ESN agrees that the litigation is in its relatively early stages but argues that an early stage of litigation, without more, does not favor a stay. Dkt. no. 37, at 14. ESN then notes that a claim-construction hearing has already been set for June 2009 and that the parties have already exchanged Local Patent Rule (LPR) 3-1, 3-2, 3-3, and 3-4 disclosures. *Id.* ESN also notes that discovery is "well underway with over 20,000 pages of documents having been produced" thus far. *Id.*

The Court finds this factor favors granting a stay, although the Court finds this factor does not carry much weight in this case because discovery has already begun, a claim-construction hearing has been scheduled, and a trial date has been set.

## IV.  CONCLUSION

When the factors are considered collectively, the Court finds the unfair prejudice to ESN in granting this stay overshadows any potential simplification of issues.  Further, although the stage of this litigation is fairly early, statistics indicate that the IPR process, assuming appeals are taken, will take much longer than the schedule currently set in this case.  For all of the foregoing reasons, Cisco's Motion to Stay Litigation Pending Reexamination of U.S. Patent No. 7,283,519. (Dkt. No. 35) is hereby **DENIED**.

**IT IS SO ORDERED**.

**SIGNED this 20th day of November, 2008.**

_____
DAVID FOLSOM
UNITED STATES DISTRICT JUDGE