1              IN THE UNITED STATES DISTRICT COURT

2              FOR THE EASTERN DISTRICT OF TEXAS

3                      TEXARKANA DIVISION

4    ESN, L.L.C.                  .  CIVIL ACTION NO. 5:08CV20

5    VS.                          .  TEXARKANA, TEXAS

6    CISCO SYSTEMS, INC., ET AL.  .  JUNE 11, 2009

7                                 .  8:58 A.M.

8               CLAIM CONSTRUCTION [REDACTED]

9        BEFORE THE HONORABLE CHIEF JUDGE DAVID FOLSOM,

10               UNITED STATES DISTRICT JUDGE.

11   APPEARANCES:

12   FOR PLAINTIFF
     ESN, L.L.C.:                    MR. GERALD C. WILLIS, JR.
13                                    MR. PETER J. MCANDREWS
                                      MCANDREWS HELD & MALLOY
14                                    500 W. MADISON STREET
                                      SUITE 3400
15                                    CHICAGO, IL. 60661

16                                    MR. THOMAS JOHN WARD, JR.
                                      WARD & SMITH LAW FIRM
17                                    P.O. BOX 1231
                                      LONGVIEW, TX. 75606-1231
18
     FOR DEFENDANT
19   CISCO SYSTEMS, INC.:             MR. CHARLES K. VERHOEVEN
                                      QUINN EMANUEL URQUHART
20                                    OLIVER & HEDGES, L.L.P. -
                                      SAN FRANCISCO
21                                    50 CALIFORNIA STREET
                                      22ND FLOOR
22                                    SAN FRANCISCO, CA. 94111

23                                    MR. MICHAEL EDWIN JONES
                                      POTTER MINTON, P.C.
24                                    110 N. COLLEGE
                                      SUITE 500
25                                    P.O. BOX 359

1                                        TYLER, TX. 75710-0359

2                                        MS. SAYURI K. SHARPER
                                         QUINN EMANUEL URQUHART
3                                        OLIVER & HEDGES - REDWOOD
                                         555 TWIN DOLPHIN DR.
4                                        SUITE 560
                                         REDWOOD SHORES, CA. 94065
5
    COURT REPORTER:                      MS. LIBBY CRAWFORD, CSR
6                                        OFFICIAL COURT REPORTER
                                         500 STATE LINE AVENUE
7                                        TEXARKANA, TEXAS 75501
                                         903/794-4067
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24   PROCEEDINGS RECORDED BY STENOMASK VERBATIM REPORTING,

25   TRANSCRIPT PRODUCED BY CAT SYSTEM.

1                          INDEX

2  THE COURT — PRELIMINARY CLAIM CONSTRUCTIONS................  4

3  RESPONSES BY PARTIES....................................5 — 9

4  THE COURT................................................10

5  PLAINTIFF'S PRESENTATION BY MR. MCANDREWS................ 10

6  DEFENDANT'S RESPONSE BY MR. VERHOEVEN..................... 16

7  PLAINTIFF'S REPLY BY MR. MCANDREWS....................... 19

8  PLAINTIFF'S PRESENTATION — SIP TERMS BY MR. MCANDREWS...... 20

9  DEFENDANT'S RESPONSE BY MR. VERHOEVEN..................... 24

10 PLAINTIFF'S REPLY BY MR. MCANDREWS....................... 26

11 PLAINTIFF'S CLAIM CONSTRUCTION BY MR. MCANDREWS........... 27

12 DEFENDANT'S PRESENTATION BY MR. VERHOEVEN — SIP TERMS...... 56

13 PLAINTIFF'S REPLY BY MR. MCANDREWS....................... 84

14 THE COURT................................................ 90

15 THE COURT — MOTION TO DISMISS ISSUES..................... 91

16 REPORTER'S CERTIFICATION................................. 94

17

18

19

20

21

22

23

24

25

1    <u>P R O C E E D I N G S</u>

2    TEXARKANA, TEXAS

3    JUNE 11, 2009

4    (OPEN COURT)

5    THE COURT: PLEASE BE SEATED.  GOOD MORNING.  WE ARE

6    HERE NOW FOR CLAIM CONSTRUCTION.  NORMALLY, MY SCHEDULE

7    PROBABLY DOESN'T ALLOW THIS PROCESS, BUT I AM GOING TO GIVE

8    THE PARTIES -- I THINK WE HAVE 13 DISPUTED TERMS.  I AM GOING

9    TO GIVE THE PARTIES A ONE PAGE, WITHOUT ANY RATIONALE,

10   REFLECTING THE COURT'S PRELIMINARY CLAIM CONSTRUCTION ON SIX

11   OF THESE TERMS.  I SHOULD HAVE DONE THIS YESTERDAY SO YOU

12   COULD HAVE GIVEN IT SOME THOUGHT OVERNIGHT.  THEN I AM GOING

13   TO TAKE ABOUT A 10, 15 MINUTE RECESS TO LET YOU REVIEW THESE,

14   KEEPING IN MIND THESE ARE VERY INTERLOCUTORY.  BUT, YOU KNOW,

15   MAYBE WE HAVE SOME ROOM FOR AGREEMENT.  IF SO, IT SHOULD SAVE

16   SOME TIME.

17   IF YOU ARE NOT IN AGREEMENT WITH THE COURT'S PRELIMINARY

18   CONSTRUCTION, DON'T BE BASHFUL IN SAYING WHY YOU THINK IT'S

19   WRONG OR WHY IT NEEDS TO BE TWEAKED OR MODIFIED IN SOME

20   FASHION.  MAYBE WITH THIS PROCESS, LIKE I SAID, WE COULD COME

21   TO SOME AGREEMENT ON SOME OF THESE TERMS AND SAVE SOME TIME.

22   SO, MR. KEYZER, WHY DON'T YOU GIVE EACH SIDE ABOUT THREE

23   COPIES.  AND I AM GOING TO MAKE A COPY OF THIS PART OF THE

24   RECORD, MRS. MARTIN, IF YOU WILL MAKE THIS EXHIBIT 1.  SO WE

25   WILL TAKE A 10 MINUTE RECESS, 10 OR 15 MINUTES.  MR. KEYZER

1  WILL BE OUT IN A MINUTE TO SEE IF YOU HAVE HAD A CHANCE TO

2  READ THESE AND GIVE IT SOME THOUGHT.

3       (RECESS AT 8:59 A.M., UNTIL 9:15 A.M., OPEN COURT)

4           THE COURT: PLEASE BE SEATED.  EVERYONE READY TO GO?

5  I TRUST YOU'VE HAD A CHANCE TO REVIEW THE PRELIMINARY CLAIM

6  CONSTRUCTION.  WE WILL TAKE THOSE UP SIMPLY IN THE ORDER YOU

7  REACH THOSE IN YOUR PRESENTATION, OR IF THE PARTIES ARE READY

8  TO ANNOUNCE THAT YOU CAN AGREE ON SOME OF THOSE TERMS, MAYBE

9  WE CAN AVOID ADDRESSING THOSE.

10           MR. MCANDREWS: YOUR HONOR, WE HAVE REACHED AGREEMENT

11  THAT THE FINAL FIVE OF THE SIX LISTED ON THE SHEET HERE, THE

12  PARTIES WILL JUST REST ON THEIR BRIEFS.  THERE IS NO NEED FOR

13  FURTHER ARGUMENT TODAY.

14           THE COURT: GREAT.  AT LEAST WE ARE MAKING PROGRESS.

15           MR. VERHOEVEN: YES.

16           THE COURT: YOU DON'T AGREE NECESSARILY WITH THE

17  COURT'S SUGGESTED CONSTRUCTION BUT YOU CAN RELY ON THE

18  BRIEFING.  IS THAT WHAT YOU ARE SAYING?

19           MR. VERHOEVEN: WELL, FOR CISCO, YOUR HONOR, THE

20  SECOND, THIRD, AND FOURTH --

21           THE COURT: WHY DON'T YOU --

22           MR. VERHOEVEN:  -- TELEPHONE LINE INTERFACE --

23           THE COURT: YOU AGREE WITH THE COURT'S CONSTRUCTION?

24           MR. VERHOEVEN: YES, WE DO.  COMPUTER DATA INTERFACE,

25  WE MADE A POINT ABOUT WORKSTATIONS BUT WE ARE PREPARED TO

1   AGREE WITH THE COURT'S CONSTRUCTION.

2            THE COURT: OKAY.

3            MR. VERHOEVEN: EXCUSE ME, YOUR HONOR.  AND THEN TWO

4   DOWN, THE PHRASE ROUTE TELEPHONE CALLS IN A PEER-TO-PEER

5   FASHION OVER THE SHARED PACKET NETWORK --

6            THE COURT: YOU COULD AGREE WITH --

7            MR. VERHOEVEN: WE COULD AGREE WITH THAT ONE, YOUR

8   HONOR.  THE REMAINDER OF THE ITEMS, WE WOULD BE PREPARED TO

9   JUST REST ON OUR PAPERS WITHOUT FURTHER ARGUMENT, YOUR HONOR.

10           THE COURT: NOW, ARE THERE ANY THE PLAINTIFF CAN

11  AGREE TO?  I ASSUME YOU DON'T AGREE TO THOSE THAT --

12           MR. MCANDREWS: WELL, YOUR HONOR --

13           THE COURT:  -- CISCO AGREES WITH.

14           MR. MCANDREWS:  -- WE CAN AGREE ON COMPUTER DATA

15  INTERFACE, SHARED PACKET NETWORK, ROUTE --

16           THE COURT: SO WE HAVE COMMON AGREEMENT ON -- LET'S

17  NUMBER THESE 1, 2, 3, 4, 5, 6.  SO BOTH PARTIES CAN AGREE ON

18  TERMS --

19           MR. MCANDREWS: YES, COMPUTER DATA -- TERM 3,

20  COMPUTER DATA --

21           THE COURT: TERM 3.

22           MR. MCANDREWS:  -- COMPUTER DATA INTERFACE; TERM 4,

23  SHARED PACKET NETWORK --

24           THE COURT: OKAY.  THREE AND 4 ARE AGREED.

25           MR. MCANDREWS:  -- TERM 5, ROUTE TELEPHONE CALLS IN A

1   PEER-TO-PEER FASHION --

2          THE COURT: THOSE ARE AGREED UPON.

3          MR. MCANDREWS: THOSE ARE AGREED UPON.  TERM 2,

4   TELEPHONE LINE INTERFACE, WE ARE PREPARED TO REST ON OUR

5   BRIEF, BUT WE DID MAKE A POINT.

6          THE COURT: I WOULD LIKE TO HEAR FROM YOU VERY

7   BRIEFLY WHY YOU FEEL THE COURT'S CONSTRUCTION IS NOT

8   APPROPRIATE OR NEEDS SOME TWEAKING.  AND MAYBE YOUR BRIEFING

9   ESSENTIALLY ADDRESSES THAT.  BUT JUST VERY BRIEFLY, IF YOU

10  WANT TO DO IT NOW.

11         MR. MCANDREWS: SURE, I CAN -- I CAN HANDLE THAT

12  RIGHT AWAY.  AND IT'S A VERY -- VERY, VERY BRIEF ISSUE

13  ACTUALLY.

14      OKAY.  SO THE COURT'S CONSTRUCTION AS IT'S CURRENTLY

15  PROPOSED WOULD INCLUDE THE DEFINITION OF TELEPHONE LINE

16  INTERFACE FOUND IN THE LOWER QUOTE THERE, WHICH IS '519 PATENT

17  AT COLUMN 42, LINES 46 THROUGH 52.  HOWEVER, ESN WOULD PROPOSE

18  THE CONSTRUCTION SHOULD ALSO INCLUDE THE REQUIREMENT THAT

19  TELEPHONE LINE INTERFACE PERFORM THE CONVERSION OF DEVICE

20  LEVEL TELEPHONE SIGNALING.

21      SO, FOR EXAMPLE, YESTERDAY WE DISCUSSED THE IDEA THAT A

22  POTS PHONE COMMUNICATES WITH THE PSTN USING TONES AND OTHER

23  THINGS THAT ARE RECOGNIZABLE BY THE OLD CIRCUIT SWITCH

24  NETWORK.  AND IN ORDER FOR THE NETWORK DEVICE TO ACCOMMODATE A

25  POTS PHONE, IT WILL HAVE TO CONVERT THOSE DEVICE LEVEL

1   SIGNALS.  AND IT INCLUDES CONVERTING DEVICE LEVEL SIGNALING

2   WHICH IS, FOR EXAMPLE, PRESSING TONES TO KNOW WHAT TELEPHONE

3   NUMBER IS BEING DIALED.  AND IT ALSO INCLUDES THE CONVERSION

4   OF THE ANALOG VOICE.  YOU TALK INTO THE PHONE AND IT HAS TO

5   CONVERT THAT ANALOG VOICE SIGNAL INTO DIGITAL PACKETS SO THEY

6   ARE SUITABLE FOR TRANSMISSION OVER AN IP NETWORK.

7       THE PATENT USES THE SAME TELEPHONE LINE INTERFACE, ITEM

8   1.9, BOTH IN THE DEFINITION SECTION AND IN THE GENERAL BODY OF

9   THE PATENT.  AND I BELIEVE THAT CISCO'S ONLY CRITICISM OF THE

10  USE OF THIS PORTION OF THE DEFINITION OF TELEPHONE LINE

11  INTERFACE IS THAT IT DIDN'T APPEAR IN THE DEFINITION SECTION

12  OF THE '519 PATENT, BUT THEY HAVE NOT CITED ANY LAW THAT IS

13  CONTRARY TO THE LAW THAT A PATENTEE CAN BE HIS OWN

14  LEXICOGRAPHER SUBJECT TO WHETHER HE PUTS IT IN A SECTION

15  LABELED DEFINITIONS.  WE DON'T BELIEVE THAT'S THE REQUIREMENT.

16      THE COURT: VERY WELL.  COMMENTS FROM CISCO ON WHY

17  YOU FEEL --

18      MR. VERHOEVEN: WE CAN JUST LEAVE THAT SLIDE UP, YOUR

19  HONOR.

20      THE COURT:  -- WHY YOU FEEL THE COURT'S CONSTRUCTION

21  IS APPROPRIATE.

22      MR. VERHOEVEN: YES, YOUR HONOR.  IF YOU LOOK AT THE

23  SLIDE COUNSEL PUT UP, THE BOTTOM PARAGRAPH, THAT'S THE ACTUAL

24  DEFINITION OF TELEPHONE LINE INTERFACE.  AND IN THIS PATENT

25  IT'S A LITTLE UNIQUE IN THAT THE PATENTEE DEFINED A WHOLE

1   BUNCH OF TERMS VERY EXPRESSLY IN A SECTION LABELED

2   DEFINITIONS.  AND THAT IS THE DEFINITION.  AND THE COURT'S

3   CONSTRUCTION IS CONSISTENT WITH THAT.  THE TOP PARAGRAPH IS

4   FROM THE PREFERRED EMBODIMENT, YOUR HONOR, AND IT'S JUST AN

5   EXCERPT OUT OF THE PREFERRED EMBODIMENT WHICH COUNSEL FOR ESN

6   HAS APPENDED TO THE DEFINITION, WHICH IS INAPPROPRIATE UNDER

7   THE LAW OF CLAIM CONSTRUCTION AS YOUR HONOR KNOWS.

8           THE COURT: VERY WELL.  SO I GATHER THEN -- WELL,

9   THEN I WILL ADOPT IN THE FINAL ORDER THE CONSTRUCTION OFFERED

10  IN TERMS 3, 4, AND 5 BECAUSE THE PARTIES AGREE WITH THOSE.  I

11  AM ASSUMING BOTH PARTIES DO NOT AGREE WITH 1 AND 6, AND WE

12  WILL SIMPLY TAKE THOSE UP IN THE DUE COURSE OF TIME.  OR HAVE

13  I MISSPOKEN?

14          MR. VERHOEVEN: NO, YOU DIDN'T MISSPEAK, BUT I THINK

15  THERE MAY BE SOME CONFUSION BECAUSE I TOLD YOUR HONOR THAT WE

16  AGREED TO 2, TELEPHONE LINE INTERFACE; 3, COMPUTER DATA

17  INTERFACE; AND 5.  FOUR, WE'D REST ON OUR PAPERS, YOUR HONOR.

18          THE COURT: OKAY.  I AM SORRY.  I THOUGHT 4 WAS

19  AGREED UPON.  DOES THE PLAINTIFF AGREE WITH 4?

20          MR. MCANDREWS: YES, YOUR HONOR.

21          THE COURT: AGREED BY PLAINTIFF, THEN.  OKAY.  ANY

22  ADDITIONAL COMMENTS YOU WOULD LIKE TO MAKE AS TO 4 OR DO YOU

23  THINK YOUR PAPERS --

24          MR. VERHOEVEN: WE REST ON OUR PAPERS, YOUR HONOR.

25          THE COURT: VERY WELL.  FINE.  SO THAT LEAVES US 1

1    AND 6, THEN, AM I -- AM I CORRECT?

2              MR. MCANDREWS: THAT'S CORRECT, YOUR HONOR.

3              THE COURT: IN ADDITION TO THE OTHER TERMS.

4              MR. MCANDREWS: YOUR HONOR, IF I MAY HAVE A VERY

5    BRIEF TWO SENTENCE REBUTTAL --

6              THE COURT: YES, YOU MAY, SURE.

7              MR. MCANDREWS:  -- ON THIS PARTICULAR TERM HERE.  IF

8    YOU NOTICE IN THE LAST SENTENCE OF WHAT CISCO'S COUNSEL REFERS

9    TO AS THE DEFINITION SECTION, IT IS TRUE IT IS LABELED AS A

10   DEFINITION SECTION.  IT SAYS: TELEPHONE STATIONS DO NOT

11   NATIVELY SUPPORT SIP NETWORK SIGNALING AND AS A RESULT CANNOT

12   PRESENT THEMSELVES TO AN IP NETWORK AS SIP NETWORK SIGNALING

13   ENDPOINTS WITHOUT ASSISTANCE FROM THE EDGE SWITCH.

14       AND ONE READING THAT DEFINITION WOULD UNDERSTAND FROM THE

15   PREVIOUS DISCUSSION THAT WE CITE THERE FROM COLUMN 23, LINES 4

16   THROUGH 8, THAT THAT ASSISTANCE THAT IS REQUIRED IS NOT MERELY

17   THAT YOU CAN PLUG IN A PLUG INTO A LITTLE PORT ON THE BACK OF

18   THE NETWORK DEVICE, BUT THAT IT WILL PROVIDE THE ASSISTANCE

19   NECESSARY TO ALLOW IT TO PERFORM SIP NETWORK SIGNALING AS A

20   SIP NETWORK SIGNALING ENDPOINT.  AND THAT IS THE CONVERSION

21   REFERRED TO IN THE TELEPHONE LINE INTERFACE SECTION IN COLUMN

22   23.

23              THE COURT: WELL, I THINK THIS HAS BEEN WORTHWHILE.

24   SO LET'S GO FORWARD WITH THE REST OF THE CONSTRUCTION.

25              MR. MCANDREWS: THANK YOU, YOUR HONOR. I AM HOPEFUL,

1  GIVEN THE COURT'S DILIGENT WORK IN GETTING US A PRELIMINARY

2  CLAIM CONSTRUCTION, THAT WE CAN FINISH THIS UP MUCH QUICKER

3  THAN WE'D HOPED TODAY.

4          THE COURT: WELL, I WISH I HAD GIVEN YOU THOSE

5  YESTERDAY, BUT I'M READING THIS OVER MORNING COFFEE AND I

6  THOUGHT I SHOULD HAVE GIVEN THESE TO THE PARTIES AND GIVE THEM

7  A CHANCE TO COMMENT ON THEM.

8          MR. MCANDREWS: SO LET ME START -- WELL, I THINK I'LL

9  GO -- WELL, LET ME START HERE.  SO JUST IN SUMMARY, THERE'S

10 FOUR ASSERTED CLAIMS.  I CAN UNDERSTAND FROM THE COURT'S

11 ABILITY TO COME OUT WITH SIX PRELIMINARY CLAIM CONSTRUCTIONS

12 AT THIS STAGE, THE COURT IS WELL AWARE OF THESE THINGS.  I

13 JUST WANTED TO POINT OUT THAT THIS IS UNIQUE, AND IT WOULD BE

14 STRANGE TO COURTS THAT DON'T REGULARLY DEAL WITH PATENTS, THAT

15 WE HAVE TAKEN THE LIBERTY TO REWRITE CLAIM 16 AS A DEPENDENT

16 CLAIM.  BUT THE PARTIES ARE IN PERFECT AGREEMENT ON THAT.

17 THAT'S COMMON WHERE AN INDEPENDENT CLAIM IS NO LONGER BEING

18 ASSERTED THAT THE DEPENDENT CLAIM BECOMES ESSENTIALLY AN

19 INDEPENDENT CLAIM, AND THAT'S WHAT'S BEEN DONE HERE.  SO CLAIM

20 16 IS THE FOURTH OF THE FOUR ASSERTED CLAIMS.

21     NOW I WANT TO START WITH THE COURT'S CONSTRUCTION OF

22 NETWORK DEVICE AS THE BASIS FOR THE CONVERSATION HERE.  AND

23 THE COURT'S CONSTRUCTION IS A HARDWARE DEVICE CONFIGURED TO

24 TRANSMIT AND RECEIVE DATA OVER A BROADBAND NETWORK.  THERE IS

25 NOTHING WRONG WITH THAT CONSTRUCTION IN AND OF ITSELF, BUT IT

1  LEAVES AN AMBIGUITY WITH RESPECT TO THE TERM THAT I THINK IS

2  THE LINCHPIN IN THE PARTIES' DISPUTE HERE.  AND IF I CAN GO

3  FORWARD TO THE SLIDES THAT ARE RELEVANT HERE.

4      SO THE NETWORK DEVICE OF THE CLAIM, THE TERM NETWORK

5  DEVICE APPEARS IN THE PREAMBLE OF CLAIMS 9, 10, AND 12, AND IT

6  SHOWS UP IN THE BODY OF CLAIM 16.  BUT NETWORK DEVICE IS USED

7  IN THE PREAMBLE TO INTRODUCE A DEVICE THAT WILL HAVE A NUMBER

8  OF ELEMENTS THAT FOLLOW THE PREAMBLE.  AND THOSE ELEMENTS -- I

9  DON'T THINK THERE IS ANY DISPUTE THAT THOSE ELEMENTS ARE ALL

10  DEPLOYED AT THE SAME PREMISE AND USE A SINGLE BROADBAND

11  NETWORK INTERFACE TO COMMUNICATE WITH THE GREATER NETWORK.

12      THE AMBIGUITY THAT'S LEFT WITH THE COURT'S PROPOSED

13  CONSTRUCTION IS THAT IT IS STILL NOT CLEAR WHAT A DEVICE NEEDS

14  TO BE MADE UP OF.  ESN'S PROPOSED CONSTRUCTION WOULD ALLOW THE

15  JURY TO DETERMINE WHETHER A COLLECTION OF ENCLOSURES THAT MAKE

16  UP A SINGLE DEVICE IS A SINGLE DEVICE BY LOOKING AT WHETHER IT

17  PRESENTS ITSELF TO A NETWORK AS A SINGLE, LOGICAL NODE ON THE

18  NETWORK AS WOULD BE THE CASE WITH AN EDGE SWITCH WHERE YOU

19  HAVE MULTIPLE MODULES WORKING TOGETHER.  BUT AS FAR AS THE

20  NETWORK IS CONCERNED, IT'S A SINGLE LOGICAL ENTRYWAY INTO THE

21  NETWORK.

22      EVEN CISCO'S PROPOSED CONSTRUCTION LEAVES A CERTAIN

23  AMOUNT OF AMBIGUITY.  LET ME RUN FORWARD TO CISCO'S

24  CONSTRUCTION HERE.  CISCO'S CONSTRUCTION WOULD BE A SINGLE

25  PIECE OF EQUIPMENT THAT TRANSMITS AND RECEIVES DATA OVER THE

1    BROADBAND NETWORK.  BUT AGAIN, IF YOU WERE TO READ THAT YOU

2    WOULD UNDERSTAND THAT IT HAS TO BE A SINGLE PIECE OF

3    EQUIPMENT.  REALLY WHAT THEY ARE SAYING IS IT NEEDS TO BE IN A

4    SINGLE ENCLOSURE.  HOWEVER, AND I THINK THAT'S THE WAY THE

5    JURY WOULD REASONABLY INTERPRET WHAT CISCO HAS WRITTEN AS --

6         THE COURT: SO THAT'S YOUR CONCERN, THE JURY'S

7    INTERPRETATION OF EITHER THE COURT'S CONSTRUCTION OR CISCO'S?

8         MR. MCANDREWS: MY CONCERN IS THAT THEY WOULD

9    CONCLUDE THAT IT NEEDS TO BE IN A SINGLE ENCLOSURE.  AND AS WE

10   POINTED OUT, THE DOCTRINE OF CLAIM DIFFERENTIATION, CLAIM 12

11   ALREADY STATES THAT THE NETWORK DEVICE IS IN A SINGLE PHYSICAL

12   ENCLOSURE.  UNDER THE DOCTRINE OF CLAIM DIFFERENTIATION,

13   TYPICALLY THAT WOULD MEAN THAT CLAIM 9 IS BROADER.  AND WHAT

14   WE HAVE ATTEMPTED TO DO IS DEFINE HOW THE JURY CAN GAUGE

15   WHETHER THEY ARE LOOKING AT SOMETHING THAT IS A SINGLE NETWORK

16   DEVICE WITHOUT FOCUSING SO MUCH ON THE NUMBER OF ENCLOSURES.

17   AND WHAT'S ODD ABOUT CISCO'S CONSTRUCTION IS THAT THE

18   ARGUMENT THAT THEY USE TO SUPPORT THEIR CONSTRUCTION INCLUDES

19   A CONCESSION THAT THERE ARE -- THERE ARE THINGS THAT WOULD BE

20   CONSIDERED A SINGLE PIECE OF EQUIPMENT EVEN.  THEY USE THE

21   TERM SINGLE PIECE OF EQUIPMENT.  WHERE THAT PIECE OF EQUIPMENT

22   IS A TELEPHONE, FOR EXAMPLE, AND A TELEPHONE HAS MULTIPLE

23   PHYSICAL ENCLOSURES.  IT HAS A HANDSET THAT IS ENCLOSED IN

24   PLASTIC, USUALLY, AND IT WILL HAVE A BASE STATION TO WHICH THE

25   HANDSET IS TETHERED.  A SIMILAR EXAMPLE WOULD BE A DESKTOP

1   COMPUTER. FROM THE NETWORK'S PERSPECTIVE, IT'S A SINGLE

2   DEVICE THAT'S COMMUNICATING OVER THE INTERNET, FOR EXAMPLE,

3   BUT IT WOULD HAVE A KEYBOARD, A DISPLAY, A MAIN HOUSING, A

4   MOUSE, FOR EXAMPLE, POSSIBLY SOME OTHER PERIPHERALS. BUT AS

5   FAR AS THE NETWORK IS CONCERNED, AND WHAT WE ARE TALKING ABOUT

6   HERE IS A NETWORK DEVICE. AS FAR AS THE NETWORK IS CONCERNED,

7   THAT WOULD STILL COMPRISE A SINGLE DEVICE.

8       AND SO NOW WE RECOGNIZE THAT YOU HAVE TO HAVE SOME WAY OF

9   DETERMINING THE BOUNDARIES OF WHAT A DEVICE IS. AND SO OUR

10  PROPOSED CONSTRUCTION WOULD ALLOW THE JURY TO UNDERSTAND

11  WHETHER SOMETHING WAS A SINGLE DEVICE BASED ON WHETHER IT WAS

12  PRESENTED TO THE NETWORK AS A SINGLE DEVICE. CISCO CRITICIZES

13  OUR CONSTRUCTION BECAUSE IT USES THE WORD LOGICAL NODE AND IT

14  SAYS THAT THAT WOULD CONFUSE THE JURY. AND THEY POINT TO A

15  NEWTON'S TELECOM DICTIONARY DEFINITION THAT DEFINES LOGIC NODE

16  AS AN ABSTRACT REPRESENTATION OF A PEER GROUP OR A SWITCHING

17  SYSTEM AS A SINGLE POINT. AND I THINK --

18          THE COURT: YEAH. WHERE DID YOU -- HOW DID YOU

19  ARRIVE AT THIS TERM? MY RECOLLECTION, IT'S USED NOWHERE IN

20  THE PATENT. IS THAT CORRECT?

21          MR. MCANDREWS: I AM SORRY. LOGICAL NODE?

22          THE COURT: RIGHT, YES.

23          MR. MCANDREWS: THAT'S CORRECT. WE USED IT ACTUALLY

24  VERY MUCH IN THE SENSE THAT NEWTON'S TELECOM DICTIONARY USES

25  THE TERM. AND THAT IS THAT IT IS -- WHILE IT MAY BE AN

1  ABSTRACT GROUPING, A PEER GROUP OR A SWITCHING SYSTEM THAT

2  MAKES UP MULTIPLE DISTINCT ENCLOSURES, IT WOULD STILL BE --

3  IT'S STILL REPRESENTED TO A NETWORK AS A LOGICAL NODE BY

4  INTERCABLING CONNECTIONS.  ULTIMATELY ALL OF THOSE THINGS THAT

5  ARE CONNECTED COMMUNICATE WITH A NETWORK THROUGH A SINGLE

6  POINT.  AND SO LOGICAL NODE, MAYBE THAT'S TOO MUCH FOR THE

7  JURY TO SWALLOW.

8           THE COURT: I STARTED TO SAY, DO YOU THINK THAT'S

9  GOING TO MEAN ANYTHING TO A JURY?

10          MR. MCANDREWS: RIGHT.  AND POSSIBLY WHAT WE NEED TO

11 DO --

12          THE COURT: DO YOU HAVE ANYTHING THAT -- I AM NOT

13 NECESSARILY AGREEING WITH YOU, BUT THAT WOULD BE MORE

14 UNDERSTANDABLE TO A JURY IF I SHOULD ADOPT YOUR CONSTRUCTION?

15          MR. MCANDREWS: WELL, IT SEEMS LIKE THE PARTIES ARE

16 IN AGREEMENT ON THE FACT THAT THERE CAN BE MULTIPLE ENCLOSURES

17 THAT STILL MAKE UP A NETWORK DEVICE.  I THINK WHAT THE PARTIES

18 STRUGGLED WITH WAS WHAT WAS THE PROPER WORDING FOR THE JURY TO

19 UNDERSTAND WHEN YOU ARE LOOKING AT A SINGLE NETWORK DEVICE AS

20 OPPOSED TO MULTIPLE.  AND OUR PROPOSED CONSTRUCTION USES THE

21 TERM LOGICAL NODE.  IF WE SUBSTITUTED THE WORD POINT, A

22 LOGICAL POINT ON A NETWORK, I THINK MAYBE THAT MIGHT BE MORE

23 UNDERSTANDABLE TO A JURY.  AND THAT'S IN FACT THE WORD THAT IS

24 USED BY NEWTON'S TELECOM DICTIONARY, THAT IT IS AN ABSTRACT

25 REPRESENTATION OF A PEER GROUP OR SWITCHING SYSTEM AS A SINGLE

1   POINT.

2       NOW, THE WORD ABSTRACT DOESN'T DO ANYBODY ANY GOOD,

3   RIGHT, BUT I THINK THE POINT IS OF THE NEWTON'S TELECOM

4   DICTIONARY IS THAT IT'S NOT A SPECIFIC TYPE OF REPRESENTATION

5   OR PEER GROUP.  IT'S WHATEVER IT MIGHT BE AS LONG AS IT'S

6   REPRESENTED AS A SINGLE POINT.  SO GIVEN -- AND I FULLY

7   UNDERSTAND THAT A JURY MAY HAVE TROUBLE SWALLOWING THE WORD

8   LOGIC NODE.  AND IF THE COURT PERMITS, WE WOULD MODIFY OUR

9   PROPOSED CONSTRUCTION AS A LOGICAL POINT ON THE NETWORK.

10          THE COURT: LOGICAL POINT.  OKAY.

11          MR. MCANDREWS: AND I THINK THAT THAT WOULD HANDLE --

12  THAT WOULD HANDLE THE POTENTIAL CONFUSION OF A CONSTRUCTION

13  THAT LEAVES THE WORD DEVICE ONLY IN THERE AND LEAVES IT UP TO

14  THE JURY TO GUESS AT WHAT, WHETHER IT NEEDS TO BE SINGLE

15  ENCLOSURE OR MULTIPLE ENCLOSURES, OR WHAT IT NEEDS TO BE TO BE

16  A DEVICE.

17          THE COURT: ARE WE GOING TO HAVE A RESPONSE AT THIS

18  POINT?

19          MR. VERHOEVEN: YES, YOUR HONOR.

20          THE COURT: THIS IS ONE OF THESE WHERE YOU FEEL THE

21  PLAINTIFF'S CONSTRUCTION IS ALL WRONG, AS WELL AS THE COURT'S

22  SUGGESTED CONSTRUCTION.  SO WHY?

23          MR. VERHOEVEN: WE AGREED -- WELL, THE ONLY -- THE

24  ONLY POINT OF CLARIFICATION WOULD BE THAT WE THINK IT'S A

25  SINGLE HARDWARE DEVICE.  I THINK I HEARD COUNSEL SAYING THAT

1    THEY AGREE IT'S A SINGLE, BUT THE QUESTION IS, WHAT'S A

2    DEVICE?  I THINK THAT THE WORD DEVICE IS A COMMONLY USED WORD

3    A JURY WOULD UNDERSTAND, YOUR HONOR, FROM THEIR OWN LIVES.

4    AND THE SINGLE VERSUS MULTIPLE SOUNDS LIKE WE HAVE AGREEMENT

5    ON.  BUT JUST BRIEFLY, YOUR HONOR, LET ME RUN THROUGH OUR

6    ARGUMENT.

7           THE COURT: IS THAT CORRECT?  COULD YOU LIVE WITH A

8    SINGLE WHATEVER YOUR -- WE THEN GO TO?

9           MR. MCANDREWS: WELL, YOUR HONOR, WE AGREE THAT WE

10   ARE TALKING ABOUT A SINGLE NETWORK DEVICE.  THE PROBLEM IS

11   THAT THE JURY MAY BE CONFUSED BY THE WORD SINGLE, AGAIN, IF WE

12   DON'T GIVE SOME SCOPE AND BOUNDARY TO WHAT A DEVICE NEEDS TO

13   BE TO BE CONSIDERED A SINGLE DEVICE.

14          THE COURT: OKAY.

15          MR. VERHOEVEN: IF I MAY JUST RUN THROUGH OUR POINTS,

16   YOUR HONOR.  SO AS YOUR HONOR KNOWS, YOU START WITH THE CLAIMS

17   THEMSELVES.  AND HERE, IF YOU GO TO THE NEXT SLIDE, PLEASE.

18          MS. SHARPER: CAN WE -- CAN WE SWITCH OVER TO OURS?

19          MR. VERHOEVEN: GO TO THE NEXT SLIDE.  IF YOU LOOK AT

20   THE CLAIMS THEMSELVES, YOUR HONOR, EVERY TIME IN THE CLAIMS

21   WHERE THE PHRASE APPEARS, IT APPEARS IN THE SINGULAR, A

22   NETWORK DEVICE.  SO WE ARE NOT TALKING ABOUT MULTIPLE DEVICES

23   HERE.  IT'S A SINGLE DEVICE.  AND IF YOU LOOK THEN TO THE

24   SPECIFICATION, YOUR HONOR, AND SEE HOW THE SPECIFICATION

25   INFORMS THINGS, THE SPECIFICATION DESCRIBES SUBCOMPONENTS OF

1 THIS SINGLE DEVICE.  AND IN THE DEFINITIONS, FOR EXAMPLE, YOU

2 WILL SEE THAT THE DIFFERENT SUBCOMPONENTS ARE REFERRED TO AS

3 SUBCOMPONENTS THAT I THINK, YOUR HONOR, WOULD LEAD TO THE

4 IMPLICATION OR INFERENCE THAT THEY ARE SUBCOMPONENTS OF THE

5 SINGLE DEVICE.  GO TO THE NEXT SLIDE, PLEASE.

6      EVERY PICTURE IN THE SPECIFICATION SHOWS A SINGLE DEVICE,

7 YOUR HONOR.  AND THE NEXT SLIDE.  PERHAPS THE MOST IMPORTANT

8 PIECE OF THE SPECIFICATION IN TERMS OF THIS IS THE SUMMARY OF

9 THE INVENTION, YOUR HONOR.  AND THAT'S AT COLUMN 12, LINES 2

10 THROUGH 4.  IN THE SUMMARY OF THE INVENTION IT SAYS, QUOTE: IT

11 AGGREGATES SEVERAL FUNCTIONS TOGETHER INTO A SINGLE, COST-

12 EFFECTIVE DEVICE THAT IS DEPLOYED BY THE CARRIER AS A PREMISE-

13 BASED NETWORK ELEMENT.  AND AS YOUR HONOR KNOWS, THE SUMMARY

14 OF THE INVENTION IS NOT JUST A PREFERRED EMBODIMENT.  IT'S

15 DESCRIBING THE WHOLE INVENTION.  IF YOU GO TO THE NEXT SLIDE.

16      THE CONSTRUCTION PROPOSED BY PLAINTIFF, ESN, WE WOULD

17 CONTEND CREATES AMBIGUITY WITH THIS PHRASE LOGICAL NODE,

18 WHATEVER THAT IS.  AND ALSO THE PHRASE, QUOTE: COLLECTION OF

19 HARDWARE AND SOFTWARE.  LITERALLY UNDER THEIR CONSTRUCTION

20 THAT COULD BE A HUNDRED COMPUTERS THAT ARE LOGICALLY CONNECTED

21 IN DISPARATE AREAS OF THE COUNTRY.  THAT'S NOT WHAT THE PATENT

22 IS TALKING ABOUT WHEN IT TALKS ABOUT A NETWORK DEVICE.

23      IN FACT, YESTERDAY AT THE TUTORIAL THEY WERE TELLING YOU

24 THAT WHAT THEY ALLEGE IS THE THING THAT'S NEW OR UNIQUE ABOUT

25 THEIR INVENTION IS THEY INTEGRATED EVERYTHING INTO A SINGLE

- 19 -

1    BOX.  THEY DON'T CONTEND THAT SIP WAS THEIR INVENTION.  WHAT

2    THEY CONTEND IS THEY PUT IT ALL -- THEY PUT IT TOGETHER IN A

3    BOX IN THE EDGE SWITCH.  AND NOW WHEN THEY ARE GOING TO

4    CONSTRUE WHAT THAT DEVICE IS, THEY WANT TO CONSTRUE IT SO IT

5    COULD BE IN A BUNCH OF BOXES THAT ARE NOT NECESSARILY

6    CONNECTED IN ANY WAY EXCEPT LOGICALLY.  SO WE THINK THAT THAT

7    CREATES AMBIGUITY AND UNDULY BROADENS THE PHRASE AND SHOULD BE

8    REJECTED BY THE COURT.  GO TO THE NEXT SLIDE, PLEASE.

9         WITH RESPECT TO THE CLAIM DIFFERENTIATION ARGUMENT, YOUR

10   HONOR, THERE IS A DIFFERENCE BETWEEN WHETHER IT'S A SINGLE

11   DEVICE OR NOT AND WHETHER IT'S IN A SINGLE ENCLOSURE OR NOT.

12   AND SO THE FACT THAT THERE IS A DEPENDENT CLAIM THAT SAYS THAT

13   THE SINGLE DEVICE IS ALSO IN A SINGLE ENCLOSURE DOES NOT MEAN

14   THAT THE INDEPENDENT CLAIM DEVICE MEANS IT COULD BE MULTIPLE

15   DEVICES.  AND WE USED THE TELEPHONE AS AN EXAMPLE, YOUR HONOR,

16   BECAUSE TELEPHONE IS CLEARLY A SINGLE DEVICE AND THE JURY

17   WOULD UNDERSTAND THAT, YOUR HONOR.  AND IT HAS A COUPLE OF

18   ENCLOSURES.  IT'S GOT THE HANDSET WHICH HAS A SEPARATE

19   ENCLOSURE FROM THE BOX.  SO THE CLAIM DIFFERENTIATION

20   ARGUMENT, IN OUR VIEW, IS NOT PERSUASIVE, YOUR HONOR.  WITH

21   THAT I WILL CONCLUDE.

22        THE COURT: ANY REPLY POINTS OR COMMENTS?

23        MR. MCANDREWS: YES, BRIEFLY, YOUR HONOR.  FIRST OF

24   ALL, I NEVER REPRESENTED YESTERDAY THAT OUR INVENTION WAS

25   JAMMING A BUNCH OF THINGS IN A SINGLE BOX.  I DON'T THINK I

1   EVER USED THAT TERM.  BUT MORE IMPORTANTLY, THE CRITICISM

2   AGAIN IS THAT THIS LOGICAL NODE IS UNDEFINED.  AND CISCO'S

3   COUNSEL LOOSELY REPRESENTED WHAT I SAID A LOGICAL NODE

4   REQUIRED.  HE SUGGESTED THAT COMPUTERS STREWN ABOUT THE

5   COUNTRY COULD BE CONSIDERED A SINGLE DEVICE AS LONG AS THEY

6   ARE LOGICALLY CONNECTED IN SOME WAY.  THAT'S NOT AT ALL OUR

7   POINT.  THOSE COMPUTERS STREWN ABOUT THE COUNTRY WOULD BE

8   REPRESENTED TO THE NETWORK AS MULTIPLE DIFFERENT POINTS AROUND

9   THE NETWORK.  WHAT WE ARE TALKING ABOUT IS A COLLECTION OF

10  PIECES OF EQUIPMENT OR A COLLECTION OF ENCLOSURES ON A SINGLE

11  PREMISE THAT I PRESENTED TO A NETWORK AS A SINGLE LOGICAL

12  POINT, NOT A LOGICAL COLLECTION OF THINGS IN THE ABSTRACT BUT

13  AS A SINGLE, LOGICAL POINT REPRESENTED FROM THE NETWORK

14  PERSPECTIVE.

15          THE COURT: VERY WELL.  NOW WHAT WOULD YOU LIKE TO GO

16  TO NOW, WHICH CLAIM TERM?

17          MR. MCANDREWS: I THINK THAT THE BEST PLACE TO GO

18  NEXT IS TO TAKE ON THE SIP TERMS.  AND THE SIP TERMS, I

19  BELIEVE THERE ARE SIX OF THEM AND THEY ARE ALL -- THEY KIND OF

20  BEGIN TO FLOW TOGETHER.  SO I THINK AS WE AGREED YESTERDAY, WE

21  ARE GOING TO TAKE THESE AS ONE SINGLE TRANCHE ALL THE WAY

22  THROUGH.  AND THEN WHEN THAT IS DONE I THINK IT WILL LEAVE US

23  WITH THE SIXTH TERM ON THE SHEET WHICH THE PARTIES I BELIEVE

24  ARE IN -- DID WE DECIDE WHAT WE WERE GOING TO DO WITH THE

25  SIXTH TERM ON THE SHEET?  I THOUGHT WE DECIDED THAT MAYBE WE

1   WERE --

2          THE COURT: GOING TO STAND ON THE --

3          MR. MCANDREWS:  -- JUST HAPPY TO JUST LIVE WITH OUR

4   BRIEFS.

5          MR. VERHOEVEN: STAND ON THE PAPERS.

6          MR. MCANDREWS: STAND ON OUR PAPERS.

7          MR. VERHOEVEN: FROM OUR PERSPECTIVE, YES, UNLESS YOU

8   PRESENT ARGUMENT, COUNSEL.

9          MR. MCANDREWS: NO, I WILL NOT BE PRESENTING ARGUMENT

10  THEN.

11         THE COURT: WELL, I'D LIKE TO HEAR FROM YOU VERY

12  BRIEFLY ON THE SIXTH TERM WHY YOU DISAGREE, AND MAYBE IT'S

13  CLEAR FROM YOUR BRIEFING WHY YOU DISAGREE WITH MY PRELIMINARY

14  CONSTRUCTION.

15         MR. MCANDREWS: YES, YOUR HONOR.

16         THE COURT: YOU DON'T NECESSARILY HAVE TO DO IT NOW,

17  IN WHATEVER ORDER YOU'D LIKE TO TAKE IT UP.

18         MR. MCANDREWS: MAYBE A GOOD WAY TO DO IT IS TO

19  HANDLE IT NOW WHILE WE'VE GOT THE SHEET OUT.  YOUR HONOR --

20         THE COURT: AND THIS DOESN'T HAVE TO BE LENGTHY IF

21  YOU ARE GOING TO RELY ON YOUR BRIEFING, BUT IF YOU'LL BRIEFLY

22  --

23         MR. MCANDREWS: YEAH, I'M JUST -- I AM NOT GOING TO

24  GO WITH THE POWERPOINT HERE.  I'LL JUST GO OFF THE PAPER HERE.

25         WE ARE IN -- WE ARE LARGELY IN AGREEMENT WITH THE COURT'S

1   CONSTRUCTION.

2           THE COURT: WHERE ARE YOU IN DISAGREEMENT WITH THE

3   COURT'S CONSTRUCTION?

4           MR. MCANDREWS: AND ACTUALLY IT'S I DON'T EVEN THINK

5   WE ARE IN DISAGREEMENT.  I JUST THINK THERE IS -- THERE IS

6   POSSIBLE ROOM FOR A MISUNDERSTANDING OF ONE PORTION OF THE

7   CONSTRUCTION.  AND SO IT READS, THE CONSTRUCTION READS: SIP

8   PROXY SERVER THAT CAN BE USED BY THE SIP USER AGENTS

9   REPRESENTING TELEPHONE STATIONS.  ACTUALLY LET ME POINT OUT

10  TWO MINOR THINGS HERE.  SO THE FIRST PORTION THAT I JUST READ

11  THERE, WHILE I DON'T THINK IT NECESSARILY READS AS A

12  REQUIREMENT, IT DOES STATE THAT THERE ARE SIP USER AGENTS,

13  PLURAL, REPRESENTING TELEPHONE STATIONS, PLURAL, AND I DON'T

14  THINK THAT'S A REQUIREMENT OF THE CLAIM.  AND I WOULD -- I

15  WOULD BE HAPPY TO LEAVE THAT PORTION OF IT IF THOSE WERE

16  SINGULARIZED.

17          THE COURT: IF IT SIMPLY SAID: AGENT AND STATION.  IS

18  THAT WHAT YOU ARE --

19          MR. MCANDREWS: RIGHT.  USED BY THE SIP USER AGENT

20  REPRESENTING THE TELEPHONE STATION, OR IT'S A ONE OR MORE

21  TELEPHONE STATION SITUATION, ACTUALLY.  BUT THEN THE SECOND

22  PART WHICH -- AND IF WE RECALL FROM THE DISCUSSION YESTERDAY,

23  THE SIP USER AGENT IS ACTUALLY PROVIDED BY THE NETWORK DEVICE

24  AND SO IT REPRESENTS A TELEPHONE STATION WHICH IS INCAPABLE OF

25  REPRESENTING ITSELF TO A SIP SIGNALING NETWORK WITHOUT THE

1   NETWORK DEVICE.

2       THE SECOND PORTION READS, THOUGH, SIP USER AGENTS

3   REPRESENTING COMPUTER STATIONS TO PARTICIPATE IN SIP NETWORK

4   SIGNALING OPERATIONS.  AND THE CLAIM ITSELF DOES NOT SUGGEST

5   OR REQUIRE IN ANY WAY THAT THERE IS A SIP USER AGENT IN THE

6   NETWORK DEVICE.  IT MAY BE THAT THE COMPUTER WORK STATION HAS

7   ITS OWN SIP USER AGENT SO IT'S ABLE TO REPRESENT ITSELF EVEN

8   TO THE NETWORK DEVICE.

9       NOW, YOUR PROPOSED CLAIM CONSTRUCTION DOESN'T REQUIRE

10  THAT.  A NATURAL READING OF THIS IS THAT THE SIP USER AGENT

11  COULD BE IN THE NETWORK DEVICE OR IT COULD BE SOMEWHERE ELSE

12  BETWEEN THE COMPUTER WORK STATION AND THE NETWORK DEVICE, OR

13  IT COULD BE IN THE COMPUTER WORK STATION.  MY CONCERN IS THAT

14  BECAUSE IT PARALLELS THE LANGUAGE IMMEDIATELY BEFORE IT THAT

15  IT'S A SIP USER AGENT REPRESENTING A TELEPHONE STATION, THAT

16  IT MAY CONFUSE THE JURY INTO BELIEVING IT --

17          THE COURT: WELL, HOW WOULD YOU LIKE TO CLARIFY IT OR

18  TWEAK IT?

19          MR. MCANDREWS: THE ONLY WAY I WOULD CLARIFY IT IS

20  LEAVE OUT THE PORTION THAT SAYS A SIP USER AGENT REPRESENTING

21  COMPUTER WORK STATIONS.  SO IT WOULD SAY: SIP PROXY SERVER

22  THAT CAN BE USED BY THE SIP USER AGENT REPRESENTING TELEPHONE

23  -- REPRESENTING THE TELEPHONE STATION AND COMPUTER WORK

24  STATIONS TO PARTICIPATE IN SIP NETWORK SIGNALING OPERATIONS.

25  SO WE WOULD JUST LEAVE OUT THE SIP USER AGENT REPRESENTING.

1          THE COURT: I SEE.  COMMENTS FROM CISCO?

2          MR. VERHOEVEN: ONE SECOND, YOUR HONOR.

3          THE COURT: YOU MAY CONFER IF YOU WISH, ESPECIALLY IF

4     IT LEADS TO AGREEMENT.

5       (SIDE BAR DISCUSSION BETWEEN MR. VERHOEVEN AND MS.

6     SHARPER, OFF THE RECORD)

7          MR. VERHOEVEN: YOUR HONOR, WE THINK THAT AS TO THE

8     POINT THAT COUNSEL JUST MADE, THAT YOUR CONSTRUCTION IS

9     ACTUALLY CLEARER BECAUSE IT'S JUST EASIER TO UNDERSTAND.  SO

10    WE WOULD PREFER YOUR WORDING.  AND YOUR HONOR REQUESTED VERY

11    BRIEFLY FOR US TO ARTICULATE WHY WE WOULDN'T STIPULATE TO THIS

12    CONSTRUCTION, SO LET ME DO THAT REAL QUICK FOR THE RECORD.

13    CAN WE SWITCH OVER TO --

14         THE COURT: SO IF I AM GOING TO USE THIS, YOU WANT IT

15    USED AS IS.  YOU DON'T NECESSARILY AGREE WITH THE CONSTRUCTION

16    BUT YOU DON'T LIKE THE PLAINTIFF'S MODIFICATIONS OR

17    CLARIFICATION?

18         MR. VERHOEVEN: AGREE.  OUR POINT IS A DIFFERENT

19    POINT FROM THE PLAINTIFF'S POINT, YOUR HONOR.  AND WITH

20    RESPECT TO THE PLAINTIFF'S POINT, WE THINK THAT YOUR

21    CONSTRUCTION IS ACTUALLY CLEARER, YOUR HONOR.  SO WE'D LIKE IT

22    AS IS.  AND THE REASON WE ARE NOT STIPULATING TO THE COURT'S

23    CONSTRUCTION IS BECAUSE WE THINK THAT THE PROPER

24    INTERPRETATION OF THIS PHRASE WOULD INCLUDE THE NOTION THAT

25    THIS SIP PROXY SERVER IS THE DEFAULT SERVER.

1    JUST REALLY BRIEFLY, YOUR HONOR, EVERY TIME IT APPEARS IN

2    THE SPEC -- AND WE PUT THIS UP, I AM NOT GOING TO READ THEM --

3    BUT EVERY TIME IT APPEARS IN THE SPEC, IT'S CLEAR THAT IT'S

4    REFERRING TO --

5         THE COURT: THIS IS YOUR SLIDE 67?

6         MR. VERHOEVEN: THIS IS SLIDE 67 OF OUR POWERPOINT

7    AND THERE'S CITATIONS ON EACH OF THESE.  I AM NOT GOING TO

8    READ THEM INTO THE RECORD, YOUR HONOR, UNLESS YOU WANT ME TO.

9         THE COURT: NO.  WE'LL MAKE THE SLIDES A PART OF THE

10   RECORD, BOTH PARTIES.

11        MR. VERHOEVEN: THANK YOU, YOUR HONOR.  BUT EACH OF

12   THESE SHOWS THAT IT'S REFERRING TO THIS AS THE DEFAULT SIP

13   PROXY SERVER.  AND THE NEXT SLIDE, PLEASE.

14    IN THE SPECIFICATION, AND I WILL CITE THIS ONE.  THIS IS

15   COLUMN 31, 44 THROUGH 47.  THIS IS THE BOTTOM BULLET HERE.  IT

16   SAYS, QUOTE: "THESE SIP USER AGENTS MUST UTILIZE THE SIP

17   PROTOCOL STACK AS THEIR DEFAULT SIP PROXY SERVER IN ORDER TO

18   PARTICIPATE IN SIP NETWORK SIGNALING OPERATIONS THAT INVOLVE

19   CARRIER-OWNED SIP NETWORK SIGNALING ENDPOINTS," CLOSE QUOTE.

20    AND SO BASED ON THE SPECIFICATION, I KNOW THERE IS A

21   GENERAL PROPOSITION THAT YOU ARE NOT SUPPOSED TO IMPORT

22   LIMITATIONS FROM THE SPECIFICATION INTO THE CLAIMS, BUT HERE

23   WE FEEL THAT THE SPECIFICATION AS A WHOLE WHEN YOU READ IT,

24   THAT ONE OF ORDINARY SKILL WOULD UNDERSTAND THAT THIS NOTION

25   THAT THE SIP'S PROXY SERVER IS THE DEFAULT PROXY SERVER SHOULD

1    BE INCLUDED.  AND THAT'S OUR -- THAT'S OUR ONLY POINT OF

2    DISAGREEMENT, YOUR HONOR.

3            THE COURT: ANY REPLY COMMENTS, OR DO YOU WANT TO

4    STAND ON THE BALANCE OF YOUR -- ON YOUR PAPERS?

5            MR. MCANDREWS: I JUST WANT TO MAKE A FEW BRIEF

6    COMMENTS HERE, AND THAT IS, SO AS CISCO COUNSEL ACKNOWLEDGES,

7    THIS IS TAKING WORDS FROM THE SPECIFICATION FROM THE PREFERRED

8    EMBODIMENT AND IMPORTING THEM INTO THE CLAIM.  AND IF WE CAN

9    SWITCH OVER TO MINE JUST BRIEFLY.

10      AND SO CISCO'S CONSTRUCTION ADDS, FIRST OF ALL, IT ADDS

11   THE WORD DEFAULT AS CISCO'S COUNSEL JUST MENTIONED, BUT IT

12   ALSO THROWS IN THAT IT REQUIRES THAT INVOLVED CARRIER-OWNED

13   SIP NETWORK SIGNALING ENDPOINTS.  AND THESE TERMS DEFAULT, AND

14   THE REFERENCE TO SIP NETWORK SIGNALING ENDPOINTS APPEARS

15   NOWHERE IN THE CLAIM.

16      THIS IS A CLASSIC CASE OF IMPORTING LIMITATIONS FROM A

17   PREFERRED EMBODIMENT INTO THE CLAIM WITHOUT ANY HOOK IN THE

18   CLAIM.  THERE IS NO HOOK IN THE CLAIM.  YOU KNOW, THE FEDERAL

19   CIRCUIT HAS ASKED FOR A TEXTUAL HOOK IN THE CLAIM BECAUSE WE

20   ARE SUPPOSED TO BE INTERPRETING THE LANGUAGE OF THE CLAIM, NOT

21   ADDING LIMITATIONS.  AND THIS IS A SITUATION WHERE WE BELIEVE

22   THAT THE TERM DEFAULT, BECAUSE IT'S NOT IN THE CLAIM, MERELY

23   IN THE PREFERRED EMBODIMENT, AND THIS DISCUSSION OF SIP

24   NETWORK SIGNALING ENDPOINTS THAT ARE INVOLVED IN CARRIER-OWNED

25   OPERATIONS IS UNSUPPORTED BY THE LANGUAGE IN THE CLAIM.

1          THE COURT: ARE YOU READY TO GO FORWARD ON THE

2    BALANCE?  I THINK YOU ARE GOING TO DO THOSE IN ALL ONE GROUP,

3    IS THAT CORRECT?  AND THEN WE ARE GOING TO HAVE A RESPONSE AND

4    A REPLY.  IS THAT CORRECT?

5          MR. MCANDREWS: THAT'S CORRECT, YOUR HONOR.  YOUR

6    HONOR, AS I MENTIONED, THERE ARE SIX DISPUTED TERMS IN THE SIP

7    TRANCHE, AND I SKIPPED FORWARD TO SLIDE 32 OF OUR

8    PRESENTATION.  HERE WE SEE THE DISPUTED CLAIM TERM OR PHRASE.

9    IN CONTEXT, IT'S A MACHINE-READABLE STORAGE MEDIUM THAT STORES

10   PROCESSOR-EXECUTABLE INSTRUCTIONS TO PROVIDE SIP AGENTS, AND

11   THE DISPUTED TERM HERE IS SIP.

12       ESN'S PROPOSED CONSTRUCTION IS THE TERM SIP IS SHORTHAND

13   FOR SESSION INITIATION PROTOCOL, WHICH IS A COMMUNICATIONS

14   PROTOCOL FOR CREATING, MODIFYING, AND TERMINATING SESSIONS

15   WITH ONE OR MORE PARTICIPANTS.  THESE SESSIONS MAY INCLUDE

16   INTERNET TELEPHONE CALLS, INTERNET MULTIMEDIA CONFERENCES, AND

17   OTHER TYPES OF MULTIMEDIA DISTRIBUTION.

18       NOW, ESN'S CONSTRUCTION COMES DIRECTLY OUT OF RFC 2543,

19   AND THERE WAS QUITE A BIT OF DISCUSSION OVER WHAT AN RFC IS

20   YESTERDAY.  OUR PROPOSED CONSTRUCTION IS NEARLY A WORD-FOR-

21   WORD REPEAT OF THE ABSTRACT OF RFC 2543.  AS YOU CAN SEE RIGHT

22   HERE, THIS COMES RIGHT FROM PAGE 1 OF RFC 2543, AND ESN'S

23   CONSTRUCTION MIRRORS THIS CONSTRUCTION VERY CLOSELY.

24       NOW, IT SEEMS TO BE THE DEBATE BETWEEN THE PARTIES THAT

25   THE JURY SHOULD ADDITIONALLY BE TOLD THAT THIS MUST BE SIP

1   ACCORDING TO RFC 2543, BUT I THINK THAT THE JURY SHOULD BE

2   ALLOWED TO UNDERSTAND THAT THIS IS SIP.  IT IS NOT SIP PER

3   2543.  IT IS SIP AS ONE OF SKILL IN THE ART WOULD UNDERSTAND

4   AT THE TIME.  AND AS WE DISCUSSED YESTERDAY, THESE RFCS --

5   WELL, FOR STARTERS, RFC 2543 WAS REPLACED.  IN OTHER WORDS,

6   THE DRAFT SIP STANDARD WAS UPDATED ONLY ABOUT SIX WEEKS AFTER

7   THE

8   PATENT-IN-SUIT WAS FILED.  AND I THINK THAT RFC 3261 WILL

9   INCLUDE MUCH OF WHAT THOSE OF SKILL IN THE ART AT THE TIME THE

10  PATENT WAS FILED WOULD UNDERSTAND TO BE THE USAGE OF SIP.  SO

11  I DON'T THINK THAT FOR STARTERS WE SHOULD BE LIMITED TO RFC

12  2543.

13          THE COURT: THAT'S ESSENTIALLY THE CRUX OF THE BATTLE

14  ON ALL THESE TERMS, IS IT NOT, WHETHER IT'S LIMITED TO THESE

15  STANDARDS, THIS LANGUAGE AS SET FORTH AND IN ACCORDANCE WITH?

16  IS THAT CORRECT?

17          MR. MCANDREWS: THAT'S TRUE, YOUR HONOR.  AND WE

18  BELIEVE THAT WHEN THE TERM IN ACCORDANCE WITH IS USED,

19  ESPECIALLY WHEN IT SAYS IN ACCORDANCE WITH AND A SPECIFIC

20  STANDARD, RFC 25 -- SPECIFIC DRAFT STANDARD RFC 2543 IS

21  INCLUDED IN THE CLAIM LANGUAGE, IT PUTS THE JURY IN THE

22  IMPROPER POSITION OF HAVING TO PULL OUT THIS VERY LENGTHY

23  SPECIFICATION AND DETERMINE ON THE FLY WHETHER SOMETHING THAT

24  CISCO IS ASSERTING TO BE A REQUIREMENT IS ACTUALLY A

25  REQUIREMENT.  AND I WILL SHOW YOU AS WE MOVE THROUGH THESE

1   TERMS THAT THAT REALLY IS A DANGER BECAUSE CISCO AND ITS

2   EXPERT HAVE TAKEN SOME LIBERTIES WITH WHAT ARE THE ACTUAL

3   REQUIREMENTS EVEN OF THE DRAFT STANDARDS.

4       OUR POINT, ESN'S POSITION IS THAT AT LEAST WITH RESPECT

5   TO THIS ELEMENT, INTERPRETATION OF THE WORD SIP, THAT USING

6   THE GENERAL DEFINITION OF SIP AS IT'S PROVIDED IN RFC 2543 AND

7   IN RFC 3261 SHOULD BE SUFFICIENT FOR THE JURY.

8       NOW, ONE ADDITIONAL POINT IS THAT THESE DOCUMENTS ARE

9   CALLED REQUEST FOR COMMENTS.  AND CISCO'S COUNSEL SUGGESTED

10  YESTERDAY THAT IT DOESN'T REALLY MEAN WHAT IT SAYS.  IT'S NOT

11  ASKING FOR COMMENTS.  BUT RIGHT IN THE DOCUMENT ITSELF IT SAYS

12  THIS DOCUMENT SPECIFIES AN INTERNET STANDARDS TRACK PROTOCOL

13  FOR THE INTERNET COMMUNITY, AND REQUESTS DISCUSSION AND

14  SUGGESTIONS FOR IMPROVEMENTS.

15      SO THE POINT HERE IS THAT THE GUIDELINES OF THE RFC, THEY

16  ARE GUIDELINES.  THEY ARE NOT ETCHED IN STONE.  THERE IS NOT

17  PERFECT TO THE LETTER COMPLIANCE REQUIRED WITH EVERY NUANCE

18  AND DETAIL OF RFC 2543 OR 3261.  THOSE IN THE INTERNET

19  COMMUNITY THAT ARE IMPLEMENTING THESE STANDARDS WOULD

20  UNDERSTAND THAT ONLY SUBSTANTIAL COMPLIANCE WITH A VIEW

21  TOWARDS THE PURPOSE OF THE STANDARD, WHICH IS INTEROPERABILITY

22  BETWEEN EQUIPMENT MADE BY DIFFERENT MANUFACTURERS.  CISCO'S

23  COUNSEL MENTIONED YESTERDAY THAT IN THE MID 1990S VOCALTEC

24  CAME OUT WITH A PIECE OF SOFTWARE, BUT IT WAS PROPRIETARY.  IT

25  COULD ONLY BE USED BY VOCALTEC.  SO IF YOU WANTED TO

1 COMMUNICATE WITH SOMEBODY THAT HAD A VOCALTEC PIECE OF

2 EQUIPMENT, YOU HAD TO BUY IT FROM

3 VOCALTEC.

4         THE COURT: ANY FEDERAL CIRCUIT CASE LAW ON THIS

5 ISSUE?

6         MR. MCANDREWS: ANY FEDERAL CASE LAW ON THE

7 INTERPRETATION OF STANDARDS?

8         THE COURT: RIGHT.

9         MR. MCANDREWS: THERE IS NO DOUBT THAT THERE ARE

10 FEDERAL CIRCUIT CASES THAT ALLOW INCLUSION OF STANDARDS IN A

11 PROPOSED CONSTRUCTION.  BUT THE UNDERSTANDING HERE IS BECAUSE

12 THIS IS NOT A STANDARD, IT IS A DRAFT STANDARD, THAT IT'S

13 STILL IN A STAGE OF THE RFC WHERE THEY ARE ACTIVELY SOLICITING

14 COMMENTS FOR IMPROVEMENTS, IT WOULD BE UNDERSTOOD, BUILT INTO

15 THE LITERAL SCOPE OF THE CONSTRUCTION THAT ONLY SUBSTANTIAL

16 COMPLIANCE WITH THE IMPORTANT PARTS OF THE RFC WOULD BE

17 REQUIRED TO MEET THE LITERAL LANGUAGE OF THE CLAIM.

18     NOW, THE IMPORTANT PARTS ARE EASY TO IDENTIFY.  AS I'LL

19 SHOW YOU IN A MINUTE, CISCO TOOK SOME LIBERTIES, THOUGH, AND

20 THERE IS A DANGER IN ALLOWING THEM TO ALLEGE TO THE JURY THAT

21 THE RFC REQUIRES SOMETHING WHEN IT DOESN'T IN FACT REQUIRE IT

22 BY ITS OWN LANGUAGE.  HERE IN FACT IS -- THIS IS RFC 2119.

23 IT'S ESN EXHIBIT L AT PAGE 1.  THIS IS CALLED BEST CURRENT

24 PRACTICE FOR RFCS.  AND THE RFCS ARE PUT OUT BY A GROUP CALLED

25 THE INTERNET ENGINEERING TASK FORCE, IETF.  AND ALL OF THESE

1    RFCS ARE READ.  THEY CROSS REFERENCE EACH OTHER.  THEY ARE

2    READ AS A GROUP BY THOSE OF SKILL IN THE ART.

3        RFC 2119 PROVIDES BEST CURRENT PRACTICES FOR THE DRAFTING

4    OF AN RFC.  AND THIS SAYS:  IN MANY STANDARDS TRACK DOCUMENTS,

5    SUCH AS RFC 2543 AND 3261, THE DRAFT STANDARDS ON SIP --

6    SEVERAL WORDS ARE USED TO SIGNIFY THE REQUIREMENTS IN THE

7    SPECIFICATION.  THESE WORDS ARE OFTEN CAPITALIZED.  THIS

8    DOCUMENT DEFINES THESE WORDS AS THEY SHOULD BE INTERPRETED IN

9    THE IETF DOCUMENTS.  AUTHORS WHO FOLLOW THESE GUIDELINES

10   SHOULD INCORPORATE THIS PHRASE NEAR THE BEGINNING OF THEIR

11   DOCUMENT.  SO, IF AN AUTHOR OF AN RFC IS GOING TO FOLLOW THE

12   GUIDELINES OF 2119, THEY ARE GOING TO INCORPORATE THIS PHRASE.

13   AND THE PHRASE IS THE KEY WORDS CAPITALIZED M-U-S-T, MUST NOT,

14   AND SO ON, IN THIS DOCUMENT ARE TO BE INTERPRETED AS DESCRIBED

15   IN RFC 2119.

16       RFC 2119 GOES ON TO CAUTION DRAFTERS IN THE USE OF THESE

17   TERMS THAT ARE CALLED IMPERATIVES.  THESE CAPITALIZED MUST,

18   MUST NOT, SHALL, OPTIONALLY, AND SO ON, THOSE ARE CALLED

19   IMPERATIVES.  AND THE GUIDELINES -- THIS PROVIDES GUIDANCE IN

20   THE USE OF IMPERATIVES.  IMPERATIVES OF THE TYPE DEFINED IN

21   THIS MEMO MUST BE USED WITH CARE AND SPARINGLY.  IN

22   PARTICULAR, THEY MUST ONLY BE USED WHERE IT IS ACTUALLY

23   REQUIRED FOR INTEROPERATION.  AND AGAIN, THE WHOLE PURPOSE OF

24   THESE STANDARDS IS TO ALLOW INTEROPERATION BETWEEN EQUIPMENT

25   MADE BY DIFFERENT MANUFACTURERS.  SO THEY MUST ONLY BE USED

1    WHERE IT IS ACTUALLY REQUIRED FOR INTEROPERATION OR TO LIMIT

2    BEHAVIOR WHICH HAS POTENTIAL FOR CAUSING HARM (E.G., LIMITING

3    RETRANSMISSION.)  FOR EXAMPLE, THEY MUST NOT BE USED TO TRY TO

4    IMPOSE A PARTICULAR METHOD ON IMPLEMENTORS WHERE THE METHOD IS

5    NOT REQUIRED FOR INTEROPERABILITY.

6        SO STANDARDS MAY MENTION CERTAIN IMPLEMENTATION DETAILS

7    BUT THOSE AREN'T IMPERATIVES.  THEY DON'T HAVE TO BE FOLLOWED

8    NECESSARILY.  SO THOSE WOULD NOT BE CONSIDERED A REQUIREMENT

9    OF THE SPECIFICATION AND A DEVICE THAT DID NOT FOLLOW THE NON-

10   IMPERATIVES OF THE SPEC COULD STILL BE CONSIDERED COMPLIANT

11   WITH THE DRAFT STANDARD.

12       NOW, I SAID THAT -- I MENTIONED THAT IF A DRAFTER OF A

13   STANDARD, SUCH AS RFC 2543, IS GOING TO RELY ON THOSE

14   GUIDELINES ON IMPERATIVES FROM 2119, THEY WOULD INCLUDE A

15   PHRASE RIGHT IN THE RFC ITSELF.  AND THIS COMES FROM RFC 2543.

16   IT'S ALSO FOUND IN RFC 3261.  IT'S ON PAGE 8 OF RFC 2543 AND

17   PAGE 10 OF RFC 3261.  AND THIS IS -- THIS IS THE PHRASE THAT

18   INCORPORATES THE REQUIREMENTS OF RFC 2119.  IT SAYS THAT THESE

19   IMPERATIVE TERMS ARE TO BE INTERPRETED AS DESCRIBED IN RFC

20   2119.

21       SO THE POINT, YOUR HONOR, IS THAT SUBSTANTIAL COMPLIANCE

22   WITH THE DRAFT STANDARDS WOULD BE ALL THAT'S EXPECTED TO

23   DETERMINE WHETHER YOU ARE USING SIP OR SOME OTHER STANDARD.

24   AND OF COURSE THE FOCUS WOULD BE ON IMPERATIVES.  NOW, WE FEEL

25   -- ESN FEELS THAT IT WOULD HAVE BEEN APPROPRIATE WHERE CISCO

1    FELT THAT A PARTICULAR REQUIREMENT OF A STANDARD WAS RELEVANT

2    TO THE DISPUTE, THEY SHOULD HAVE BROUGHT IT FORWARD.  IN ONE

3    CASE THEY DID, AND I WILL BE ABLE TO SHOW TO THE COURT THAT

4    THAT PARTICULAR REQUIREMENT THAT THEY -- DETAIL THAT THEY CALL

5    A REQUIREMENT IS ACTUALLY NOT A REQUIREMENT PER RFC 2119

6    BECAUSE IT IS NOT USED WITH THE IMPERATIVES.  IN OTHER WORDS,

7    IT'S AN IMPLEMENTATION DETAIL THAT IS LEFT UP TO THE

8    IMPLEMENTOR TO DECIDE WHETHER THEY WANT TO USE IT OR NOT.

9         THE COURT: SO DO YOU TAKE THE POSITION ON ALL THESE

10   TERMS THERE ARE NO REQUIREMENT PRESENT ON ANY OF THEM?  OR DO

11   YOU CONCEDE THERE ARE REQUIREMENTS PRESENT WITH SOME OF THE

12   TERMS?  WHAT'S YOUR --

13        MR. MCANDREWS: WE CONCEDE THAT THERE ARE

14   REQUIREMENTS FOR CERTAIN TERMS.  BUT ONE MUST BE VERY CAREFUL

15   IN DETERMINING WHETHER IT IS A REQUIREMENT BECAUSE IT WILL USE

16   IMPERATIVES.  AND IT MAY USE AN IMPERATIVE SUCH AS MAY.  AND

17   IN THAT CASE WE KNOW IT MAY OR IT MAY NOT DO WHAT IT STATED,

18   SO IT WOULD BE DIFFICULT TO CALL THAT A REQUIREMENT.  OR IT

19   MAY SAY OPTIONALLY.  SO YOU ARE REALLY NOT CALLING -- I

20   SUPPOSE IT'S A REQUIREMENT, BUT IT'S A REQUIREMENT THAT IT MAY

21   OR MAY NOT, SO IT'S REALLY NOT A REQUIREMENT.  IT'S GOING TO

22   BE THE ONES THAT SAY MUST AND MUST NOT AND SHALL AND SHALL NOT

23   THAT REALLY ARE THE ONES THAT ARE REQUIREMENTS.

24        SINCE CISCO HASN'T POINTED OUT ANY OF THOSE REQUIREMENTS

25   OTHER THAN THE SINGLE ONE THAT I'LL ADDRESS, THEY HAVE REALLY

1    PUT THE JURY IN A DIFFICULT SPOT IF THE COURT'S CONSTRUCTION

2    SAYS IN ACCORDANCE WITH.  WE FEEL LIKE OUR CONSTRUCTIONS PULL

3    IN THE ESSENTIAL REQUIREMENTS OF THE SIP SPECIFICATION THAT

4    ARE NECESSARY TO DETERMINE WHETHER YOU ARE LOOKING AT A SIP

5    USER AGENT AND A SIP PROXY SERVER OR NOT.

6         NOW MOVING ON TO THE NEXT TERM, SIP AGENTS, AND THE

7    DISPUTE HERE IS OVER WHETHER THE TERM SIP AGENTS IS INDEFINITE

8    OR NOT.  CISCO HAS NOT PROPOSED ANY CONSTRUCTION FOR THIS TERM

9    BECAUSE THEY CLAIM THAT THE TERM SIP AGENTS IS INDEFINITE.

10   OUR CONSTRUCTION IS THAT A SIP AGENT IS A SOFTWARE ENTITY THAT

11   PROVIDES A SIP FUNCTION AND ACTS ON BEHALF OF A PERSON, THING,

12   OR OTHER SOFTWARE ENTITY.  A SIP USER AGENT AND A SIP PROXY

13   SERVER ARE EXAMPLES OF SIP AGENTS.  AND I WILL DEMONSTRATE HOW

14   THAT IS SO.

15        FIRST OF ALL, FROM THE CONTEXT OF THE CLAIM WE UNDERSTAND

16   THAT THE DRAFTER OF THE CLAIM INTENDED THAT THE SIP AGENTS

17   REFERRED TO IN THE FIRST PORTION OF THE QUOTE THAT I PROVIDE

18   ON SLIDE 41 ARE THE TWO AGENTS THAT FOLLOW.  SO, IN OTHER

19   WORDS, IT'S A MACHINE-READABLE STORAGE MEDIUM THAT STORES

20   PROCESSOR-EXECUTABLE INSTRUCTIONS TO PROVIDE SIP AGENTS.  SO

21   THIS IS SAYING THAT THERE IS A MEMORY, IT STORES SOFTWARE, AND

22   IT PROVIDES AT LEAST TWO SIP AGENTS.  THE LANGUAGE THAT

23   FOLLOWS, THE TWO SUBSECTIONS OF THE CLAIM THAT FOLLOW LISTS

24   WHAT THOSE TWO AGENTS ARE.  THE INSTRUCTIONS CAUSE THE NETWORK

25   DEVICE TO PROVIDE A SIP USER AGENT.  THE INSTRUCTIONS FURTHER

1    CAUSE THE NETWORK DEVICE TO IMPLEMENT A SIP PROXY SERVER.

2         NOW, SO CISCO PROPOSES THAT IT'S INDEFINITE.  BUT TO DO

3    THIS THEY MUST IGNORE THE CONTEXT IN WHICH THE TERM IS USED IN

4    CLAIM 9 AND THEY ALSO HAVE TO IGNORE THE FACT THAT THE TERM

5    AGENTS IS USED IN A MANNER THAT IS PERFECTLY CONSISTENT WITH

6    THE CLASSIC DEFINITION OF AGENT.  SO THE CLASSIC DEFINITION --

7    SO THE CLASSIC DEFINITION OF AGENT IS AN AGENT -- OF AN AGENT

8    IS AN ENTITY ACTING ON BEHALF OF ANOTHER.  AND THIS COMES OUT

9    OF NEWTON'S TELECOM DICTIONARY WHICH IS A DICTIONARY FROM THE

10   RELEVANT FIELD, TELECOMMUNICATIONS.  CISCO'S ONLY REBUTTAL TO

11   THIS DEFINITION IS THAT IT'S NOT APPLICABLE TO THE FIELD OF

12   THE '519 PATENT.  THEY SUGGEST BECAUSE IT'S NOT A SIP

13   DICTIONARY THAT WE CANNOT RELY ON IT FOR DETERMINING WHAT THE

14   TERM SIP AGENT MEANS.

15        NOW, THIS IS ODD THAT CISCO WOULD SUGGEST NEWTON'S

16   TELECOM DICTIONARY CAN'T BE USED FOR THE '519 PATENT BECAUSE

17   CISCO RELIED ON NEWTON'S TELECOM IN THEIR OWN PROPOSED

18   CONSTRUCTIONS.  NOW, THOSE DIDN'T MAKE IT INTO THE BRIEFS

19   BECAUSE THE PARTIES WOUND UP AGREEING ON THOSE CONSTRUCTIONS

20   AND THEY BECAME AGREED CONSTRUCTIONS.  BUT CISCO, AND THIS IS

21   IN ESN'S EXHIBIT O IN THEIR LOCAL RULE 4-2 PRELIMINARY CLAIM

22   CONSTRUCTIONS RELIED ON NEWTON'S, THERE IS NO REASON TO

23   BELIEVE THAT NEWTON'S IS NOT AN AUTHORITATIVE DICTIONARY.  AND

24   WHAT THIS DEMONSTRATES, THAT IN THE TELECOM FIELD, THE TERM

25   ENTITY -- I AM SORRY -- THE TERM AGENT TAKES ON THE SAME

1    MEANING THAT IT WOULD IN ORDINARY ENGLISH.

2        NOW, THE CLASSIC DEFINITION PERFECTLY APPLIES TO THE

3    MANNER IN WHICH SIP AGENTS IS USED IN THE CLAIM.  THE FIRST

4    AGENT IS LISTED HERE: TO PROVIDE A SIP USER AGENT TO REPRESENT

5    A NON-SIP TELEPHONE.  SO IT'S A USER AGENT THAT IS ACTING ON

6    BEHALF OF THE NON-SIP TELEPHONE.  AND THAT'S EXACTLY WHAT'S

7    STATED IN THE PATENT SPECIFICATION, BY THE WAY.  IN THE '519

8    PATENT AT COLUMN 31, LINES 41 THROUGH 44, IT SAYS: SIP USER

9    AGENTS ARE CREATED TO OPERATE ON BEHALF OF TELEPHONE STATIONS.

10   I DON'T THINK IT COULD BE ANY MORE CLEAR THAT A SIP USER AGENT

11   IS ONE OF THE TWO SIP AGENTS REFERRED TO IN THE CLAIM, NOT TO

12   MENTION IT HAS RIGHT IN ITS OWN NAME THE WORD AGENT, SIP USER

13   AGENT.

14       NOW THE SECOND OF THE TWO AGENTS LISTED IN THE CLAIM IS

15   THE SIP PROXY SERVER.  AND THE CLAIM STATES THAT THE SIP PROXY

16   SERVER MEDIATES ALL SIP COMMUNICATIONS OVER THE BROADBAND

17   NETWORK INTERFACE INVOLVING A NON-SIP TELEPHONE.  SO IT IS

18   ACTING ON BEHALF OF THE NON-SIP TELEPHONE SOMEWHAT INDIRECTLY

19   BECAUSE IT'S ACTUALLY OPERATING ON BEHALF OF THE SIP USER

20   AGENT THAT IS REPRESENTING THE NON-SIP TELEPHONE.  BUT IN ANY

21   EVENT, THE DEFINITION OF SIP PROXY SERVER PROVIDED IN THE RFC

22   THAT BOTH OF THE PARTIES RELIED ON IS A SIP PROXY SERVER IS AN

23   INTERMEDIARY PROGRAM THAT ACTS AS BOTH A SERVER AND A CLIENT

24   FOR THE PURPOSE OF MAKING REQUESTS ON BEHALF OF OTHER CLIENTS.

25   SO IT PERFECTLY TRACKS THE LANGUAGE OF THE CLASSIC DEFINITION

1    OF AGENT.  SO WE BELIEVE SIP AGENT IS DEFINITE, AND WE BELIEVE

2    SIP AGENT SHOULD BE CONSTRUED IN THE MANNER ESN HAS PROPOSED

3    BECAUSE CISCO HAS NOT PROPOSED AN ALTERNATIVE CONSTRUCTION.

4        FINALLY IN ORDER TO FIND THE CLAIM INDEFINITE AS CISCO

5    SUGGESTS, THEY HAVE TO OVERCOME THE PRESUMPTION OF VALIDITY.

6    THERE IS A PRESUMPTION THAT THE PATENT EXAMINER WHEN HE READ

7    THE CLAIM UNDERSTOOD WHAT HE WAS READING AND UNDERSTOOD IT IN

8    THE CONTEXT OF THE CLAIM JUST THE WAY WE HAVE PROPOSED.  AND

9    INVALIDATING A CLAIM FOR INDEFINITE REQUIRES AN EXACTING

10   STANDARD.  IT CAN'T JUST BE THAT WE ARE GOING TO IGNORE THE

11   CONTEXT OF THE CLAIM AND WE ARE GOING TO IGNORE THE STANDARD

12   USAGE OF A TERM IN THE ENGLISH LANGUAGE AND SAY IT'S

13   INDEFINITE.  IT REQUIRES AN EXACTING STANDARD.

14       AND CLAIMS ARE ONLY INDEFINITE IF THEY ARE INSOLUBLY

15   AMBIGUOUS THE FEDERAL CIRCUIT HAS CAUTIONED.  I DON'T THINK

16   THAT WE HAVE A SITUATION HERE WHERE WE CANNOT SOLVE THE

17   PROBLEM OF WHAT WAS MEANT BY THE TERM SIP AGENTS IN THE

18   CONTEXT OF THE CLAIM, GIVEN THE PLAIN ENGLISH MEANING OF THE

19   TERM AGENTS AND THE FACT THAT BOTH OF THE ENTITIES THAT FOLLOW

20   PERFECTLY MATCH THAT DEFINITION.

21       FINALLY, THE FEDERAL CIRCUIT STATES THAT EVEN IF IT'S A

22   FORMIDABLE TASK TO UNDERSTAND A CLAIM AND THE RESULT IS NOT

23   UNANIMOUSLY ACCEPTED, AS LONG AS THE BOUNDARIES OF THE CLAIM

24   MAY BE UNDERSTOOD, IT IS SUFFICIENTLY CLEAR TO AVOID

25   INVALIDITY FOR INDEFINITENESS.  I DON'T THINK CISCO IS

1    SUGGESTING THAT WE CAN'T DETERMINE THE BOUNDARIES OF THE CLAIM

2    BECAUSE THE LANGUAGE THAT IMMEDIATELY FOLLOWS SIP AGENTS TELLS

3    US WHAT THE BOUNDARY OF THE CLAIM IS.  THE CLAIM REQUIRES A

4    SIP USER AGENT AND A SIP PROXY SERVER.  SO OUR PROPOSED

5    CONSTRUCTION IS AS STATED, AND WE DO NOT BELIEVE THAT THE

6    CLAIM IS INDEFINITE BECAUSE OF THE USE OF THE TERM SIP AGENTS.

7         NOW I WILL GO ON TO ONE OF THE SIP AGENTS MENTIONED IN

8    THE CLAIM, AND IT'S SIP USER AGENT.  IN THE CONTEXT OF THE

9    CLAIM, IT'S THE INSTRUCTIONS CAUSING THE NETWORK DEVICE TO

10   PROVIDE A SIP USER AGENT TO REPRESENT A NON-SIP TELEPHONE THAT

11   USES THE TELEPHONE LINE INTERFACE.  NOW BOTH PARTIES DISCUSSED

12   THE USE OF SIP USER AGENT IN THE CONTEXT OF THE CLAIM

13   YESTERDAY -- I AM SORRY -- IN THE CONTEXT OF THE PATENT

14   YESTERDAY, AND WE WERE IN GENERAL AGREEMENT THAT THE SIP USER

15   AGENT WAS THE REPRESENTATIVE OF AN ENDPOINT.  IT WAS THE

16   ACTUAL ENDPOINT IN A CASE WHERE A DEVICE IS NATIVELY CAPABLE

17   OF BEING A SIP USER AGENT, OR IT WAS THE ESSENTIALLY VIRTUAL

18   ENDPOINT WHEN A SIP USER AGENT IS SET UP TO REPRESENT A NON-

19   SIP DEVICE, SUCH AS A NON-SIP TELEPHONE, A POTS TELEPHONE.

20        ESN'S PROPOSED CONSTRUCTION CONSISTENT WITH THE ESSENTIAL

21   IDENTITY OF A SIP USER AGENT, IS THAT IT'S A SIP NETWORK

22   SIGNALING ENDPOINT.  NOW, THESE ARE SOME OF THE PORTIONS OF

23   THE RFC THAT EXPLAIN THAT A USER AGENT HAS BOTH A USER AGENT

24   CLIENT AND A USER AGENT SERVER IN IT.  WE DO NOT DISPUTE THAT

25   THESE REQUIREMENTS -- WELL, I AM NOT EVEN SURE THAT THEY ARE

1   REQUIREMENTS, BUT THEY APPEAR IN THE DEFINITION SECTION OF THE

2   SIP SPECIFICATION, THE DRAFT SIP SPECIFICATION.  AND WE DON'T

3   DISPUTE THAT A SIP USER AGENT WILL INCLUDE THESE ELEMENTS.

4   HOWEVER, THE ESSENTIAL IDENTITY OF A SIP USER AGENT IS THAT IT

5   IS THE ENDPOINT.  AND IT IS ESSENTIAL TO IDENTIFY IT AS AN

6   ENDPOINT BECAUSE THERE ARE OTHER ELEMENTS OF A SIP NETWORK

7   THAT ARE NOT ENDPOINTS THAT WILL ACTUALLY INCLUDE A SIP USER

8   AGENT CLIENT AND A USER AGENT SERVER.  FOR EXAMPLE, YESTERDAY

9   BOTH PARTIES EXPLAINED TO THE COURT THAT A SIP PROXY SERVER

10  ACTUALLY WILL HAVE BOTH A USER AGENT CLIENT AND A USER AGENT

11  SERVER, BUT IT'S AN INTERMEDIARY PROGRAM, IT'S NOT AN

12  ENDPOINT.  SO THE JURY WILL BE ABLE TO UNDERSTAND FROM OUR

13  PROPOSED CONSTRUCTION THAT THE SIP USER AGENT IS IDENTIFIED AS

14  THE ENDPOINT OF THE SIP NETWORK SIGNALING.

15          THE COURT: SO IF I UNDERSTAND WHAT YOU ARE -- I KNOW

16  YOU FEEL THAT IT'S INAPPROPRIATE TO HAVE THE LANGUAGE IN

17  ACCORDANCE WITH RFC 2543, SO I GATHER EVEN IF THAT WAS LEFT

18  OUT YOU STILL COULDN'T AGREE WITH CISCO'S SUGGESTED

19  CONSTRUCTION WITHOUT THIS ENDPOINT LANGUAGE.  IS THAT -- IS

20  THAT WHAT YOU ARE SAYING?

21          MR. MCANDREWS: WELL, AGAIN AS I JUST MENTIONED,

22  CISCO'S CONSTRUCTION IDENTIFIES AS AN APPLICATION THAT

23  CONTAINS BOTH A USER AGENT CLIENT AND USER AGENT SERVER.  THE

24  PROBLEM IS THAT WOULD CAUSE SOME CONFUSION BECAUSE A PROXY

25  SERVER ALSO HAS A USER AGENT CLIENT.

1          THE COURT: THAT'S WHY I SAY YOU FEEL IT NEEDS THE

2     LANGUAGE ABOUT THE ENDPOINT.  IS THAT CORRECT?

3          MR. MCANDREWS: RIGHT.  AND SO -- AND, YOUR HONOR, I

4     COULD AGREE TO CISCO'S CONSTRUCTION IF WE PUT IN THAT IT IS A

5     SIP NETWORK SIGNALING ENDPOINT THAT CONTAINS BOTH A USER AGENT

6     CLIENT AND USER AGENT SERVER, BUT THEN LEAVE OUT THE IN

7     ACCORDANCE WITH BECAUSE IT'S SUCH A LOADED PHRASE.

8          NOW I WENT OVER THIS YESTERDAY.  I DON'T THINK IT'S

9     NECESSARY TO CONTINUE THROUGH THE LENGTHY EXAMPLE HERE.  BUT

10    THE PATENT -- I AM SORRY, BUT YESTERDAY I DID PROVIDE A

11    TUTORIAL ON AN ENDPOINT AND HOW THE SIP ENDPOINT, THE USER

12    AGENT, IS USED.  IT GENERATES REQUESTS LIKE AN INVITE.  IT

13    ACTS AS THE USER AGENT CLIENT AND SO ON.  BUT THESE -- THESE

14    ARE MORE TUTORIAL THAT THE JURY WILL UNDERSTAND THROUGH THE

15    COURSE OF THE TRIAL, AND ULTIMATELY IT'S THE FACT THAT IT'S A

16    SIP ENDPOINT THAT HAS A USER AGENT SERVER AND CLIENT THAT ARE

17    THE IMPORTANT DETAILS, SO I WON'T BELABOR.  IT APPEARS THAT

18    THE COURT HAS A GENERAL UNDERSTANDING THAT'S NECESSARY TO

19    UNDERSTAND THE DISPUTE HERE.

20         JUST ONE MORE POINT.  THE PATENT ITSELF USES THE TERM

21    ENDPOINT TO REFER TO A SIP USER AGENT.  AND THE RFC, RFC 3261,

22    AT PAGE 8 THROUGH 9, ALSO REFERS TO THE INTERNET ENDPOINTS AS

23    USER AGENTS.  SO THE RFC ITSELF RECOGNIZES THAT THE ESSENTIAL

24    IDENTITY OF A USER AGENT IS THE ENDPOINT.

25         NOW MOVE ON TO AN ELEMENT OF THE CLAIM, AND THIS IS

1   ACTUALLY THE SIP USER AGENT WAS A SUBSET, A SUBCOMPONENT OF

2   THIS ELEMENT IN THE CLAIM, AND THE ENTIRE LIMITATION IS

3   PROVIDE A SIP USER AGENT TO REPRESENT A NON-SIP TELEPHONE THAT

4   USES THE TELEPHONE LINE INTERFACE.

5       AS WE EXPLAINED YESTERDAY, THE SIP USER AGENT IN THE

6   NETWORK DEVICE IS THERE TO REPRESENT A NON-SIP TELEPHONE WHEN

7   IT'S PLUGGED INTO THE TELEPHONE LINE INTERFACE.  AND CISCO'S

8   -- I AM SORRY -- ESN'S PROPOSED CONSTRUCTION IS CONSISTENT

9   WITH THAT.  IT'S THE INSTRUCTIONS CAUSE THE NETWORK DEVICE TO

10  PROVIDE A SIP USER AGENT AND THEN WE INCLUDE IN HERE THE

11  DEFINITION PREVIOUSLY PROVIDED OF SIP USER AGENT, SO THIS

12  CONSTRUCTION WOULD ENCOMPASS BOTH THE CONSTRUCTION OF SIP USER

13  AGENT AND THE TERM THAT IT'S USED IN IN CONTEXT.

14      SO IT SAYS:  FOR THE PURPOSE OF REPRESENTING A NON-IP

15  TELEPHONE THAT IS ATTACHED TO THE NETWORK DEVICE THROUGH THE

16  TELEPHONE LINE INTERFACE.  BECAUSE THE NON-IP TELEPHONE IS NOT

17  NATIVELY CAPABLE OF DIRECT PARTICIPATION IN SIP

18  COMMUNICATIONS, IT RELIES ON THE SIP USER AGENT PROVIDED BY

19  THE NETWORK DEVICE TO PARTICIPATE IN SIP COMMUNICATIONS ON ITS

20  BEHALF THEREBY ENABLING THE NON-SIP TELEPHONE TO INDIRECTLY

21  PARTICIPATE IN SIP COMMUNICATIONS.

22      NOW I UNDERSTAND THAT THIS --

23          THE COURT: YOU MAY BE CORRECT ON THIS CONSTRUCTION,

24  BUT I CAN SEE AS I READ THIS TO A JURY THE BLANK LOOK ON THEIR

25  FACE.

1          MR. MCANDREWS: I ASSUME THAT THEY GET A COPY OF THIS

2     AS THEY GO BACK TO THE JURY ROOM BUT, AND WE AGREE THAT THIS

3     IS A LITTLE LONG ON THE FACE.

4          THE COURT: YEAH.  BUT WHAT -- I KNOW YOU DISAGREE

5     WITH YET ONE MORE TIME, I AM SURE, IN ACCORDANCE WITH RFC

6     2543.  WHAT DO YOU DISAGREE WITH ON THE REST OF CISCO'S

7     SUGGESTED CONSTRUCTION?

8          MR. MCANDREWS: OKAY.  SO CISCO'S PROPOSED

9     CONSTRUCTION --

10          THE COURT: IF WE ENDED IT SIMPLY AFTER SIGNALING,

11     PERIOD, DO YOU DISAGREE WITH THAT CONSTRUCTION?  IF SO, WHY?

12          MR. MCANDREWS: WELL, FIRST OF ALL, IT BEGS THE

13     QUESTION WHAT IS ALL THE REQUIRED, BECAUSE AGAIN THEY ARE

14     THROWING IN THE WORD REQUIREMENT AND THEN WE HAVE TO GO GUESS

15     AT WHAT THE REQUIREMENTS ARE.  AND THERE IS A REAL DANGER IN

16     MAKING UP WHAT THOSE REQUIREMENTS ARE ON THE FLY.  THE OTHER

17     PORTION, I HAVE THE TWO AREAS HIGHLIGHTED HERE THAT WE HAD A

18     PROBLEM WITH, AND IT'S EACH TELEPHONE STATION.  AND THAT WOULD

19     SUGGEST THAT THERE NECESSARILY WOULD BE MORE THAN ONE

20     TELEPHONE STATION CONNECTED TO THE NETWORK DEVICE IN ORDER TO

21     MEET THE LANGUAGE OF THE CLAIM, IN OTHER WORDS, THAT THERE

22     WOULD BE MORE THAN ONE SIP USER AGENT TO REPRESENT MORE THAN

23     ONE TELEPHONE.  THAT LANGUAGE I THINK COULD BE RESOLVED BY

24     SAYING: PROVIDES ONE OR MORE SIP USER AGENTS.  AND I BELIEVE

25     OUR CONSTRUCTION, ESN'S PROPOSED CONSTRUCTION WOULD ALLOW IT

1    TO BE JUST A SINGLE USER AGENT FOR A SINGLE PHONE OR MULTIPLE

2    USER AGENTS FOR MULTIPLE PHONES, WHATEVER IS REQUIRED.

3         SO IT'S THE USE OF THE TERM EACH AND THE REMAINDER OF

4    THAT WHICH IS TO PERFORM ALL THE REQUIRED SIP SIGNALING IN

5    ACCORDANCE WITH IETF RFC 2543.  SO IT BEGS THE QUESTION,

6    WHAT'S REQUIRED AND WHAT IS IN ACCORDANCE WITH?

7         SO AGAIN, WE BELIEVE THAT IT WOULD BE IMPROPER TO GIVE

8    THE JURY AN INSTRUCTION THAT MERELY TELLS THEM GO FIGURE OUT

9    WHAT THE REQUIREMENTS ARE.  AND IN THIS CASE, CISCO'S EXPERT

10   DID NOT IDENTIFY ANY ALLEGED REQUIREMENTS BUT WERE UNCERTAIN

11   WHAT THEIR EXPERT MAY DO AT TRIAL.  HE MAY TAKE A POSITION

12   THAT SOME OBSCURE DETAIL IS A REQUIREMENT.  AND ABSENT SOME

13   CLARIFYING INSTRUCTION THAT ONLY SUBSTANTIAL COMPLIANCE IS

14   UNDERSTOOD WITH THE RFCS AND THE REQUIREMENTS MUST BE

15   DETERMINED BASED ON THE USE OF IMPERATIVES, WE THINK THAT

16   CISCO'S CONSTRUCTION WOULD BE IMPROPER TO GIVE TO THE JURY.

17        NOW, AND SO THOSE, THE COURT CUT RIGHT TO THE ESSENTIAL

18   DEBATE, AND I THINK THAT WE'VE COVERED THAT.  I AM GOING TO

19   MOVE ON TO THE TERM SIP PROXY SERVER.  SIP PROXY SERVER, THE

20   DEFINITION OF SIP PROXY SERVER OR THE PROPOSED CONSTRUCTION OF

21   SIP PROXY SERVER THAT ESN PROPOSES MIRRORS AGAIN NEARLY

22   EXACTLY A DEFINITION OF A SIP PROXY SERVER THAT COMES RIGHT

23   OUT OF THE RFC.

24        HERE IS THE RFC AND IT'S -- AND, BY THE WAY, THIS IS

25   ACTUALLY -- IT'S A LITTLE STRONGER THAN EVEN THE FACT THAT THE

1    RFC INCLUDES A DEFINITION.  THE DEFINITION FROM THE RFC WAS

2    EXPRESSLY INCORPORATED, NOT EVEN JUST BY REFERENCE BUT

3    EXPRESSLY WRITTEN OUT IN THE PATENT SPECIFICATION.  ESN

4    EXHIBIT A, WHICH IS THE '519 PATENT AT COLUMN 62, LINES 38

5    THROUGH 45 STATES: ACCORDING TO RFC -- ACCORDING TO IETF RFC

6    2543 ON SIP, THE SESSION INITIATION PROTOCOL, A SIP PROXY

7    SERVER IS DEFINED AS FOLLOWS, AND IT INCLUDES LANGUAGE THAT IS

8    MERELY -- IS NEARLY THE EXACT MIRROR OF THE PROPOSED

9    CONSTRUCTION THAT ESN PROVIDES.  WE BELIEVE THAT THIS IS THE

10   ESSENTIAL IDENTITY OF A SIP PROXY SERVER AND NO MORE IS

11   REQUIRED OF THE JURY TO UNDERSTAND WHAT A SIP PROXY SERVER IS.

12        THE COURT: WHAT DO YOU DISAGREE WITH AS FAR AS

13   CISCO'S CONSTRUCTION OTHER THAN THE LAST IN ACCORDANCE WITH

14   LANGUAGE?

15        MR. MCANDREWS: AND IT'S THE IN ACCORDANCE WITH

16   LANGUAGE.  AND THIS IS A SITUATION WHERE I THINK IT WILL BE

17   INSTRUCTIVE FOR THE COURT TO UNDERSTAND THE DANGER OF

18   INCLUDING THAT BECAUSE IN THIS SITUATION CISCO AND THEIR

19   EXPERT HAVE IDENTIFIED WHAT IS REALLY A NONESSENTIAL DETAIL OF

20   THE SIP SPECIFICATION.  THEY HAVE CALLED IT A REQUIREMENT.  IN

21   FACT THEIR WITNESS FOR THE FIRST TIME IN HIS DECLARATION FILED

22   IN OPPOSITION TO OUR CLAIM CONSTRUCTION MOTION IDENTIFIES IT

23   AS ONE OF THE MOST IMPORTANT REQUIREMENTS.  IT'S NOT EVEN --

24   AS I'LL DEMONSTRATE HERE IN A MOMENT, IT'S NOT EVEN A

25   REQUIREMENT, MUCH LESS ONE OF THE MOST IMPORTANT.  AND THAT

1   WOULD BE A REAL DANGER FOR THEIR EXPERT TO BE ALLOWED TO ARGUE

2   THAT TO THE JURY WITH AN OPEN-ENDED PHRASE LIKE IN ACCORDANCE

3   WITH IN THE CLAIM CONSTRUCTION.

4        SO LET'S JUMP FORWARD.  SO HERE IS CISCO'S LANGUAGE IN

5   ACCORDANCE WITH IETF.  SO THE INCLUSION OF THIS PHRASE IS

6   IMPROPER BECAUSE IT'S UNCLEAR WHAT IT MEANS TO OPERATE IN

7   ACCORDANCE WITH.  CISCO ORIGINALLY -- CISCO'S ORIGINALLY

8   PROPOSED CLAIM CONSTRUCTION INCLUDED THIS PHRASE BUT AT THE

9   TIME THE PARTIES EXCHANGED PROPOSED CONSTRUCTIONS AND

10  IDENTIFIED EXTRINSIC EVIDENCE, CISCO DID NOT IDENTIFY ANY

11  PARTICULAR ALLEGED REQUIREMENT OF A SIP PROXY SERVER PER RFC

12  2543 THAT MUST BE MET IN ORDER FOR SOMETHING TO OPERATE IN

13  ACCORDANCE WITH.

14       NOW, LIKE WITH CISCO'S PROPOSED CONSTRUCTION OF SIP USER

15  AGENTS, CISCO'S CONSTRUCTION OF SIP PROXY SERVER WOULD PUT THE

16  JURY IN THE IMPROPER ROLE OF DETERMINING THE LITERAL SCOPE OF

17  THE CLAIM ELEMENT ON THE FLY AND IT WOULD ALLOW CISCO'S EXPERT

18  TO SHAPE THE LITERAL SCOPE OF THE CLAIM TO SERVE ITS PURPOSE

19  DURING TRIAL.

20       CASE IN POINT, I MENTIONED EARLIER THAT THERE IS A REAL

21  DANGER IN ALLOWING CISCO TO MAKE UP REQUIREMENTS ON THE FLY.

22  CISCO AND ITS EXPERT DID JUST THAT IN ITS OPPOSITION BRIEF

23  ADDRESSING CLAIM CONSTRUCTION IN THE DECLARATION OF THEIR

24  EXPERT, DR. BURGER.  DR. BURGER STATES:  ONE OF THE MOST

25  IMPORTANT RULES, SO HE IS CALLING IT A RULE HERE, THAT A SIP

1    PROXY SERVER MUST FOLLOW IS THAT WHEN FORWARDING A SIP REQUEST

2    MESSAGE FROM A SIP USER AGENT THE PROXY SERVER MUST COPY THE

3    TO, FROM, CALL-ID, AND CONTACT TAGS EXACTLY AS IT RECEIVED

4    FROM THE SIP USER AGENT.

5        BUT AS YOU CAN SEE FROM THE ACTUAL QUOTE OF RFC 2543,

6    THERE IS NO WORD LIKE MUST.  THERE IS NO WORD LIKE

7    REQUIREMENT.  THERE IS NO DISCUSSION THAT THIS IS AN ACTUAL

8    REQUIREMENT OF THE SPECIFICATION.  IN OTHER WORDS, ACCORDING

9    TO RFC 2119, THE BEST PRACTICES FOR DRAFTING THESE DOCUMENTS,

10   THE AUTHOR, UNDERSTANDING THOSE REQUIREMENTS, UNDERSTANDING

11   WHAT IMPERATIVES ARE USED FOR, PURPOSELY LEFT THEM OUT BECAUSE

12   IT UNDERSTOOD THAT THIS WAS A NONESSENTIAL IMPLEMENTATION

13   DETAIL THAT AN IMPLEMENTOR OF A SIP PROXY SERVER MIGHT CHOOSE

14   TO FOLLOW OR MIGHT CHOOSE TO NOT FOLLOW.

15       HERE IS THE ALLEGED REQUIREMENT IN CONTEXT.  AND AS YOU

16   CAN SEE, AND THIS COMES FROM 12.3.1, A SECTION CALLED PROXYING

17   REQUESTS FROM RFC 2543, THE SENTENCE IMMEDIATELY FOLLOWING THE

18   ALLEGED REQUIREMENT AND THE SENTENCE IMMEDIATELY PRIOR TO THE

19   ALLEGED REQUIREMENT DO USE IMPERATIVES.  SO THE AUTHOR EVEN IN

20   DRAFTING THIS SPECIFIC SECTION WAS WELL AWARE OF THE USE OF

21   IMPERATIVES.  SO HERE IT SAYS TO PREVENT LOOPS, A SERVER MUST

22   CHECK, RIGHT?  AND THEN IT SAYS THE PROXY SERVER SHOULD

23   CHANGE.  BUT IN THE ALLEGED REQUIREMENT, NO IMPERATIVE IS

24   USED.

25       SO DR. -- NOW, DR. BURGER HAS AN OPINION THAT THIS IS AN

1  IMPORTANT REQUIREMENT.  IN FACT, HE SAYS IT'S ONE OF THE MOST

2  IMPORTANT RULES THAT A SIP PROXY SERVER MUST FOLLOW.  NOW, DR.

3  BURGER OPINES IN HIS DECLARATION THAT IT'S THIS REQUIREMENT

4  THAT DISTINGUISHES A SIP PROXY SERVER FROM A SIP ENTITY CALLED

5  A BACK-TO-BACK USER AGENT, OR B2BUA.  NOW, THAT TERM WAS NEVER

6  USED IN CISCO'S PROPOSED CONSTRUCTIONS, BUT IT APPEARS FROM

7  THEIR ARGUMENTS NOW THAT THEY WOULD ARGUE THAT THE LITERAL

8  SCOPE OF WHAT IS A SIP PROXY SERVER NECESSARILY EXCLUDES

9  SOMETHING CALLED A BACK-TO-BACK USER AGENT.

10     NOW THERE IS A COUPLE OF THINGS THAT WOULD BE WRONG WITH

11  THAT.  NUMBER ONE, IT'S UNSUPPORTED BY ANYTHING IN THE

12  SPECIFICATION AND IT'S UNSUPPORTED BY ANYTHING EVEN IN RFC

13  2543.  THERE IS NOTHING THAT SAYS IT EXCLUDES A BACK-TO-BACK

14  USER AGENT.  EVEN MORE TO THE POINT, AT THE TIME RFC 2543 WAS

15  PUBLISHED, THE TERM BACK-TO-BACK USER AGENT HADN'T EVEN BEEN

16  COINED.  AND IN FACT WHAT IS CURRENTLY CONSIDERED A BACK-TO-

17  BACK USER AGENT WOULD FALL SQUARELY WITHIN THE DEFINITION OF

18  WHAT WAS CONSIDERED A SIP PROXY SERVER AT THE TIME RFC 2543

19  WAS DRAFTED.

20     NOW IN JUNE OF 2002, AFTER THE PATENT WAS FILED, A NEW

21  VERSION OF THE RFC DRAFT SPECIFICATION, THE DRAFT SIP

22  SPECIFICATION CAME OUT AND THAT DID USE THE TERM BACK-TO-BACK

23  USER AGENT, BUT IT'S A VERY ABBREVIATED DISCUSSION OF WHAT A

24  BACK-TO-BACK USER AGENT IS, AND IT'S VERY CLEAR THAT WHAT A

25  BACK-TO-BACK USER AGENT IS MATCHES EXACTLY WHAT WOULD HAVE

1  BEEN CONSIDERED A SIP PROXY SERVER BACK AT THE TIME THAT RFC

2  2543 WAS THE GOVERNING LANGUAGE.

3       SO THE COPYING OF TAGS EXACTLY FROM THE ORIGINAL REQUEST

4  IS NOT A REQUIREMENT AND IT SHOULD NOT BE READ INTO THE CLAIM

5  CONSTRUCTION.  AND THAT IS A PERFECT EXAMPLE OF A DANGER THAT

6  IS INHERENT IN LEAVING A CONSTRUCTION THAT SAYS IN ACCORDANCE

7  WITH, BECAUSE CISCO AND THEIR EXPERTS COULD MAKE UP ON THE FLY

8  WHAT THE REQUIREMENTS ACTUALLY ARE.

9           THE COURT: MAYBE I DIDN'T MAKE MYSELF CLEAR, OR

10 MAYBE YOU'VE ANSWERED ME, BUT IF I AGREE THAT IT'S

11 INAPPROPRIATE -- I AM NOT NECESSARILY SAYING I AGREE THAT THE

12 IN ACCORDANCE LANGUAGE IS NOT APPROPRIATE AND YOU SIMPLY PUT A

13 PERIOD AFTER CLIENTS IN CISCO'S SUGGESTED CONSTRUCTION, DO YOU

14 FEEL THAT CONSTRUCTION WOULD THEN BE INAPPROPRIATE?  IT SEEMS

15 TO TRACK WITH THE INITIAL LANGUAGE OF YOUR SUGGESTED

16 CONSTRUCTION, THEN YOU GO ON TO ADD THE LAST COUPLE OF

17 SENTENCES.  I GUESS I AM TRYING TO SAY, WHY ARE THOSE

18 NECESSARY?

19           MR. MCANDREWS: THE REMAINING SENTENCES, THE

20 REMAINING TWO SENTENCES OF ESN'S PROPOSED CONSTRUCTION, FIRST

21 OF ALL, THEY DO COME OUT OF THE EXACT DEFINITION.  THEY ARE

22 BASED ON THE EXACT DEFINITION OF A SIP PROXY SERVER IN RFC

23 2543.  AND WE FEEL THEY WOULD BE NECESSARY FOR CLARIFYING THAT

24 THE SIP PROXY SERVER IS SOMETHING THAT IS ACTING IN THE MIDDLE

25 OF THE NETWORK AND THAT IT HAS SOME PROCESSING ABILITY OF ITS

1  OWN.  IT CAN LOOK AT MESSAGES.  IT CAN CHANGE THINGS IN THE

2  MESSAGE BEFORE IT PASSES THEM ON.  SO IT SAYS A PROXY

3  INTERPRETS AND, IF NECESSARY, REWRITES A SIP REQUEST MESSAGE

4  BEFORE FORWARDING IT.   AND WHAT THIS -- WHAT THIS WOULD TELL

5  THE JURY IS THAT THE SIP PROXY SERVER IS NOT JUST A DUMB

6  TRANSMITTER OF A MESSAGE RECEIVED HERE PASSED THROUGH TO THE

7  OTHER SIDE.  IT ACTUALLY HAS SOME PROCESSING CAPABILITY OF ITS

8  OWN.  IT CAN MAKE ITS OWN JUDGMENT CALLS ON THINGS, AND IT CAN

9  DO CERTAIN THINGS THAT WILL DETERMINE WHERE THAT MESSAGE IS

10  SENT AND WHETHER IT'S SENT IN THE FIRST PLACE, WHETHER IT'S

11  PASSED ON.  AND, SO WE DON'T WANT THIS TO TURN A PROXY SERVER

12  INTO A DUMB SHUTTLER OF MESSAGES.  SO WE BELIEVE THAT THE

13  ADDITIONAL SENTENCES HERE THAT COME RIGHT FROM THE DEFINITION

14  IN RFC 2543 WILL PROVIDE THAT TO THE JURY.

15          THE COURT: WHAT'S YOUR NEXT TERM?

16          MR. MCANDREWS: OKAY.  THE NEXT TERM IS WHERE SIP

17  PROXY SERVER IS USED IN THE GREATER CONTEXT OF THE CLAIM, AND

18  WE BELIEVE IT'S APPROPRIATE TO FIRST INTERPRET SIP PROXY

19  SERVER BUT THEN TO INTERPRET SIP PROXY SERVER AS IT APPEARS IN

20  THE CLAIM, BECAUSE THE SIP PROXY SERVER HAS A SPECIAL ROLE IN

21  THE CLAIM.  IT'S NOT ANY SIP PROXY SERVER.  IT'S A SIP PROXY

22  SERVER THAT DOES THESE PARTICULAR THINGS THAT THE CLAIM CALLS

23  FOR.

24      SO IN THE CONTEXT, THE CLAIM ELEMENT DEFINES A PARTICULAR

25  ROLE THAT THE SIP PROXY SERVER PLAYS IN PROVIDING SUPPORT FOR

1  DEVICES ATTACHED TO THE NETWORK DEVICE.  CLAIM 9 STATES THAT

2  THE INSTRUCTIONS CAUSE THE NETWORK DEVICE TO IMPLEMENT A SIP

3  PROXY SERVER THAT MEDIATES ALL SIP COMMUNICATIONS OVER THE

4  BROADBAND NETWORK INTERFACE INVOLVING A NON-SIP TELEPHONE.

5  AND THIS LIMITATION DISTINGUISHES THE SIP PROXY SERVER

6  FUNCTIONALITY FROM OTHER TYPES OF SIP PROXY SERVERS THAT MIGHT

7  SERVE DIFFERENT ROLES.

8      IT'S IMPORTANT TO MAKE THIS DISTINCTION BECAUSE AT THE

9  TIME OF THE INVENTION DISCLOSED IN THE '519 PATENT, THOSE

10 FAMILIAR WITH SIP WOULD HAVE RECOGNIZED THAT SIP PROXY SERVERS

11 PROVIDE A GENERAL LOGICAL FUNCTION, WHICH IS ACTING AS AN

12 INTERMEDIARY WITH CERTAIN PROCESSING CAPABILITIES TO PASS

13 MESSAGES ON, BUT THEY WOULD ALSO HAVE UNDERSTOOD THAT IT WAS

14 CRITICAL TO KNOW WHAT FEATURES WERE BUILT ON TOP OF THE SIP

15 PROXY FUNCTION, SO WHAT PROCESSING THE SIP PROXY SERVER WAS

16 CAPABLE OF AND PERFORMED BEFORE PASSING ON MESSAGES.

17     I PROVIDED HERE A SNAPSHOT OF A PRESENTATION GIVEN BY

18 JONATHAN ROSENBERG.  AND JONATHAN ROSENBERG IS ONE OF THE

19 AUTHORS OF THE DRAFT SIP STANDARD RFC 2543.  HE IS ALSO -- HE

20 ALSO HAPPENS TO BE A CURRENT CISCO EMPLOYEE.  AND I DOUBT

21 CISCO WOULD DISPUTE THAT HE HAS SOMETHING WORTHWHILE TO SAY ON

22 THE TOPIC OF SIP.

23     AND IN A PRESENTATION, RIGHT AROUND THE TIME OF THE

24 FILING OF THE PATENTS OR THE PATENT IN THE CASE, HE STATED

25 THAT A SIP PROXY SERVER IS JUST A SIP DEFINED LOGICAL

1    FUNCTION.  IT'S NOT USEFUL IN AND OF ITSELF.  THE CRITICAL

2    PIECE IS THE VALUE ADDED FEATURES BUILT ON TOP OF THE SIP

3    PROXY FUNCTION, AND WHICH FEATURES YOU NEED DEPENDS ON THE

4    ROLES THAT THE SIP PROXY SERVER PLAYS.

5        SO IN THE PATENT WE NEED TO UNDERSTAND WHAT IS THE ROLE

6    THAT THE SIP PROXY SERVER PLAYS.  WELL, FIRST THE CLAIM

7    LANGUAGE MAKES IT CLEAR THAT THE TYPE OF SIP COMMUNICATIONS

8    ARE THOSE INVOLVING THE NON-SIP TELEPHONE. SO THE PROXY SERVER

9    IS DEALING WITH COMMUNICATIONS FROM A NON-SIP TELEPHONE,

10   RIGHT?  AND THEN IT'S FURTHER NARROWED TO SIP COMMUNICATIONS

11   THAT TAKE PLACE OVER THE BROADBAND NETWORK INTERFACE.  SO, FOR

12   EXAMPLE, THIS IS NOT A SIP PROXY SERVER THAT IS MANAGING A

13   CALL BETWEEN TWO ENDPOINTS THAT ARE ON THE SAME PREMISE.  IT

14   ACTUALLY REQUIRES THAT IT INVOLVES SIP ENDPOINTS ON DIFFERENT

15   PREMISES BECAUSE THE BROADBAND NETWORK INTERFACE HAS TO BE

16   INCLUDED.  SO IT'S A COMMUNICATION THAT PASSES OVER THE

17   BROADBAND NETWORK INTERFACE.

18       FIGURE 11 ILLUSTRATES HOW THE SIP PROXY SERVER IN

19   DIFFERENT NETWORK DEVICES -- FIGURE 11 IS SHOWN HERE AND BLOWN

20   UP, AND IT SHOWS HOW SIP PROXY SERVERS IN DIFFERENT NETWORK

21   DEVICES DEPLOYED ON DIFFERENT PREMISES ARE INTERMEDIARIES FOR

22   SIP COMMUNICATIONS OVER THE BROADBAND NETWORK INTERFACE.  AND

23   THE MULTIPLE -- THEY ARE VERY LIGHT NOW, BUT THE MULTIPLE

24   DASHED LINES THAT PASS BETWEEN THESE DEVICES DEMONSTRATE THAT

25   IT'S THE COMMUNICATIONS BETWEEN AND AMONG DIFFERENT PREMISES

- 52 -

1    THAT PASS OVER THE BROADBAND NETWORK INTERFACE THAT THE CLAIM

2    IS TALKING ABOUT.

3        NOW THE ROLE AND FUNCTION OF THE SIP PROXY SERVER OF THE

4    CLAIM IS FURTHER CLARIFIED AS REQUIRING THE SIP PROXY SERVER

5    TO MEDIATE THE SIP COMMUNICATIONS BETWEEN THE ATTACHED NON-SIP

6    TELEPHONE AND REMOTE SIP ENDPOINTS.  CISCO'S CONSTRUCTION

7    WOULD GIVE ESSENTIALLY NO MEANING TO THE TERM MEDIATE AND IT

8    WOULD RENDER IT NEARLY REDUNDANT TO THE GENERAL DEFINITION OF

9    SIP PROXY SERVER AS AN INTERMEDIARY.  BUT THE SPECIFICATION

10   MAKES IT PERFECTLY CLEAR THE INVENTOR INTENDED THE WORD

11   MEDIATE TO HAVE A MORE SPECIFIC MEANING.  THE SPECIFICATION

12   MAKES IT CLEAR THAT THE TERM MEDIATE IS INTENDED TO CLAIM THE

13   SIP PROXY SERVER'S ABILITY TO PERFORM CALL CONTROL OPERATIONS.

14   THIS TERM IS INTENDED TO DISTINGUISH THE INTELLIGENT NETWORK

15   DEVICE DESCRIBED AND CLAIMED FROM UNINTELLIGENT NETWORK

16   DEVICES REFERRED TO AS RESIDENTIAL GATEWAYS.

17       AND YESTERDAY WE HAD THE DISCUSSION, AND IT WAS ONE OF

18   THE ONLY THINGS THAT IF YOU LISTENED REALLY CLOSE WHERE THE

19   PARTIES WERE REALLY AT ODDS.  CISCO TOOK THE POSITION THAT A

20   SIP ENDPOINT THAT HAS MERELY A SIP USER AGENT IS INTELLIGENT,

21   AS OPPOSED TO OUR POSITION WAS THAT YOU REALLY NEEDED TO

22   INVOLVE A PROXY SERVER THAT WAS CAPABLE OF CALL CONTROL TO

23   HAVE INTELLIGENCE.

24       AND THE PATENT USES THE TERM.  THEY WERE ABLE TO PICK AND

25   CHOOSE AMONG SOME EXTRINSIC EVIDENCE WHERE THE TERM

1    INTELLIGENCE WAS USED IN VARIOUS WAYS.  BUT IN THE CONTEXT OF

2    THE '519 PATENT THE INVENTOR USED THE INTELLIGENCE TO -- FOR A

3    VERY SPECIFIC PURPOSE.  AND IN THIS CASE, THE INVENTOR FLAT

4    OUT STATES AT COLUMN 8, LINES 41 THROUGH 54, THAT A

5    RESIDENTIAL GATEWAY -- RESIDENTIAL GATEWAYS ARE UNINTELLIGENT

6    IN THE SENSE THAT THEY REQUIRE A MEDIA GATEWAY CONTROLLER TO

7    MEDIATE ALL NETWORK SIGNALING FUNCTIONS ON THEIR BEHALF.  THEY

8    CANNOT DETERMINE THE BROADER NETWORK SIGNALING CONTEXT OF THE

9    CALLING OPERATIONS IN WHICH THEY PARTICIPATE.  THEY ARE

10   INCAPABLE OF INDEPENDENTLY EXECUTING SERVICE LOGIC THAT

11   INVOLVES NETWORK SIGNALING OPERATIONS, SUCH AS CALL

12   REDIRECTION, MULTIPOINT CALL CONTROL, CALL SUPERVISION,

13   MULTIPLE LINE APPEARANCES, ETCETERA, WITHOUT CENTRALIZED

14   PARTICIPATION BY THE MEDIA GATEWAY CONTROLLER.

15       NOW THIS IS IN REFERENCE TO FIGURE 2 WHERE IT WAS

16   DESCRIBING, GENERICALLY DESCRIBING SOME OF THE PRIOR ART

17   ELEMENTS.  IN THIS SITUATION A SIP USER AGENT WOULD BE

18   INCAPABLE OF THESE CALL CONTROL OPERATIONS THAT I MENTIONED

19   HERE.  SO THEY RELY ON THE INTELLIGENCE OF THE SIP PROXY

20   SERVER IN ITS ROLE AS -- IN ITS ROLE TO MEDIATE.  AND SO HERE

21   IT SAYS THE FACTORS -- THESE FACTORS, THE LACK OF

22   INTELLIGENCE, THE LACK OF MEDIATION IN THE ENDPOINT DEVICES,

23   IMPOSE SUBSTANTIAL CONSTRAINTS ON THE VARIETY OF NETWORK

24   SERVICES THAT THE NEXT GENERATION NETWORK CAN DELIVER, BECAUSE

25   EACH NEW SERVICE MUST BE TIGHTLY INTEGRATED WITH THE MEDIA

1    GATEWAY CONTROLLER IN ORDER TO PERFORM CALL CONTROL

2    OPERATIONS.

3        THE PATENT ALSO SAYS: INTELLIGENT PARTICIPATION REFERS TO

4    THE ABILITY OF A CONNECTIVITY ELEMENT TO OPERATE BOTH AS A SIP

5    NETWORK SIGNALING ENDPOINT AND AS A CALL CONTROL AGENT CAPABLE

6    OF COMPLEX CALL CONTROL OPERATIONS.  SO IT MAKES VERY CLEAR

7    THAT WHEN THE PATENT USES THE TERM INTELLIGENT PARTICIPATION,

8    IT IS NOT SIMPLY REFERRING TO THE FUNCTION PROVIDED BY A SIP

9    NETWORK SIGNALING ENDPOINT, A SIP USER AGENT.  IT MUST ALSO

10   INCLUDE THE ABILITY TO PERFORM AS A CALL CONTROL AGENT WHICH

11   IS PERFORMED BY THE SIP PROXY SERVER IN ITS ROLE OF MEDIATING

12   CALLS OVER THE BROADBAND NETWORK INTERFACE.

13       NOW, I MADE THIS POINT BEFORE.  CISCO DID NOT CHOOSE TO

14   CONSTRUE SIP PROXY SERVER ALONG WITH THE ENTIRETY OF THE ROLE

15   AND FUNCTION THAT IT PROVIDES AS EXPRESSLY STATED IN THE

16   CLAIM. INSTEAD, THEY HAVE INDEPENDENTLY BROKEN DOWN SOME OF

17   THE INDIVIDUAL WORDS IN THE CLAIM AND THEN STATED SIMPLY THAT

18   THE ORDINARY MEANING FOR THE REMAINDER OF THE PHRASES IS

19   SUFFICIENT FOR THE JURY.  I DON'T THINK THAT THAT IS

20   SUFFICIENT.  THIS IS -- SOME OF THESE THINGS THAT WE ARE

21   TALKING ABOUT ARE STRAIGHTFORWARD AT A VERY HIGH LEVEL, BUT I

22   DON'T THINK THAT THE JURY SHOULD BE LEFT WITH THE ORDINARY

23   MEANING OF THE CLAIM ON SOMETHING THAT IS --

24           THE COURT: YOU MAY BE RIGHT ON YOUR CONSTRUCTION,

25   BUT YET ONE MORE EXAMPLE I CAN SEE READING THIS TO THE JURY

1 AND THE TOTAL CONFUSION THAT APPEARS ON THEIR FACE AS I READ

2 THROUGH THIS.

3          MR. MCANDREWS: YOUR HONOR, IT IS A FAIRLY -- I MEAN,

4 THE REQUIREMENT THAT IT MEDIATE DOES INVOLVE A COUPLE OF

5 THINGS HERE AND SO WE HAVE LISTED THEM AS MAKING SIP SIGNALING

6 EVENTS AVAILABLE TO A TELEPHONE CALL CONTROL FUNCTION.  SO IN

7 OTHER WORDS, A SIP PROXY SERVER IN ITS ROLE AS INTERMEDIARY

8 WILL TAKE IN A MESSAGE, A REQUEST.  SO AN INVITE, FOR EXAMPLE,

9 THAT INVITE WILL HAVE INFORMATION ABOUT WHERE THE CALL IS

10 INTENDED TO GO, SO IT MIGHT INCLUDE A TELEPHONE NUMBER.

11      NOW, AS CISCO MENTIONED YESTERDAY, ONE OF THE ROLES OF

12 THE SIP PROXY SERVER IS DETERMINING IF ONE ENDPOINT DOESN'T

13 KNOW HOW TO FIND ANOTHER ENDPOINT, FOR EXAMPLE, A TELEPHONE

14 NUMBER IS DIALED AND THE ENDPOINT, THE FIRST ENDPOINT DOESN'T

15 KNOW WHERE THAT TELEPHONE NUMBER WINDS UP AT THE OTHER END,

16 THE TELEPHONE NUMBER IS SENT WITH THE INVITE REQUEST TO THE

17 SIP PROXY SERVER.  THE SIP PROXY SERVER CAN THEN LOOK UP IN A

18 DIRECTORY WHERE TO FIND THAT, THE EQUIVALENT OF THAT TELEPHONE

19 NUMBER.  AND THESE TELEPHONE NUMBERS ARE CALLED E.164 NUMBERS.

20 FIND THE EQUIVALENT OF THAT LOCATED AS AN INTERNET ADDRESS FOR

21 THE FAR END ENDPOINT THAT IT'S ATTEMPTING TO REACH.

22      SO IN ITS ROLE AS MEDIATING SIP COMMUNICATIONS OVER THE

23 BROADBAND NETWORK INTERFACE, THE SIP PROXY SERVER WOULD MAKE

24 SIGNALING EVENTS AVAILABLE TO A TELEPHONE CALL CONTROL

25 FUNCTION AND TRANSLATE E.164 NUMBERS INTO IP ADDRESSES AS

1   REQUIRED TO ESTABLISH SIP CALL SESSIONS.

2       NOW, CISCO'S -- CISCO'S CONSTRUCTION OF MEDIATE WOULD

3   RENDER THE TERM MEDIATE SURPLUSAGE BECAUSE WE ALREADY KNOW

4   THAT A SIP USER AGENT -- I AM SORRY -- A SIP PROXY SERVER IS A

5   SIP INTERMEDIARY FROM THE GENERAL DEFINITION.  AND SO MEDIATE,

6   ESPECIALLY IN THE CONTEXT OF WHAT IS REQUIRED TO BE MEDIATED

7   BY THE SIP PROXY SERVER, SHOULD BE GIVEN MEANING IN THE CLAIM.

8   AND THIS IS JUST A QUOTE FROM A SUPREME COURT CASE THAT SAYS

9   THAT EACH ELEMENT CONTAINED IN A PATENT CLAIM IS DEEMED

10  MATERIAL TO DEFINING THE SCOPE OF THE PATENTED INVENTION.  AND

11  NO CLAIM LANGUAGE MAY BE INTERPRETED AS MERE SURPLUSAGE, THIS

12  IS IN A SOUTHERN DISTRICT OF NEW YORK CASE.  BUT YOUR HONOR

13  MENTIONED YESTERDAY THAT YOU ARE WELL FAMILIAR WITH CLAIM

14  CONSTRUCTION.  YOU HAVE PROBABLY HEARD THIS A HUNDRED TIMES.

15          THE COURT: WELL, GENERAL PRINCIPLES.

16          MR. MCANDREWS: SO I WON'T BELABOR THE POINT.  BUT WE

17  BELIEVE THAT CISCO'S CONSTRUCTION WOULD RENDER THE TERM

18  MEDIATE MEANINGLESS IN THE CLAIM.

19      THAT'S ALL OF MY ARGUMENT ON THE SIP ELEMENTS.  I'LL --

20          THE COURT: WHY DON'T WE TAKE A SHORT BREAK.  I THINK

21  -- SEEMS LIKE WE ARE MOVING ALONG NICELY, SO WE WILL BE IN

22  RECESS 10 MINUTES.

23      (RECESS AT 10:37 A.M., UNTIL 10:47 A.M., OPEN COURT)

24          THE COURT: WE WILL NOW HEAR CISCO'S RESPONSE.

25          MR. VERHOEVEN: THANK YOU, YOUR HONOR.  YOU HAD ASKED

1 COUNSEL FOR ESN IF THERE WERE ANY FEDERAL CIRCUIT AUTHORITY ON

2 THE BIG ISSUE HERE WHICH IS THE INDUSTRY STANDARD AND WHETHER

3 IT NEEDS TO BE INCORPORATED, AND THERE IS.  AND I'LL CITE YOUR

4 HONOR TO *LG ELECTRONICS V. BIZCOM ELECTRONICS*, 453 F.3D, 1364

5 WHERE THE FEDERAL CIRCUIT REVERSED A DISTRICT COURT FOR

6 FAILING -- WELL, A COUPLE OF THINGS.  THE FEDERAL CIRCUIT SAID

7 WHEREIN THE PATENT CITES TO THE SPECIFICATION, EXCUSE ME, TO

8 THE STANDARD --

9          THE COURT: STANDARDS.

10         MR. VERHOEVEN:  -- THAT THAT IS QUOTE, UNQUOTE,

11 INTRINSIC EVIDENCE, NOT EXTRINSIC EVIDENCE AND REVERSED THE

12 DISTRICT COURT FOR NOT CONSTRUING THE CLAIMS CONSISTENT WITH

13 THE INDUSTRY STANDARD.  SO THAT'S THE ANSWER TO THAT QUESTION,

14 YOUR HONOR.

15     LET ME START WITH THE TERM SIP AND GO THROUGH THE CLAIM

16 CONSTRUCTION ANALYSIS, YOUR HONOR, IF I MAY.  LET'S START WITH

17 THE CLAIMS, THE CLAIM ITSELF.  GO TO THE NEXT SLIDE, PLEASE.

18 HERE THE CLAIM ITSELF CLEARLY USES THE TERMS FROM THE RFC

19 2543.  IT REFERS EXPRESSLY TO SIP AGENTS, SIP USER AGENT, SIP

20 PROXY SERVER, YOUR HONOR.  SO THE ISSUE HERE IS NOT WHETHER

21 SIP IS REQUIRED, THE SIP PROTOCOL IS REQUIRED, THE SIP USER

22 AGENTS ARE REQUIRED, OR A SIP PROXY SERVER IS REQUIRED.  THE

23 CLAIMS EXPRESSLY REQUIRE IT.  SO THE QUESTION IS SIMPLY HOW WE

24 DEFINE THAT.

25     SO LET'S GO TO THE ANSWER TO THAT QUESTION.  THE ANSWER

1    TO THAT QUESTION IS DEFINED IN RFC 2543.  THIS IS THE

2    APPLICABLE STANDARD AT THE TIME OF THE FILING OF THE

3    APPLICATION THAT DEFINED THE SIP PROTOCOL.  IT IS A STANDARDS

4    TRACK DOCUMENT.  WE WENT THROUGH WHAT THAT MEANT YESTERDAY,

5    YOUR HONOR.

6        LET'S LOOK AT THE SPECIFICATION AND SEE HOW THE

7    SPECIFICATION REFERS TO RFC 2543.  THE SPECIFICATION CAN

8    INFORM US AS TO THE MEANING OF THESE TERMS AS THEY ARE IN THE

9    CLAIMS.  WELL, THE SPECIFICATION VERY CLEARLY STATES THAT WHAT

10   THEY ARE REFERRING TO WHEN THEY TALK ABOUT SIP PROXY SERVER --

11   AND THIS IS JUST ONE EXAMPLE, YOUR HONOR -- IS THE IETF RFC

12   2543.  SO HERE IN THE SPEC, AND THIS IS COLUMN 44, LINES 46

13   THROUGH 51, SAYS, QUOTE, SOFTWARE SUBCOMPONENT -- IT SAYS: SIP

14   PROTOCOL STACK.  AND THEN IT SAYS: SOFTWARE SUBCOMPONENT OF

15   THE EDGE SWITCH THAT IMPLEMENTS SUPPORT FOR THE, QUOTE, "SIP

16   PROXY SERVER," CLOSE QUOTE, FUNCTIONALITY DESCRIBED FURTHER IN

17   THIS DISCLOSURE AND IN IETF RFC 2543.  SO IT'S SPECIFICALLY

18   SAYING THIS IS WHERE YOU NEED TO LOOK FOR THE DETAILS OF WHAT

19   THIS IS.  AND IT'S TELLING THE PERSON OF ORDINARY SKILL IN THE

20   ART TO LOOK AT THAT.  LET'S GO TO THE NEXT SLIDE.

21       HERE IS ANOTHER EXAMPLE WHERE THE DEFINITION SECTION FOR

22   SIP PROXY SERVER, THE SPECIFICATION SPECIFICALLY REFERENCE THE

23   RFC SAYING: ACCORDING TO IETF RFC 2543 ON SIP.  SO THE

24   SPECIFICATION TELLS US THESE PHRASES IN THE CLAIM ARE

25   REFERRING TO THE DETAILS OF THIS RFC.  THAT'S WHERE YOU FIND

1  THE MEANINGS OF THESE PHRASES.

2      NOW LET'S LOOK AT SOME MORE --

3          THE COURT: WELL, IS THAT -- DO YOU THINK THAT'S

4  MANDATORY LANGUAGE OR IS IT DISCRETIONARY, IF THAT'S THE

5  APPROPRIATE TERM TO USE, UNDER THE --

6          MR. VERHOEVEN: I THINK THAT IT -- BY REFERRING TO

7  THAT AND SAYING HERE IS WHERE YOU NEED TO LOOK FOR THE

8  DETAILS, YOUR HONOR, THAT THAT MAKES THE RFC INTRINSIC

9  EVIDENCE AS TO THE MEANING.  SO IT HAS THE SAME IMPORT AS THE

10  -- AS IF IT WAS APPENDED TO THE SPECIFICATION AND MADE PART OF

11  THE SPECIFICATION, YOUR HONOR.  AND IT'S THE SAME THING IF YOU

12  -- IF YOU CITE A PATENT AND REFER TO THE DETAILS OF XYZ

13  TECHNOLOGY ARE SET FORTH IN PATENT ABC PRIOR ART, THE FEDERAL

14  CIRCUIT HAS SAID THAT IS INTRINSIC EVIDENCE.  THAT PATENT YOU

15  REFERRED TO IS INTRINSIC EVIDENCE AND THAT'S WHERE YOU LOOK TO

16  TO SEE WHAT THESE CLAIMS MEAN AND TO FURTHER DEFINE THESE

17  CLAIMS.  AND I HAVEN'T CITED THAT CASE TO YOUR HONOR, BUT

18  THAT'S ANOTHER EXAMPLE.  BUT THE REASON WE DIDN'T CITE THAT

19  CASE IS BECAUSE WE HAVE SPECIFIC CASES ON STANDARDS THAT SAY

20  THAT.

21      SO THEN LET'S LOOK AT THE PROSECUTION HISTORY TOO, YOUR

22  HONOR.  THAT CAN ALSO, IS A FORM OF INTRINSIC EVIDENCE THAT

23  CAN HELP US UNDERSTAND HOW A NORMAL PERSON OF ORDINARY SKILL

24  WOULD LOOK AT THIS.  HERE WE'VE GOT A LITTLE TIMELINE FIRST

25  JUST TO -- SO WE DON'T GET TOO -- SO I AT LEAST DON'T GET TOO

1  CONFUSED.  THERE WAS A RELATED, OR I SHOULDN'T EVEN SAY

2  RELATED.  THERE WAS A SEPARATE APPLICATION FILED ON FEBRUARY

3  28, 2000, YOUR HONOR, THAT WE MAY REFER TO AS THE SIP-TSI

4  PROVISIONAL APPLICATION AND THAT WAS LATER IN THAT TREE, A

5  NON-PROVISIONAL APPLICATION WAS FILED.

6      AND I AM REFERRING TO THOSE APPLICATIONS AS THE SIP-TSI

7  APPLICATIONS.  AND THE REASON I AM REFERRING TO THESE IS THE

8  PROSECUTION HISTORY FOR THIS PATENT, WHICH IS IN GREEN, REFERS

9  BACK AND INCORPORATES THESE EARLIER PATENTS, THE TERMS IN

10 THESE EARLIER PATENTS.  SO THE GREEN BOXES THERE, YOUR HONOR,

11 ARE THE APPLICATIONS RELATED TO THIS PATENT, THE '519 PATENT,

12 AND THE PURPLE ONES ARE THIS SIP-TSI APPLICATION.

13     NOW, IF WE GO AND LOOK AT WHAT HAPPENED IN THE

14 PROSECUTION HISTORY, THE PATENT, THE '519 PATENT INCORPORATES

15 THE PROVISIONAL APPLICATION, THE '888 PROVISIONAL APPLICATION.

16 AND THE '888 PROVISIONAL APPLICATION IN TURN INCORPORATES THE

17 SIP-TSI PROVISIONAL APPLICATION.  AND WE HAVE BROUGHT OUT THE

18 QUOTE WHERE THEY DO THAT, YOUR HONOR.

19     AND THE PROVISIONAL APPLICATION SAYS: NOTE: SYSTEM

20 ELEMENT DEFINITIONS WILL DEFER TO DEFINITIONS FOUND IN U.S.

21 PATENT APPLICATION TITLED, AND IT GOES ON, AND THAT'S A

22 CITATION OF THIS SIP-TSI PROVISIONAL APPLICATION.  AND IT

23 SAID: IN THE TEXT BELOW, CERTAIN REFERENCES TO THIS BODY OF

24 WORK MAY BE REFERENCED USING THE ABBREVIATION SIP-TSI.  SO IT

25 -- THE PROVISIONAL FOR THIS APPLICATION REFERS TO THIS TSI-SIP

1 APPLICATION.  IT SAYS LOOK THERE FOR THE DEFINITIONS.  LET'S

2 GO TO THE NEXT SLIDE.

3      NOW IF YOU LOOK AT THE SIP-TSI PROVISIONAL APPLICATION,

4 YOUR HONOR, IT CLEARLY REFERENCES RFC 2543.  AND I'VE

5 HIGHLIGHTED, AND I'LL READ IT INTO THE RECORD.  IT SAYS: ALL

6 TERMINOLOGY USED IN THIS DOCUMENT ARE CONSISTENT WITH THE

7 DEFINITIONS PROVIDED IN SECTION 1.3 OF RFC 2543 ON SESSION

8 INITIATION PROTOCOL.  NO ATTEMPT HAS BEEN MADE IN THIS

9 DOCUMENT TO DESCRIBE IMPLEMENTATION OF THE DEPENDENT

10 FOUNDATIONAL PROTOCOL SUCH AS SIP.  A FULL SPECIFICATION FOR

11 THE PURPOSE OF IMPLEMENTING THE APPARATUS WILL REQUIRE A

12 LITANY OF EXISTING AND PROPOSED STANDARDS FOUND IN SECTION 3,

13 REFERENCES.  AND IN SECTION 3 THEY REFERENCE RFC 2543.

14      SO THIS IS INCORPORATED BY REFERENCE EXPRESSLY INTO THE

15 PROVISIONAL APPLICATION FOR THIS PATENT.  AND THIS

16 INCORPORATED BY REFERENCE DOCUMENT, THE PROVISIONAL SAYS FOR

17 THE DEFINITIONS, LOOK TO THIS OTHER APPLICATION.  THIS OTHER

18 APPLICATION, THE DEFINITIONS SAY OUR DEFINITIONS ARE -- ARE

19 CONSISTENT WITH THE DEFINITIONS IN 2543.  CAN'T GET MUCH

20 CLEARER THAN THAT, YOUR HONOR, THAT THEY HAVE INCORPORATED

21 2543 INTO WHAT THEY MEAN WHEN THEY ARE REFERRING TO THESE SIP

22 ELEMENTS.

23      AND THEN FINALLY ON SLIDE 29 ON THE LATER SIP-TSI NON-

24 PROVISIONAL APPLICATION, AND THIS IS AFTER THE INCORPORATION

25 BY REFERENCE, YOUR HONOR, BUT JUST ANOTHER POINT OF NOTE, THAT

1  THAT NON-PROVISIONAL APPLICATION ALSO INCORPORATES AND REFERS

2  EXPLICITLY TO RFC 2543.  SO -- NEXT SLIDE, PLEASE.

3      SO WHAT WE HAVE HERE, YOUR HONOR, IS CLEAR GUIDANCE FROM

4  THE FEDERAL CIRCUIT THAT WHEN YOU REFER TO AND RELY ON A

5  PROTOCOL THAT THAT IS INTRINSIC EVIDENCE AND THE CONSTRUCTIONS

6  NEED TO BE CONSISTENT WITH THE PROTOCOL.  AND IN THIS CASE,

7  APPLYING THAT LAW TO THIS CASE, THERE IS JUST NO QUESTION FROM

8  THE SPECIFICATION AND THE PROSECUTION HISTORY THAT THE '519

9  PATENT HAS REFERRED TO RFC 2543 FOR THE DEFINITIONS OF SIP,

10 SIP AGENT, SIP PROXY SERVER, AND FOR THE DETAILS TO FILL IN

11 THE DETAILS OF THOSE PHRASES.  THE PROSECUTION HISTORY DOES

12 THAT AND THE SPECIFICATION DOES IT.  NEXT SLIDE.

13      AND I WILL GO THROUGH THESE QUICK.  THERE IS A LOT OF

14 MATERIAL ON HERE.  THE ONLY POINT HERE IS IF YOU LOOK AT THE

15 ACTUAL PATENT, YOUR HONOR, IT TALKS ABOUT SIP PROXY SERVER IN

16 A VERY HIGH LEVEL BUT IT DOESN'T TELL YOU HOW IT WORKS.

17 INSTEAD OF TELLING YOU HOW IT WORKS, IT REFERS YOU TO RFC

18 2543.  NEXT SLIDE.

19      IF YOU WANTED TO KNOW HOW IT WORKS, YOU HAVE TO READ RFC

20 2543, AND WE WENT THROUGH THIS YESTERDAY IN THE TUTORIAL.  A

21 PERSON OF ORDINARY SKILL IS NOT GOING TO KNOW HOW A SIP AGENT

22 WORKS, HOW TO COMPLY WITH THE PROTOCOL FOR A SIP AGENT, OR HOW

23 A SIP PROXY SERVER WORKS UNLESS THEY READ THE IMPERATIVES OF

24 2543.  AND YOU HAVE TO -- AND THAT'S -- THAT'S WHERE YOU SAW

25 THIS YESTERDAY, THESE REQUIRED REQUESTS.  YOU HAVE FIVE, SIX

1    REQUESTS, FORMS.  YOU HAVE TO FOLLOW THAT.  IF YOU DON'T

2    FOLLOW THAT YOU ARE NOT GOING TO BE SIP.  THAT'S SET FORTH IN

3    THE RFC.  NEXT SLIDE.

4         SAME THING WITH SIP USER AGENT HERE.  THE PATENT HAS A

5    BIG BOX AND IT TALKS ABOUT SIP USER AGENT.  AND IT REFERS TO

6    SIP USER AGENT BUT IT DOESN'T TELL YOU EXACTLY WHAT IT IS AND

7    HOW IT WORKS.  INSTEAD, IT REFERS TO THE RFC 2543 FOR THAT.

8    NEXT SLIDE.

9         AND THIS IS HOW IT WORKS.  BOTH PARTIES AGREE THIS IS --

10   YOU SAW THIS TWICE YESTERDAY.  BOTH PARTIES AGREE THIS IS HOW

11   IT WORKS.  AND WHERE IS THE -- WHERE ARE THE -- AND BOTH

12   PARTIES AGREE THESE ARE REQUIREMENTS, YOUR HONOR.  TO INITIATE

13   A SESSION YOU HAVE TO SEND AN INVITE.  YOU HAVE A 180 CODE

14   WHEN IT'S RINGING.  IF THE PERSON PICKS IT UP IT'S A 200 CODE.

15   THESE ARE ALL SET FORTH AS IMPERATIVES IN 2543.  AND BOTH

16   SIDES WHEN THEY TOLD YOU HOW, WHAT A SIP USER AGENT IS IN THE

17   TUTORIAL, DIDN'T RELY ON THE PATENT, THEY RELIED ON THE RFC

18   2543.

19        AND THIS IS AN EXCERPT FROM ESN'S BRIEF DESCRIBING WHAT

20   ITS INVENTION IS.  AND WHAT IS IT CITING HERE?  WHAT IS IT

21   RELYING ON IN THIS ILLUSTRATION?  IT'S NOT -- IT'S NOT THE

22   PATENT, YOUR HONOR.  THIS IS INFORMATION TAKEN DIRECTLY OUT OF

23   RFC 2543, AND THESE ARE ALL REQUIREMENTS.

24        NOW, IF WE DON'T REQUIRE -- LET ME TAKE A STEP BACK, YOUR

25   HONOR.  YOU HAD ASKED COUNSEL FOR ESN WHETHER THEY CONCEDE

1   THAT THERE ARE SOME REQUIREMENTS THAT NEED TO BE FOLLOWED.

2   AND I THOUGHT I HEARD COUNSEL SAY YEAH.  THEY -- THEY DON'T

3   DISPUTE THAT THERE ARE SOME REQUIREMENTS.  AND WE ARE NOT

4   TAKING THE POSITION, YOUR HONOR, THAT BY OUR PHRASE, IN

5   ACCORDANCE WITH RFC 2543, THAT THAT MEANS THAT A PERSON

6   DOESN'T INFRINGE IF THEY DON'T PRACTICE A SHOULD ELEMENT OR A

7   SUGGESTION THAT'S NOT AN IMPERATIVE.  THAT'S NOT WHAT WE ARE

8   SUGGESTING, YOUR HONOR.  SO WE MAY NOT BE THAT FAR APART HERE

9   FROM WHAT I AM HEARING THE OTHER SIDE SAY.  ALL WE ARE SAYING

10  IS THAT A SIP PROXY SERVER HAS TO BE IN ACCORDANCE WITH THE

11  IMPERATIVES, THE MUSTS, OF RFC 2543.

12          THE COURT: ASSUMING YOU ARE CORRECT AND I SHOULD

13  ADOPT YOUR CONSTRUCTION, HOW DOES THE JURY GO ABOUT CARRYING

14  OUT ITS FUNCTION IN THIS REGARD?

15          MR. VERHOEVEN: WELL, IT'S JUST LIKE ANY OTHER CLAIM

16  CONSTRUCTION, YOU HAVE TWO STEPS, YOUR HONOR.  AND THE CLAIM

17  CONSTRUCTION IS SIMPLY THAT THIS IS BY SIP USER AGENT WE MEAN

18  SIP USER AGENT HAS TO COMPLY WITH THE REQUIREMENTS OF 2543.

19  THE SECOND STEP --

20          THE COURT: AND THEY HAVE A COPY OF 2543 AND THEY --

21          MR. VERHOEVEN: WELL, THE SECOND STEP, YOUR HONOR, IS

22  INFRINGEMENT.  AND JUST LIKE YOU SAY, THE CAR HAS TO BE --

23  THAT I AM CONSTRUING THIS AUTOMATIC TRANSMISSION CLAIM AS

24  REQUIRING THAT IT BE CONSISTENT WITH OR REQUIRING THAT IT HAS

25  SOME TECHNOLOGICAL ATTRIBUTE, OKAY, THE JURY STILL HAS TO

1   DECIDE WHAT IT -- WHETHER IT DOES OR DOESN'T.  AND SO THE -- I

2   THINK THAT WE'VE SEEN FROM BOTH SIDES, IF YOU LOOK AT RFC

3   2543, IT EITHER USES AN IMPERATIVE OR IT DOESN'T.  IT EITHER

4   SAYS MUST OR IT DOESN'T SAY MUST.  AND THE JURY CAN FIGURE

5   THAT OUT.  DOES IT SAY MUST OR NOT?  AND -- AND I'M PERFECTLY

6   WILLING TO SAY AN IMPERATIVE -- FURTHER DEFINE AN IMPERATIVE

7   AND SAY IMPERATIVE MEANS IT SAYS MUST OR WHATEVER THE OTHER

8   WORDS WERE.

9            THE COURT:  SHALL OR WHATEVER THE --

10           MR. VERHOEVEN:  RIGHT.

11           THE COURT:  OKAY.

12           MR. VERHOEVEN:  ABSOLUTELY, YOUR HONOR.  AND THAT'S

13  VERY EASY FOR THE JURY TO DECIDE.  DOES IT HAVE THE MAGIC

14  WORD?  SO I DON'T THINK WE ARE THAT FAR OFF.  AND THE PROBLEM

15  IS UNLESS YOU DO -- UNLESS WE DO THIS, FIRST OF ALL, IF WE

16  DON'T DO IT, IT'S CONTRARY TO THE FEDERAL CIRCUIT.  BUT ALSO

17  UNLESS WE DO THIS, JUST A MATTER OF COMMON SENSE, IF YOU JUST

18  TAKE THE DEFINITION, EVEN IF YOU JUST TAKE THE DEFINITION OUT

19  OF THE RFC DEFINITION SECTION AND NOTHING MORE, THAT CAN READ

20  ON OTHER PROTOCOLS.  THAT CAN READ ON THE COMPETING PROTOCOL

21  THAT MS. SHARPER WENT OVER BECAUSE THE DEFINITION DOESN'T SAY

22  REALLY ANYTHING.  LET'S GO TO SLIDE 37.

23      I AM GOING TO GO THROUGH THIS PRETTY QUICKLY, YOUR HONOR,

24  BUT NOT JUST THE FEDERAL CIRCUIT CASE.  THERE'S NUMEROUS

25  CASES, YOUR HONOR, WHERE THE COURTS HAVE REQUIRED THAT THE

1    CLAIMS BE CONSTRUED CONSISTENT WITH STANDARDS.  AND *DISPLAY*

2    *LINK CORP. V. MAGIC CONTROL TECHNOLOGY* CASE, YOUR HONOR, THERE

3    THE DEFENDANT ARGUED THAT VGA MEANT ANY VIDEO DISPLAY

4    STANDARDS COMPATIBLE WITH ANY 15 PIN VGA PORT PLUG.  THE COURT

5    REJECTED IT BECAUSE IT FOUND IT CIRCULARLY DEFINED VGA

6    RECURSIVELY JUST BY SAYING VGA IS VGA, WHICH IS A LOT OF WHAT

7    ESN'S CONSTRUCTIONS ON SIP ARE HERE IN THIS CASE.

8        THE PLAINTIFF ARGUED THAT VGA MEANT THE TECHNOLOGY

9    DESCRIBED IN TWO IBM REFERENCE DOCUMENTS.  THE DOCUMENTS

10   WEREN'T EVEN PROMULGATED BY A STANDARD SETTING ORGANIZATION,

11   YOUR HONOR, BUT THE INDUSTRY HAD ADOPTED THE REFERENCE

12   DOCUMENTS AS A SPECIFICATION FOR THE VGA STANDARD.  AND THE

13   COURT ADOPTED THE CONSTRUCTION THAT THE PLAINTIFF ARGUED FOR,

14   THAT IT HAD TO BE THE TECHNOLOGY DESCRIBED IN THE REFERENCED

15   DOCUMENTS, JUST WHAT WE ARE DOING HERE.  NEXT SLIDE.

16       IN THE *GRACENOTE V. MUSICMATCH* CASE THE PARTIES DISPUTED

17   THE CONSTRUCTION OF UNIFORM RESOURCE LOCATOR, URL, WHICH I

18   THINK YOUR HONOR KNOWS IS PRETTY MUCH A STANDARD.  THE PATENT

19   SPECIFICATION DEFINED URL IN TERMS OF RFC 1945.  THE COURT

20   ADOPTED THE CONSTRUCTION THAT A URL MUST BE IN THE FORMAT

21   DEFINED IN THE RFC, SIMILAR TO WHAT WE ARE ASKING FOR IN THIS

22   CASE, YOUR HONOR.  NOTABLY, RFC 1945 WAS NOT CONSIDERED AN

23   INTERNET STANDARD BY THE IETF AT THAT TIME.  IT WAS AN

24   INFORMATIONAL RFC.

25       WELL, INFORMATIONAL IS NOT EVEN A STANDARD, YOUR HONOR,

- 67 -

1  UNDER THE STANDARDS TRACK RULES BUT YET THE COURT DID THIS.

2  HERE, WE'VE GOT -- WE'VE GOT NO QUESTION THAT IT'S A STANDARDS

3  TRACK DOCUMENT THAT WAS REFERRED TO IN THE PATENT.  NEXT

4  SLIDE.

5      I AM NOT GOING TO GO THROUGH ALL THESE, YOUR HONOR.  THEY

6  ARE CITED IN A FOOTNOTE IN OUR BRIEF.  BUT THERE IS CASE AFTER

7  CASE IN THE CASE LAW THAT CONSTRUE CLAIMS CONSISTENT WITH

8  STANDARDS WHEN THE CLAIMS ARE REFERRING TO THESE STANDARDS.

9      THE COURT: SO THIS ISSUE AROSE IN *EPICREALM*?  I

10  DON'T RECALL.  YOU CITE THE *EPICREALM* CASE.

11      MR. VERHOEVEN: UH-HUH.  IN THAT CASE YOUR HONOR

12  CONSTRUED HTTP-COMPLIANT DEVICE TO BE, QUOTE, "A DEVICE THAT

13  IS COMPLIANT WITH THE COMMUNICATION PROTOCOL KNOWN AS

14  HYPERTEXT TRANSPORT PROTOCOL."  SO, YOUR HONOR HAS DONE IT,

15  TOO.  SO THIS IS NOT SOMETHING UNUSUAL THAT WE ARE ASKING FOR,

16  YOUR HONOR.  AND IT'S NOT SOMETHING THAT THE JURY CAN'T

17  HANDLE.  IT'S -- IT'S -- IT'S A DOCUMENT, SURE.  YOU HAVE TO

18  LOOK AT THE DOCUMENT, BUT IT'S A DOCUMENT THAT'S BEEN REFERRED

19  TO AS A REFERENCE DOCUMENT SET FORTH THE DETAILS.  AND THE

20  JURY IS PERFECTLY CAPABLE OF DOING THAT.  AND YOU KNOW THE

21  PARTIES ARE GOING TO -- AT SOME POINT THEY ARE GOING TO HAVE

22  TWO OR THREE THINGS THAT ARE GOING TO BE THEIR POINTS AND THEY

23  ARE GOING TO ASK THE JURY TO LOOK AT THOSE THINGS FOR NON-

24  INFRINGEMENT.

25      SO IT'S NOT GOING TO BE SOME SITUATION WHERE THE JURY HAS

1   TO LOOK AT 147 PAGES AND TRY TO FIGURE IT OUT.  IT'S NOT GOING

2   TO BE WHAT HAPPENS.  IT'S GOING TO BE A SITUATION WHERE THE

3   PARTIES HAVE CRYSTALIZED THEIR ARGUMENTS, AND ONE SIDE IS

4   GOING TO BE SAYING, WE DON'T PRACTICE THIS REQUIREMENT OF THE

5   RFC, AND THEY ARE GOING TO SAY IT'S NOT AN IMPERATIVE, AND THE

6   JURY IS GOING TO LOOK AT IT AND SAY, WELL, DOES IT SAY MUST?

7   DOES IT SAY SHALL, OR NOT?  THAT'S A PRETTY SIMPLE THING FOR

8   THE JURORS TO DO.

9       ESN CONTENDS -- LET'S GO TO THE NEXT SLIDE -- NEXT SLIDE.

10  ESN CONTENDS THAT THE RFC STANDARDS TRACK DOCUMENT IS NOT A

11  STANDARD, BUT THAT'S NOT CORRECT, YOUR HONOR.  AND I THINK WE

12  COVERED THAT YESTERDAY.  SO I'LL JUST VERY BRIEFLY, UNDER THE

13  RULES FOR -- FOR THE IETF, THERE IS DIFFERENT TYPES OF

14  DOCUMENTS.  AND THE RULES SAY THAT IETF STANDARDS TRACK

15  DOCUMENTS ARE STANDARDS ON THEIR FACE.  AND THIS IS ON THE

16  DOCUMENT THAT ESN PROVIDED TO THE COURT.  IN ITS BRIEFING IT

17  SAYS THAT.  ALSO, ESN SAYS, WELL, THIS IS JUST A PROPOSED

18  STANDARD, BUT AS WE SAW YESTERDAY, I THINK 90 PERCENT OF THE

19  IETF STANDARDS TRACK DOCUMENTS ARE PROPOSED STANDARDS.  AND

20  SIP IS STILL A PROPOSED STANDARD, EVEN THOUGH IT'S BEEN A

21  STANDARD FOR MANY, MANY YEARS.  LET'S GO TO THE NEXT SLIDE.

22      YOUR HONOR, UNDER ESN'S CONSTRUCTION, LITERALLY THE

23  CONSTRUCTION WOULD ENCOMPASS THE COMPETING PROTOCOL THAT WE

24  LOOKED AT YESTERDAY THAT WAS TELEPHONE CENTRIC H.323.  THAT'S

25  PROTOCOL THAT'S CITED IN THE PATENT AS PRIOR ART.  SO

1   LITERALLY LOOKING AT THEIR PROPOSED CONSTRUCTION WOULD READ ON

2   THE PRIOR ART AND READ OUT THEIR INNOVATION.  LET'S GO TO THE

3   NEXT SLIDE.

4       ESN'S RESPONSE TO US POINTING OUT THIS FLAW IN THEIR

5   CONSTRUCTION WE THINK IS NOT PERSUASIVE.  AND THIS IS ALL THEY

6   SAY ABOUT IT, YOUR HONOR, IN THEIR BRIEF, WAS A CUT AND PASTE

7   OUT OF THEIR BRIEF.  QUOTE: FURTHER, CISCO ARGUES AGAINST A

8   STRAW MAN IN ITS CRITICISMS OF ESN'S CONSTRUCTION.  FIRST,

9   CISCO CONTENDS THAT ESN'S CONSTRUCTION WOULD READ ON COMPETING

10  PROTOCOLS SUCH AS H.323.  AND THIS IS THEIR RESPONSE, YOUR

11  HONOR.

12      HOWEVER, ESN'S CONSTRUCTION OF SIP SPECIFIES THAT IT IS

13  SESSION INITIATION PROTOCOL, WHICH PRECLUDES OTHER PROTOCOLS.

14  WELL, THAT'S RECURSIVE, YOUR HONOR.  THAT'S CIRCULAR.  THAT'S

15  THE SAME REASONING THAT COURTS HAVE ALREADY REJECTED.  THE

16  ONLY WAY TO FIGURE OUT WHETHER IT'S SIP OR NOT IS YOU HAVE TO

17  LOOK AT THE RFC.  YOU HAVE TO LOOK AT RFC 2543.  TO SAY, WELL,

18  IT'S SIP BECAUSE IT'S SIP DOESN'T PROVIDE ANY GUIDANCE TO THE

19  JURY.  NEXT SLIDE.

20      IN ITS BRIEFING PAPERS AND EVEN TODAY I THINK I HEARD ESN

21  CONCEDE THAT A PERSON OF ORDINARY SKILL WOULD UNDERSTAND

22  LOOKING AT THIS PATENT AND LOOKING AT THESE CLAIMS THAT THEY

23  HAVE TO COMPLY WITH THE IMPERATIVES OF RFC 2543, WHICH IS ALL

24  WE ARE REALLY ASKING FOR, YOUR HONOR.  THIS IS A QUOTE OUT OF

25  THEIR BRIEF.  THEY SAY, QUOTE, ESN -- INSTEAD, ESN'S

1    CONSTRUCTION IS PLAINLY INCORPORATING THE FACT THAT INDUSTRY

2    PRACTICE WOULD BE TO SUBSTANTIALLY COMPLY WITH THIS PROPOSED

3    STANDARD, PAYING PARTICULAR ATTENTION TO THE IMPERATIVES WHICH

4    PROMOTE INTEROPERABILITY.  SO IF WE TAKE OUT THE WILL WORDS

5    LIKE SUBSTANTIALLY AND JUST SAY, OKAY, YOU HAVE TO COMPLY WITH

6    THE IMPERATIVES, WE ARE PRETTY CLOSE.  ESN DOESN'T SAY WHAT

7    CRITERIA A COURT OR JURY WOULD USE TO DETERMINE WHETHER YOU

8    SUBSTANTIALLY COMPLY OR NOT, SO WE HAVE A PROBLEM WITH THAT.

9    BUT OTHERWISE, IF YOU SAY WE HAVE TO COMPLY WITH THE

10   IMPERATIVES, WE HAVE NO PROBLEM WITH THAT, YOUR HONOR.

11        AND THIS NEXT SLIDE, SLIDE 45, I THINK I HAVE ALREADY

12   COVERED A LITTLE BIT. THIS IS THE ARGUMENT THAT ESN MAKES THAT

13   WE'RE -- OUR CONSTRUCTION WOULD REQUIRE IMPLEMENTATION OF ALL

14   DETAILS IN ALL THE HUNDRED AND SOME ODD PAGES.  THAT'S NOT

15   WHAT WE ARE SAYING.  A PERSON OF ORDINARY SKILL IN THE ART

16   WOULD UNDERSTAND THAT IN ACCORDANCE WITH RFC 2543 MEANT THAT

17   THE PROTOCOL WOULD COMPLY WITH THE REQUIREMENT LEVEL

18   STATEMENTS OF THE RFC.  AND HERE WE HAVE QUOTED THIS YOU HAVE

19   ALREADY SEEN.  THERE THEY ARE.  THEY ARE RIGHT THERE, EASY FOR

20   THE JURY TO SEE.  MUST, THIS WORD, OR THE TERMS REQUIRED OR

21   SHALL, MEAN THAT THE DEFINITION IS AN ABSOLUTE REQUIREMENT OF

22   THE SPECIFICATION.  MUST NOT, THIS PHRASE, OR THE PHRASE SHALL

23   NOT, MEAN THAT THE DEFINITION IS AN ABSOLUTE PROHIBITION.  SO

24   THE JURY JUST HAS TO LOOK TO SEE IF THE MAGIC WORDS ARE THERE.

25        SO IN CONCLUSION, ON THE FIRST TERM HERE, SIP, WE THINK

1   THAT ASKING FOR IN ADDITION TO SIMPLY SAYING THAT IT'S A

2   SESSION INITIATION PROTOCOL, IN ADDITION TO THAT, SAYING THAT

3   IT ALSO MEETS THE REQUIREMENTS OR THE IMPERATIVES OF RFC 2543,

4   IT'S REQUIRED BY THE FEDERAL CIRCUIT, IT'S CLEARLY APPROPRIATE

5   GIVEN THE REFERENCE AND INCORPORATION OF THE SPECIFICATION AND

6   THE PROSECUTION HISTORY, AND WOULD NOT BE CONFUSING TO THE

7   JURY AND WOULD ACTUALLY BE HELPFUL FOR THEM TO ASCERTAIN

8   WHETHER IT'S SIP OR IT ISN'T SIP.

9        SO I AM GOING TO MOVE ON TO THE NEXT TERM, YOUR HONOR,

10  AND I'LL BE SHORTER ON THESE OTHER TERMS.  SIP USER AGENT.  I

11  THINK WE ARE PRETTY CLOSE ON SIP USER AGENT.  I AM NOT GOING

12  TO REARGUE IN ACCORDANCE WITH IETF RFC 2543 ON THIS.

13            THE COURT: YOUR ARGUMENT WOULD BE THE SAME

14  ESSENTIALLY?

15            MR. VERHOEVEN: EXACTLY, YOUR HONOR.  WELL, I MIGHT

16  ADD ONE OR TWO POINTS, BUT I WON'T REPEAT EVERYTHING.  THE

17  REMAINDER OF OUR CONSTRUCTION IS TAKEN RIGHT OUT OF THE

18  DEFINITION OF RFC 2543 IN THE DEFINITION SECTION.  AND I

19  BELIEVE, ACCORDING TO MY NOTES, YOU ASKED COUNSEL IF HE HAD A

20  PROBLEM WITH THOSE.

21            THE COURT: THE PROBLEM SEEMS TO BE THE ENDPOINT

22  LANGUAGE.

23            MR. VERHOEVEN: YEAH, WELL, THE ENDPOINT LANGUAGE IS

24  -- THIS GOES TO -- IF I CAN JUST BE BLUNT, THIS GOES TO THEY

25  ARE LOOKING FORWARD TO THE JURY AND THEY HAVE A PROBLEM WITH

1 HOW THEY ARE GOING TO DESCRIBE THEIR INVENTION AS BEING

2 SOMETHING OTHER THAN SIP AND THE IMPLEMENTATION OF SIP. AND

3 IN THE TUTORIAL YESTERDAY THEY SAID, WELL, THEIR INVENTION IS

4 THAT THE PROXY SERVER -- THAT IN THE OLD -- IN THE OLD SIP THE

5 PROXY SERVER IS IN THE MIDDLE OF THE NETWORK AND THEY PUT IT

6 OUT ON THE END. AND SO FRANKLY THE REASON THEY ARE PUTTING

7 ENDPOINT IN HERE IS NOT BECAUSE IT'S IN THE INTRINSIC

8 EVIDENCE. IT'S NOT BECAUSE IT'S REQUIRED IN ANY OF THE

9 DEFINITIONS. IT'S BECAUSE THEY WANT TO DISTINGUISH USER AGENT

10 AND SAY, WELL, SEE, THAT'S AN ENDPOINT AND THE PROXY SERVER IS

11 NOT AN ENDPOINT. AND THE PROXY SERVER IS IN THE MIDDLE OF THE

12 SYSTEM AND THE USER AGENT IS IN THE ENDPOINT.

13     SO THIS IS A CONSTRUCTION THAT'S DRIVEN BY THEY ARE

14 LOOKING DOWN THE ROAD AND THEY HAVE TO FIND SOME ARGUMENT AS

15 TO WHY THEIR PATENT IS ACTUALLY NEW OR UNIQUE. AND FRANKLY,

16 THAT'S WHY I THINK THE WORD ENDPOINT IS IN THERE. THERE IS

17 CERTAINLY NO SUPPORT FOR THAT IN THE INTRINSIC EVIDENCE, YOUR

18 HONOR. AND IT'S NOT IN THE DEFINITION IN IETF RFC 2543. AND

19 SO WE, YOU KNOW, WE DON'T THINK IT'S APPROPRIATE TO ADD IT.

20     SO IF WE -- I'LL GO QUICKLY ON THIS. ON SLIDE 47 OUR

21 PROPOSED CONSTRUCTION WE BELIEVE IS APPROPRIATE BECAUSE IT

22 INCORPORATES THE DEFINITIONS OF SIP USER AGENT CLIENT AND SIP

23 USER AGENT SERVER AND SIP USER AGENT. AND IT SIMPLIFIES IT A

24 LITTLE BIT, BUT IT'S CONSISTENT IN COMPLYING WITH THAT. AND

25 THEN ALL WE DO IS WE ADD THAT IT'S IN ACCORDANCE WITH RFC

1    2543.    REALLY QUICKLY, THIS IS SPECIFIC TO USER AGENT, BUT

2    AGAIN IN ESN'S BRIEF THEY USE RFC 2543 TO EXPLAIN TO YOUR

3    HONOR WHAT A SIP USER AGENT IS.    NEXT SLIDE.

4        IN THE TUTORIAL YESTERDAY, THIS IS FROM THEIR TUTORIAL,

5    YOUR HONOR.    SIP USER AGENT THEY PUT IN QUOTES.    AND THE

6    INVITE, THIS WHOLE DIAGRAM, EXCEPT FOR THE RED ENDPOINT

7    LANGUAGE, IS RIGHT OUT OF RFC 2543.    IT'S NOT OUT OF THE

8    PATENT.    SO THEY NEED TO REFER TO RFC 2543 TO EVEN TELL YOU

9    WHAT IT IS.

10       AGAIN, LET'S GO TO THE NEXT SLIDE AND I'LL BE QUICK, YOUR

11   HONOR.    ESN'S CONSTRUCTION BY NOT INCORPORATING RFC 2543 COULD

12   BE READ ON H.323.    SIP USER AGENT UNDER THEIR DEFINITION COULD

13   BE SOMETHING THAT'S NOT SIP, WHICH WOULD BE CONFUSING TO THE

14   JURY AND WOULD READ ON THE PRIOR ART.    NEXT SLIDE.

15       SO NEXT TERM, YOUR HONOR, SIP AGENT.    OUR POSITION IS

16   THAT THIS TERM IS INDEFINITE, YOUR HONOR.    YOU HAVE TO

17   REMEMBER HERE WE ARE TALKING ABOUT SPECIFIC LANGUAGE, SPECIFIC

18   TERMS, AND THE PERSON OF ORDINARY SKILL IN THE ART IS REFERRED

19   TO A SPECIFIC DOCUMENT TO DEFINE THOSE TERMS.    IN OTHER WORDS,

20   WHAT'S SIP?    YOU HAVE TO LOOK AT THE RFC.    WHAT'S A SIP USER

21   AGENT?    WELL, IT'S DEFINED EXPRESSLY IN THE RFC AND THERE'S

22   SECTIONS IN THE RFC THAT DESCRIBES HOW IT WORKS.    WHAT'S A SIP

23   PROXY SERVER?    IT'S DEFINED IN THE RFC.    THERE'S SECTIONS IN

24   THE RFC THAT TELLS YOU, YOU HAVE TO USE CERTAIN COMMANDS TO

25   MAKE IT A SIP PROXY SERVER.    WHAT'S A SIP AGENT?    LET'S LOOK

1 AT THE RFC.  THERE IS NO DEFINITION OF SIP AGENT IN THE RFC.

2 THERE IS NOWHERE THAT YOU CAN LOOK THAT TELLS YOU WHAT A SIP

3 AGENT IS.  LET'S GO TO SLIDE 53.

4      FIRST, YOU MIGHT SAY, WELL, SIP AGENT IS JUST SHORTHAND

5 FOR SIP USER AGENT.  THEY JUST GOT SLOPPY.  WELL, THAT'S NOT

6 THE CASE HERE, YOUR HONOR.  ESN EVEN AGREES THAT SIP AGENT IS

7 NOT THE EQUIVALENT OF SIP USER AGENT.  THEY CALL IT SOMETHING

8 LIKE A SUPER SET, BUT THE SUPER SET HAS NO BOUNDARIES.  AND AS

9 YOUR HONOR KNOWS, A DIFFERENT PATENT TERMS -- IF DIFFERENT

10 PHRASES ARE USED THEY ARE PRESUMED TO HAVE DIFFERENT MEANINGS.

11 WHAT'S THE MEANING OF SIP AGENT?  WE DON'T KNOW.  NEXT SLIDE.

12      SIP AGENT ONLY APPEARS ONCE AND IT APPEARS IN ASSERTED

13 CLAIM 9.  NEITHER THE SPECIFICATION NOR THE CLAIMS OTHERWISE

14 REFER TO SIP AGENT OR DEFINE SIP AGENT.  AND AS I SAID, THE

15 RFC DOES NOT REFER TO OR DEFINE SIP AGENT, THAT PHRASE.  IT

16 REFERS TO SIP USER AGENT BUT DOESN'T REFER TO SIP AGENT.

17 SIMILARLY, THERE IS NO TECHNICAL DICTIONARY OUT THERE THAT

18 DEFINES THIS PHRASE SIP AGENT.  NEXT SLIDE.

19      WE SUBMITTED EVIDENCE, YOUR HONOR, BECAUSE WE KNOW THERE

20 IS A BURDEN HERE ON US.  WE SUBMITTED EVIDENCE FROM DR. ERIC

21 BURGER.  DR. BURGER IS THE CHAIRMAN OF THE BOARD OF DIRECTORS

22 OF THE SIP FORUM.  HE HAS BEEN DESIGNING VOIP PRODUCTS SINCE

23 1998.  HE FOUNDED A TECHNOLOGY COMPANY THAT DESIGNED AND

24 DEVELOPED SIP PRODUCTS IN 2000.  AND HE HAS PUBLISHED TWELVE

25 IETF RFCS AND A BOOK ON SIP.  HE KNOWS SIP.  DR. BURGER OPINED

1    THAT A PERSON OF ORDINARY SKILL IN THE ART WOULD BE UNABLE TO

2    DETERMINE THE MEANING OF THIS PHRASE SIP AGENT.

3         WHAT HAS ESN DONE IN RESPONSE TO THIS EVIDENCE?  THEY

4    HAVE SUBMITTED NO EXPERT DECLARATION AT ALL.  SO WE HAVE

5    UNREBUTTED TESTIMONY FROM A PERSON WHO INDISPUTABLY IS SKILLED

6    IN THE ART SAYING YOU WOULDN'T KNOW WHAT THE BOUNDARIES ARE

7    HERE.  NEXT SLIDE.

8         WHAT ESN DOES TO PROVIDE, ATTEMPT TO PROVIDE A DEFINITION

9    IS IT JUST -- IT DEFINES THE DEFINITION OF THE WORD AGENT.

10   THIS IS NOT -- THIS IS NOT GOING TO SAVE THE DAY BECAUSE THESE

11   TERMS IN THE PATENT MEAN SPECIFIC THINGS.  SIP USER AGENT

12   MEANS A SPECIFIC THING.  YOU CAN'T JUST FIND THE DEFINITION OF

13   AGENT FOR SIP USER AGENT AND APPEND IT TO THE REST OF THE

14   DEFINITION.  ESN PROVIDES NO EVIDENCE THAT THE CITATION IN

15   NEWTON'S TELECOM DICTIONARY RELATES TO SIP IN ANY WAY.  IF YOU

16   LOOK AT OTHER DEFINITIONS, FOR EXAMPLE, USER AGENT, IT'S NOT

17   FROM THAT DICTIONARY UNDER THE SAME LOGIC.  IT'S CLEARLY NOT

18   IN ACCORD WITH THE '519 PATENT'S USE OF THE PHRASE SIP USER

19   AGENT.

20        NOW, I THINK I HEARD COUNSEL SAY THAT, WELL, CISCO RELIED

21   ON THIS DICTIONARY WITH RESPECT TO A DIFFERENT TERM THAT THE

22   PARTIES LATER STIPULATED TO, SO IT'S OKAY FOR US TO RELY ON

23   THIS DICTIONARY.  WELL, THAT'S TOO SIMPLE LOGIC.  I MEAN, AS

24   YOUR HONOR KNOWS, YOU CAN LOOK TO A DICTIONARY AND THERE MIGHT

25   BE 15 DEFINITIONS FOR A WORD.  AND YOU NEED TO LOOK AT THE

1   SPECIFICATION AND THE CONTEXT TO EVEN HAVE A DICTIONARY

2   DEFINITION BE APPROPRIATE OR HAVE MEANING.  SO SIMPLY BECAUSE

3   WE CITED TO A DEFINITION EARLIER FOR A DIFFERENT TERM HAS NO

4   EVIDENTIARY BEARING ON THE PARTICULAR DEFINITION THEY PICKED

5   HERE AND WHETHER IT'S APPROPRIATE OR NOT.  SO WE BELIEVE THAT

6   THIS PHRASE IS INDEFINITE, YOUR HONOR.  NEXT SLIDE.

7        WE ALSO BELIEVE THAT CISCO'S CONSTRUCTION WOULD NOT FIX

8   THE INDEFINITENESS.  CISCO BASICALLY SUBSTITUTES ONE UNDEFINED

9   TERM, SIP AGENT, WITH ANOTHER UNDEFINED TERM, SIP FUNCTION.

10  NEITHER THE PATENT NOR ESN DEFINES WHAT A SIP FUNCTION IS.

11  AGAIN, A PERSON OF ORDINARY SKILL, EVEN IF YOU ADOPTED ESN'S

12  CONSTRUCTION WOULD HAVE TO FIGURE OUT, WELL, WHAT'S A SIP

13  FUNCTION AND A NON-SIP FUNCTION?  WELL, WHERE WOULD THEY LOOK?

14  THEY WOULD LOOK TO THE RFC.  RFC DOESN'T DEFINE SOMETHING

15  CALLED A SIP FUNCTION AND WHAT IS INCLUDED OR EXCLUDED.  SO

16  THAT -- THAT'S NOT GOING TO SAVE THE DAY.  NEXT SLIDE.

17       OKAY.  NEXT TERM, YOUR HONOR, SIP PROXY SERVER.  HERE

18  AGAIN, THE FIRST PART OF OUR CONSTRUCTION IS THE SAME AS THE

19  FIRST SENTENCE IN ESN'S CONSTRUCTION, SO WE DON'T NEED TO

20  WORRY ABOUT THAT.  WE HAVE THE LAST CLAUSE IN ACCORDANCE WITH

21  IETC RFC 2543.  WE HAVE ALREADY HASHED THAT OUT.  WE KNOW

22  THAT'S A DISPUTE.  AND THEN YOU'VE GOT THE SECOND --

23            THE COURT: BASICALLY YOU -- YOU AGREE THAT IT WOULD

24  PROBABLY BE MORE APPROPRIATE IN -- SOME LANGUAGE TO THE EFFECT

25  IN ACCORDANCE WITH THE MANDATORY LANGUAGE SUCH AS OR FOR

1  EXAMPLE, SHALL, MUST?

2         MR. VERHOEVEN: YES.  THAT WOULD ACTUALLY PROBABLY BE

3  HELPFUL.  WE SHOULD HAVE THOUGHT ABOUT THAT HARDER MAYBE.  BUT

4  WE ARE NOT TRYING TO ARGUE THAT NON-REQUIREMENTS ARE REQUIRED.

5  SO, YES, THE SHORT ANSWER IS YES.

6      YOUR HONOR HAD ASKED COUNSEL ABOUT THE SECOND SENTENCE IN

7  THEIR LONG CONSTRUCTION HERE.  IT DOESN'T COME FROM THE

8  DEFINITION IN THE RFC.  AND THE -- AGAIN, THE ANSWER TO OUR

9  REBUTTAL TO THEIR STATEMENT IS THE REASON THEY WANT THAT

10 SECOND SENTENCE IS THE SAME REASON THEY WANT ENDPOINT BECAUSE

11 THEY ARE TRYING TO SAY, WELL, THIS SIP PROXY SERVER IS IN THE

12 MIDDLE OF THE NETWORK AND DISTINGUISH THAT FROM THE SIP USER

13 AGENT, SAY IT'S IN THE ENDPOINT.  AND THIS IS A -- THIS IS AN

14 ARGUMENT THEY WANT TO MAKE TO THE JURY TO TRY TO SAY WHAT --

15 WHY WHAT THEY HAVE IS NEW OR UNIQUE.

16     WELL, WE ARE GOING TO SHOW THE JURY THAT IN FACT THE

17 PRIOR ART HAD BOTH OF THESE THINGS IN THE END IN THE

18 RESIDENTIAL GATEWAY.  BUT THAT'S NOT FOR CLAIM CONSTRUCTION,

19 YOUR HONOR.  THAT'S -- THAT'S A DIFFERENT PART OF THE CASE.

20 AND IT'S NOT APPROPRIATE FOR THEM TO ADD ADDITIONAL SENTENCES

21 TO THEIR CONSTRUCTION FOR THAT PURPOSE.  WHAT THE COURT IS

22 SUPPOSED TO DO IS LOOK AT THE INTRINSIC EVIDENCE AND CONSTRUE

23 THE CLAIM.  AND THIS SECOND SENTENCE THAT THEY HAVE COME UP

24 WITH HERE IS NO CONNECTION TO THAT PROCESS.

25     AGAIN, AND I'LL DO THIS QUICKLY, YOUR HONOR, BUT JUST FOR

1   COMPLETENESS IN SUPPORT OF OUR CONSTRUCTION, AGAIN AS WE SAW

2   EARLIER, THE SPECIFICATION -- AND I REPEAT THIS BECAUSE IT

3   RELATES SPECIFICALLY TO THIS TERM, YOUR HONOR.  THE

4   SPECIFICATION IN PARTICULAR REFERENCES IETF RFC 2543 FOR THE

5   DETAILS OF THE MEANING OF THE PHRASE, QUOTE, SIP PROXY SERVER.

6   SAYS: THE, QUOTE, "SIP PROXY SERVER," CLOSE QUOTE,

7   FUNCTIONALITY DESCRIBED FURTHER IN THIS DISCLOSURE AND IN IETF

8   RFC 2543.  SO IT SPECIFICALLY REFERENCED THAT IT'S DESCRIBED

9   FURTHER IN THIS RFC.  NEXT SLIDE.

10       AGAIN, EVEN WITH THIS -- WITH THIS PHRASE AS WELL AS SIP

11  USER AGENT, ESN RELIES ON RFC 2543 TO TELL YOU HOW IT WORKS.

12  NEXT SLIDE.

13       YESTERDAY IN THE TUTORIAL, THIS IS ESN'S SLIDE, EXPLAINED

14  TO YOUR HONOR HOW IT WORKS QUOTING THE PHRASE.  YOU CAN SEE

15  THIS DIAGRAM.  THESE ARE -- THESE ARE THE REQUIREMENTS OF RFC

16  2543, THE INVITE, CODE, AND THE WAY THE PROTOCOL WORKS.  IT'S

17  TAKEN STRAIGHT OUT OF RFC 2543.  THE ONLY THING THAT ISN'T IS

18  THE PHRASE SIP INTERMEDIARY.  AND THEY WANT TO ADD THAT NOTION

19  BECAUSE THEY WANT TO SAY THE USER AGENT IS AN ENDPOINT AND THE

20  PROXY SERVER IS AN INTERMEDIARY.  BUT THESE ARE MADE UP

21  NOTIONS THAT THEY ARE COMING UP WITH, YOUR HONOR.  THEY ARE

22  NOT IN THE RFC AND THEY ARE NOT IN THE INTRINSIC EVIDENCE.

23  NEXT SLIDE.

24       BUT IF YOU LOOK AT ESN'S CONSTRUCTION, IT'S VERY CLEAR

25  YOU NEED TO LOOK AT THE RFC TO UNDERSTAND WHAT IT MEANS.  SO,

1  AND THIS IS THE SAME REASON WHY YOU CAN'T JUST TAKE A

2  DEFINITION OUT OF THE RFC IN ISOLATION WITHOUT FURTHER

3  CLARIFYING THAT THAT HAS TO WORK IN ACCORDANCE WITH THE

4  REQUIREMENTS.  SO ESN'S CONSTRUCTION REFERS TO SIP REQUESTS.

5  WELL, WHAT DO WE MEAN WHEN WE SAY SIP REQUESTS?  WELL, YOU ARE

6  GOING TO HAVE TO -- WHAT'S A SIP REQUEST AND WHAT'S NOT A SIP

7  REQUEST?  WELL, YOU HAVE TO LOOK AT RFC 2543 IN SECTION 4.  AS

8  YOU SAW YESTERDAY, THERE'S ONLY SIX THINGS THAT CAN BE SIP

9  REQUESTS: INVITE, AND ACK, AND OPTIONS, A BYE, A CANCEL, OR A

10 REGISTER COMMAND.  IF IT'S NOT ONE OF THOSE SIX THINGS, IT'S

11 NOT SIP.  IT'S NOT A SIP REQUEST.  SO JUST TO SAY SIP REQUEST

12 WITHOUT ANYTHING FURTHER ISN'T GOING TO DO IT.  YOU NEED TO

13 LOOK AT THE RFC.  NEXT SLIDE.

14       SAME THING WITH SIP USER AGENT.  AND I AM NOT GOING TO

15 REPEAT THE SAME ARGUMENT.  YOU WILL HAVE IT AS PART OF THE

16 RECORD, BUT IN ORDER TO UNDERSTAND HOW A SIP USER AGENT

17 BEHAVES, WHETHER IT'S A SIP USER AGENT OR NOT, YOU NEED TO

18 LOOK AT SECTION 11.  NEXT SLIDE.

19       NOW ESN HAS MADE AN ARGUMENT, YOUR HONOR, AND THIS IS --

20 I AM JUST GOING TO RESPOND BECAUSE THEY MADE IT AND WE DIDN'T

21 HAVE A -- I HAVEN'T HAD A CHANCE TO RESPOND.  THIS IS REALLY

22 FOR ANOTHER DAY.  BUT ESN HAS MADE AN ARGUMENT THAT OUR

23 EXPERT, DR. BURGER, IMPROPERLY INSERTED THE WORD MUST INTO

24 RFC'S 2543 STATEMENT THAT THE TO, FROM, CALL-ID, AND CONTACT

25 TAGS ARE COPIED EXACTLY FROM THE ORIGINAL REQUEST.

1      AND THAT ARGUMENT WE BELIEVE IS INCORRECT.  ALTHOUGH THE

2   SPECIFIC SENTENCE THAT WE CITED IN THE RFC WAS NOT PRECEDED BY

3   A MUST, YOUR HONOR, THE REQUIREMENT THAT ALL END-TO-END

4   HEADERS MUST REMAIN UNMODIFIED IS IN FACT SPECIFIED IN SECTION

5   6.5 OF RFC 2543.  AND I AM QUOTING IT HERE ON THIS SLIDE: 6.5

6   END-TO-END AND HOP-BY-HOP HEADERS.  THIS RFC SAYS: END-TO-END

7   HEADERS MUST -- THERE IS THE MAGIC WORD, YOUR HONOR -- BE

8   TRANSMITTED UNMODIFIED ACROSS ALL PROXIES, WHILE HOP-TO-HOP

9   HEADERS MAY BE MODIFIED OR ADDED BY PROXIES.

10     SO WHAT WE WOULD SAY, YOUR HONOR, UNDER -- IF WE GET THE

11  CONSTRUCTION WE ARE ASKING FOR IS THE REQUIREMENT HERE IS END-

12  TO-END HEADERS MUST BE TRANSMITTED UNMODIFIED ACROSS ALL

13  PROXIES.  WHAT'S NOT A REQUIREMENT IS THAT HOP-TO-HOP HEADERS

14  MUST BE MODIFIED OR ADDED.  IT SAYS MAY, SO THAT'S NOT A

15  REQUIREMENT.  IT'S VERY SIMPLE TO DETERMINE WHETHER IT'S A

16  REQUIREMENT OR NOT.  IF YOU LOOK AT THE RFC 2543 TABLES 4 AND

17  5, IT'S VERY CLEAR THAT THE TO, THE FROM, THE CALL-ID, AND THE

18  CONTACT ARE CLASSIFIED AS END-TO-END HEADERS, AND ARE A MUST,

19  FOLLOWS A MUST.

20     BUT THAT IS NOT FOR TODAY, YOUR HONOR.  THAT IS -- THAT'S

21  INFRINGEMENT.  OKAY.  BUT THAT'S WHEN YOU GET DOWN TO

22  INFRINGEMENT.  DOES THE PRODUCT HAVE -- PERFORM A MUST OR NOT

23  PERFORM A MUST?  IS IT COMPLIANT OR NOT COMPLIANT?  WE MERELY

24  RAISE IT BECAUSE THE STATEMENT HAS BEEN MADE AND WE WANTED TO

25  CLARIFY THE RECORD.  NEXT SLIDE.

1      ESN'S CONSTRUCTION, YOUR HONOR, COPIES THE DEFINITION OF

2  SIP PROXY SERVER OUT OF THE RFC BUT DOESN'T REFERENCE THE

3  REQUIREMENTS THAT ARE SET FORTH IN THE RFC.  AND THE

4  DEFINITIONS IN THE RFC ARE ONLY MEANT TO BE UNDERSTOOD, YOUR

5  HONOR, AND ANYONE OF SKILL IN THE ART WOULD KNOW THIS.  THEY

6  ARE ONLY MEANT TO BE UNDERSTOOD IN THE CONTEXT OF THE ENTIRE

7  RFC.  AND THEY REFER TO OTHER PHRASES AND THE FUNCTIONALITY OF

8  THOSE PHRASES IS SET FORTH IN THE RFC.  THEY DON'T -- THE

9  DEFINITIONS, YOU CAN'T PULL THEM OUT AND PUT THEM ON THEIR OWN

10 IN ISOLATION OUTSIDE THE RFC.  IF YOU DO THAT, THEN LITERALLY

11 THOSE DEFINITIONS READ ON THE COMPETING PROTOCOL, WHICH MAKES

12 NO SENSE.

13      SO THAT'S -- I FINISHED WITH SIP PROXY SERVER, YOUR

14 HONOR.  AND I'M SKIPPING OVER NOW THE PHRASE SIP PROXY SERVER

15 FOR DEVICES USING THE TELEPHONE LINE INTERFACE BECAUSE WE'VE

16 COVERED THAT.  OKAY.  SO I HAVE ONE MORE PHRASE, YOUR HONOR.

17 AND THIS IS THE SIP PROXY -- IT'S A BIG, LONG CLAUSE THAT ESN

18 WANTS THE COURT TO CONSTRUE.  AND THE CLAUSE IS: SIP PROXY

19 SERVER THAT MEDIATES ALL SIP COMMUNICATIONS OVER THE BROADBAND

20 NETWORK INTERFACE INVOLVING THE NON-SIP TELEPHONE.  AND YOU

21 CAN SEE IN THE RIGHT-HAND COLUMN YOU'VE GOT ABOUT A PAGE OF A

22 BOOK THERE FOR ESN'S CONSTRUCTION.

23      OUR POSITION, YOUR HONOR, IS WE DON'T NEED TO CONSTRUE

24 THIS PHRASE.  YOU KNOW, TO THE EXTENT THERE IS DISPUTES ABOUT

25 A SPECIFIC WORD OR PHRASE, WE'VE COVERED THEM.  WE ARE GOING

1    TO CONSTRUE SIP.  WE ARE GOING TO CONSTRUE SIP PROXY SERVER.

2    THE PARTIES HAVE AGREED TO BROADBAND NETWORK INTERFACE AND TO

3    NON-SIP TELEPHONE.

4         SO, WE DON'T NEED TO -- WE DON'T NEED TO CONSTRUE EVERY

5    SINGLE THING IN ALL THE CLAIMS.  AND HERE, YOU ARE ASKING FOR

6    -- YOU ARE TAKING A VERY LONG PHRASE AND THEN YOU ARE ASKING

7    FOR A CONSTRUCTION THAT'S MUCH LONGER.  THAT'S NOT GOING TO BE

8    HELPFUL FOR THE JURY.  IF THERE IS SOME POINT OF DISPUTE WITH

9    RESPECT TO A PARTICULAR WORD AND WHAT IT MEANS, THAT'S FINE.

10   AND I THINK THERE ARE.  AND WE HAVE ACTUALLY DEALT WITH THOSE.

11   SO THERE IS NO NEED TO CONSTRUE THIS BIG, LONG PHRASE.  LET'S

12   GO TO 72.

13        IN ADDITION, IF YOU WERE TO TAKE ESN'S CONSTRUCTION,

14   WE'VE GOT PROBLEMS WITH IT.  ESN'S CONSTRUCTION OMITS

15   LIMITATIONS IN THE EXPRESSED WORDS.  THE CLAIM REQUIRES THAT

16   THE DEVICE MEDIATES ALL IDENTIFIED SIP COMMUNICATIONS AND ITS

17   EXPRESSED WORDS.  THE CLAIM EXPLICITLY REQUIRES THAT EACH AND

18   EVERY SIP COMMUNICATION OVER THE BROADBAND INTERFACE THAT

19   INVOLVES THE NON-SIP TELEPHONE BE MEDIATED BY THE PROXY

20   SERVER.  ESN'S CONSTRUCTION DOESN'T ACCOUNT FOR THAT

21   LIMITATION.

22        IN ADDITION TO OMITTING A REQUIREMENT, ESN'S LENGTHY

23   PARAGRAPH ADDS CLAIM LIMITATIONS THAT AREN'T IN THE CLAIMS.

24   SO WE ARE IN SLIDE 73 NOW, YOUR HONOR.  ESN'S CONSTRUCTION

25   WOULD ADD THE LIMITATION, QUOTE, THE SIP PROXY SERVER MUST

1    CONTROL SIP TELEPHONE CALL SESSIONS INVOLVING THE NON-SIP

2    TELEPHONE BY (1) MAKING SIP SIGNALING EVENTS AVAILABLE TO A

3    TELEPHONE CALL CONTROL FUNCTION AND (2) TRANSLATING E.164

4    NUMBERS INTO IP ADDRESSES (AS REQUIRED TO ESTABLISH SIP CALL

5    SESSIONS).

6         YOU KNOW, THAT'S NOT IN THAT SENTENCE.  THAT'S NOT IN

7    THAT CLAUSE.  THEY ARE JUST ADDING -- ADDING THE SENTENCE ON.

8    WHAT'S THEIR SUPPORT FOR THAT?  WELL, THEY CITE THE PATENT'S

9    DESCRIPTION OF ONE EMBODIMENT OF THE SIP PROTOCOL STACK AND

10   THE DNS SERVER FOR THIS LONG, LENGTHY SENTENCE.  BUT THE

11   EMBODIMENTS CAN'T BE IMPORTED, AS YOUR HONOR KNOWS, INTO THE

12   CLAIMS.

13        AND IN FACT IF YOU LOOK AT THE DESCRIPTION, THEIR

14   CITATION TO THIS PREFERRED EMBODIMENT, THE PASSAGE MAKES NO

15   REFERENCE TO MAKING SIP SIGNALING EVENTS AVAILABLE TO A

16   TELEPHONE CALL CONTROL FUNCTION.  THE CITED PASSAGE STATES

17   THAT THE DNS SERVER, NOT THE PROXY SERVER, TRANSLATES E.164

18   DIALING NUMBERS INTO IP ADDRESSES.  SO EVEN THE -- EVEN THE

19   PREFERRED EMBODIMENT, WHICH YOU ARE NOT SUPPOSED TO IMPORT

20   INTO THE CLAIMS IN THE FIRST PLACE, EVEN IF YOU ASSUME THAT'S

21   OKAY, IT DOESN'T SUPPORT THE NOTION OF ADDING THE LIMITATIONS

22   THAT THEY ARE TALKING ABOUT.

23        SO IN SUMMARY ON THIS TERM, WE THINK THAT THE COURT

24   SHOULD JUST CONCLUDE THE PHRASE DOESN'T NEED TO BE CONSTRUED.

25   AND TO THE EXTENT THERE IS PROBLEMS WITH PARTICULAR MEANINGS

1   OF PARTICULAR WORDS, IT'S ALREADY BEEN BROUGHT TO THE COURT'S

2   ATTENTION AND THE COURT IS GOING TO RULE ON THOSE PARTICULAR

3   WORDS.  THANK YOU, YOUR HONOR.

4           THE COURT: THANK YOU.  BRIEF REPLY COMMENTS.

5           MR. MCANDREWS: YES, YOUR HONOR.  THIS SLIDE ACTUALLY

6   IS -- I AM GOING TO JUMP AROUND A LITTLE BIT, SO PAY NO

7   ATTENTION TO THIS SLIDE FOR THE TIME BEING.  I WANT TO START

8   WITH COUNSEL REFERENCED AN *LG* CASE AND SUGGESTED THAT THE

9   FEDERAL CIRCUIT HAS STATED THAT A SPECIFICATION IS TO BE

10  CONSIDERED INTRINSIC EVIDENCE.  YOUR HONOR, THAT -- THAT CASE,

11  AS FAR AS WE CAN TELL, HAS NOT PREVIOUSLY BEEN CITED BY CISCO.

12  AND WE'D LIKE TO HAVE AN OPPORTUNITY TO REVIEW THAT CASE AND,

13  IF NECESSARY, SUBMIT A SHORT BRIEF ON THAT POINT.  I DON'T

14  KNOW THAT IN THE OVERALL SCHEME OF THINGS WHETHER IT'S

15  CONSIDERED INTRINSIC EVIDENCE OR EXTRINSIC EVIDENCE IS ALL

16  THAT IMPORTANT, BUT WE'LL TAKE A LOOK AT IT AND IF WE FEEL A

17  RESPONSE IS NECESSARY --

18          THE COURT: WELL, I MEAN THE CASE I AM ASSUMING

19  SPEAKS FOR ITSELF BUT --

20          MR. MCANDREWS: OKAY.

21          THE COURT:  -- I GUESS IF YOU LOOK AT IT AND

22  CONSIDER ADDITIONAL BRIEFING IS NEEDED, THEN YOU NEED TO SEEK

23  PERMISSION AND TELL ME WHY YOU FEEL IT'S NECESSARY.

24          MR. MCANDREWS: WE DO NOT HAVE A BURNING DESIRE TO

25  FILE ANY ADDITIONAL PAPERS IN THIS CASE BEYOND WHAT'S

1    NECESSARY.  SO IT WOULD ONLY BE IF THEY FLAT OUT

2    MISREPRESENTED THE CASE AND IT'S IN A WAY THAT WE DON'T FEEL

3    THE COURT CAN SORT OUT.

4           THE COURT: I GUESS WHEN WE READ THE CASE, IF IT'S

5    BEEN MISREPRESENTED, WE'LL RECOGNIZE THAT.

6           MR. MCANDREWS: OKAY.  NOW ON THE MAIN POINT, WE

7    DON'T DISPUTE THAT THE RFCS ON SIP WOULD BE WHERE ONE OF SKILL

8    IN THE ART WOULD GO TO DETERMINE WHETHER IT'S SIP.  THEIR --

9           THE COURT: WELL, DOES THIS RELIEVE YOUR CONCERNS ANY

10   THAT IF LANGUAGE WERE INCLUDED IN ACCORDANCE WITH THE

11   MANDATORY LANGUAGE OF RFC 2543, SUCH AS SHALL, MUST?

12          MR. MCANDREWS: IN GENERAL THE -- THAT WOULD CORRECT

13   THE PROBLEM WITH THE LANGUAGE IN ISOLATION, IN ACCORDANCE

14   WITH.  IT WOULD CORRECT IT FOR THE MOST PART, ALTHOUGH WE FEEL

15   THAT IT WOULD BE APPROPRIATE TO INSTRUCT THE JURY THAT BECAUSE

16   THESE ARE RFCS IN A DRAFT STAGE THAT IT WOULD BE UNDERSTOOD

17   THAT THERE WOULD ONLY BE SUBSTANTIAL COMPLIANCE.  AND EVEN

18   CISCO AND THEIR EXPERT UNDERSTANDS THAT TO BE --

19          THE COURT: WELL, IS THAT AN ISSUE FOR JURY CHARGE

20   TIME OR CLAIM CONSTRUCTION?

21          MR. MCANDREWS: WELL, I FEEL IT'S -- GRANTED, YOUR

22   HONOR, IF THERE ISN'T PERFECT COMPLIANCE WE HAVE A DOCTRINE OF

23   EQUIVALENTS TO FALL BACK ON, BUT IN THIS PARTICULAR SITUATION

24   I BELIEVE THAT THE LITERAL LANGUAGE OF THE CLAIM LEAVES SOME

25   ROOM FOR SUBSTANTIAL COMPLIANCE AS OPPOSED TO TO-THE-LETTER

1  100 PERCENT COMPLIANCE.  AND IT'S FOR TWO REASONS.  NUMBER

2  ONE, IT IS A DRAFT STANDARD.  AND IT IS -- IT'S A DRAFT

3  STANDARD PROPOSED AS A REQUEST FOR COMMENTS THAT EXPLICITLY

4  ASK FOR PARTIES TO GO OUT AND BEGIN IMPLEMENTING, TRY THINGS

5  DIFFERENT WHILE THEY ARE IN THE PROCESS OF TRYING TO FIGURE

6  OUT WHAT IS THE BEST STANDARD THAT THE IETF SHOULD ULTIMATELY

7  REACH, AND SO THERE IS AN UNDERSTANDING OF SUBSTANTIAL

8  COMPLIANCE.

9       IN FACT, CISCO AND THEIR EXPERT IN THEIR PAPERS

10  REFERENCE, I'M GOING TO USE A TERM HERE THAT MAY NOT BE THE

11  EXACT TERM OF ART, BUT THERE IS ESSENTIALLY SIP BAKE-OFFS.

12  IT'S LIKE A RIB CONTEST FOR PEOPLE THAT MAKE SIP THINGS.  AND

13  THEY GET TOGETHER IN THESE BIG GROUPS AND THEY START

14  CONNECTING THEIR EQUIPMENT.  THEY GET INTO A BIG ROOM LIKE

15  THIS AND THEY'VE GOT LAWYERS RUNNING ALL OVER THE PLACE AND

16  THEY GO ABOUT TRYING TO DETERMINE WHETHER THEIR EQUIPMENT

17  INTEROPERATES WITH OTHER EQUIPMENT.  AND THE REASON FOR THAT

18  IS BECAUSE THEY UNDERSTAND THAT WHEN YOU GO ABOUT IMPLEMENTING

19  THESE DRAFT STANDARDS THAT ARE PROPOSED IN RFCS, THERE WILL

20  NOT BE 100 PERCENT TO THE LETTER COMPLIANCE EVEN WITH THE

21  IMPERATIVES.  AND SO THEY HAVE THESE TO TRY TO FIGURE OUT IF

22  THE PRODUCTS WORK TOGETHER.

23       THE COURT: I'M NOT SURE IF THAT ANSWERS MY QUESTION

24  WHETHER THIS IS A MATTER OF AN ISSUE FOR CHARGE, THE JURY

25  CHARGE OR FOR CLAIM CONSTRUCTION.  WHAT --

1          MR. MCANDREWS: I SUPPOSE IT'S -- SINCE, YOUR HONOR,

2   I'M NOT FAMILIAR WITH HOW YOU SEPARATE THE CLAIM CONSTRUCTION

3   FROM THE JURY CHARGE, I SUPPOSE IT'S A MATTER THAT SHOULD BE

4   ADDRESSED.

5          THE COURT: OKAY. BY EITHER CLAIM CONSTRUCTION OR

6   JURY CHARGE?

7          MR. MCANDREWS: OR JURY CHARGE, CORRECT, YOUR HONOR.

8          THE COURT: VERY WELL.

9          MR. MCANDREWS: NOW, THEY DID CITE TO A CASE THAT YOU

10  WERE THE AUTHOR OF AND THEY SUGGESTED THAT BECAUSE THE CLAIM

11  LANGUAGE SAID HTTP COMPLIANT THAT THE CONSTRUCTION WAS YOU

12  HAVE TO BE COMPLIANT WITH HTTP.  WELL, THAT'S BECAUSE THE

13  CLAIM LANGUAGE ITSELF SAID HTTP COMPLIANT.  SO I'M NOT CERTAIN

14  THAT THE CASE THEY CITED FROM YOUR HONOR IS NECESSARILY

15  RELEVANT TO THE ISSUE WE HAVE HERE BECAUSE THE CLAIM LANGUAGE

16  ITSELF TOLD YOU IT HAD TO BE COMPLIANT.

17         NOW JUST A FREE -- I JUST HAVE A FEW BRIEF REBUTTAL

18  POINTS ON A COUPLE OF THE INDIVIDUAL ELEMENTS HE WENT THROUGH.

19  SO ON SIP USER AGENT, CISCO'S COUNSEL MADE THE STATEMENT THAT

20  OUR CONSTRUCTION THAT REFERS TO AN ENDPOINT IS AN

21  INAPPROPRIATE ATTEMPT TO START ARGUING VALIDITY OF THE PATENT.

22  AND HE STATED THAT IT HAD NO BASIS IN THE INTRINSIC EVIDENCE.

23  BUT, YOUR HONOR, THAT IS NOT ENTIRELY CORRECT.  THE INTRINSIC

24  EVIDENCE RIGHT HERE, COLUMN 14, LINE 2 THROUGH 7 OF THE '519

25  PATENT SAYS, FOR EXAMPLE, IF THE CALLING PARTY IS A SIP

1    NETWORK SIGNALING ENDPOINT (SIP USER AGENT).  SO THE INTRINSIC

2    EVIDENCE USES THOSE TERMS SYNONYMOUSLY.

3         ALSO IN THE RFC, THE DRAFT SIP STANDARD, IT REFERS TO AN

4    INTERNET ENDPOINT ALSO CALLED A USER AGENT.  SO THERE IS

5    SUPPORT IN BOTH THE INTRINSIC AND EXTRINSIC EVIDENCE FOR A SIP

6    USER AGENT BEING DEFINED AS AN ENDPOINT.

7         NOW ON THE ISSUE OF SIP AGENTS, AGAIN, CISCO FACES A HIGH

8    BURDEN.  THEY SUGGEST THAT BECAUSE YOU CAN'T FIND THE VERY

9    WORD SIP AGENT DEFINED IN THE SIP STANDARD, THEREFORE WE JUST

10   HAVE TO THROW UP OUR HANDS AND SAY WE DON'T KNOW WHAT IT

11   MEANS.  BUT CERTAINLY THEY MUST RECOGNIZE THAT ONE OF SKILL IN

12   THE ART IS NOT DEVOID OF COMMON SENSE.  THEY ARE NOT IGNORANT

13   OF COMMON USES OF THE ENGLISH LANGUAGE.  AND ONE OF SKILL IN

14   THE ART READING THE CLAIM UNDERSTANDS THAT THE COMMON USE OF

15   THE WORD AGENT IS THAT IT'S AN ENTITY THAT OPERATES ON BEHALF

16   OF ANOTHER.

17        CISCO'S COUNSEL SUGGESTED THAT THE WORD SIP AGENTS IS

18   UNBOUNDED BUT THAT'S NOT TRUE.  WE KNOW THAT IT'S SIP AND ALL

19   THE THINGS THAT ENTAILS BASED ON THE OTHER ELEMENTS WE'VE

20   DISCUSSED TODAY, AND WE KNOW THAT IT'S AN AGENT, THAT IT ACTS

21   ON BEHALF OF SOMETHING ELSE.  SO SIP AGENTS, THE TERM IS NOT

22   INSOLUBLY AMBIGUOUS.  WE DON'T BELIEVE THAT THERE IS ANY BASIS

23   FOR A FINDING THAT THAT TERM IS INDEFINITE.

24        FINALLY, ON SIP PROXY SERVER, THERE ARE A COUPLE OF

25   ARGUMENTS MADE.  ONE IS THAT THE ADDITIONAL SENTENCES OF ESN'S

1   PROPOSED CLAIM CONSTRUCTION ARE AGAIN NOT SUPPORTED BY THE

2   INTRINSIC OR EXTRINSIC EVIDENCE.  THEY SUGGESTED THAT WE JUST

3   MADE UP THOSE ADDITIONAL SENTENCES.  THAT'S NOT TRUE AT ALL.

4   IF I CAN FIND -- RIGHT HERE.  IF YOU RECALL, I MENTIONED THAT

5   AT COLUMN 62, LINE 30 THROUGH 45 THE '519 PATENT EXPRESSLY

6   INCORPORATES THE DEFINITION THAT COMES DIRECTLY OUT OF RFC

7   2543.

8        AND THIS DOES NOT JUST SAY THAT IT'S AN INTERMEDIARY

9   PROGRAM THAT ACTS AS BOTH A SERVER AND A CLIENT FOR PURPOSES

10  OF MAKING REQUESTS ON BEHALF OF OTHER CLIENTS.  IT INCLUDES

11  THE ADDITIONAL SENTENCES NEARLY WORD FOR WORD OF WHAT ARE

12  FOUND IN ESN'S PROPOSED CONSTRUCTION.

13       SO ESN'S PROPOSED CONSTRUCTION FINDS SUPPORT IN BOTH THE

14  INTRINSIC EVIDENCE AND THE EXTRINSIC EVIDENCE THAT CISCO

15  BELIEVES IS RELEVANT TO DETERMINING THESE ISSUES.

16       NOW, CISCO DID NOT ADDRESS THE ISSUE OF THE SENTENCE THAT

17  DID NOT INCLUDE AN IMPERATIVE.  INSTEAD, THEY'VE GONE TO A

18  SEPARATE PORTION.  AGAIN, THIS IS THE DANGER OF ON THE FLY

19  ALLOWING CISCO TO MAKE UP REQUIREMENTS.  THEY'VE GONE TO A

20  DIFFERENT SECTION ON HEADERS.  THIS IS THE FIRST TIME THEY'VE

21  MADE THAT ARGUMENT.  WE HAVEN'T HAD A CHANCE TO REVIEW EXACTLY

22  WHAT THOSE SECTIONS OF THE RFC RELATE TO.  BUT THEY NOW

23  SUGGEST THAT THERE IS A SEPARATE SECTION OF THE RFC THAT

24  RENDERS DR. BURGER'S OPINION THAT NEVER DISCUSSED THIS SECTION

25  OF THE RFC, THAT RENDERS HIS OPINION CORRECT.  DR. BURGER'S

1   OPINION DID NOT ADDRESS THAT SECTION, AND HE RELIED ON A

2   SENTENCE THAT CLEARLY DID NOT HAVE AN IMPERATIVE IN IT FOR THE

3   CREATION OF A SO-CALLED REQUIREMENT.

4       FINALLY, LAST POINT, CISCO SUGGESTED THAT AN ELEMENT THAT

5   IS SEPARATE AND APART FROM THE SIP PROXY SERVER DOES THE

6   TRANSLATION OF E.164 NUMBERS AS APPEARS IN ESN'S PROPOSED

7   CONSTRUCTION.  BUT THE LANGUAGE FROM THE PATENT ACTUALLY READS

8   -- I AM SORRY, YOUR HONOR.  THEY HAD QUOTED THE LANGUAGE. I

9   DIDN'T HAVE THAT WITH ME.

10      YOUR HONOR, I'M HAVING DIFFICULTY FINDING THE EXACT

11  LANGUAGE, BUT THEIR POINT WAS THAT THE SIP PROXY SERVER DID

12  NOT PERFORM THE E.164 TRANSLATION.  THEY SUGGESTED THAT

13  SOMETHING CALLED A DNS SERVER DID THAT TRANSLATION.  BUT THE

14  ACTUAL QUOTE FROM THE PATENT IS THAT THE SIP PROXY SERVER USES

15  THE DNS SERVER TO TRANSLATE.  SO IT'S ACTUALLY THE SIP PROXY

16  SERVER THAT'S DOING THE TRANSLATION.  IT'S JUST THAT IT RELIES

17  ON THE DNS SERVER.

18      SO WHILE THEY SUGGESTED THAT WE WERE TRYING TO

19  INCORPORATE A FUNCTION FROM SOMETHING OTHER THAN THE SIP PROXY

20  SERVER, IT ACTUALLY IS A FUNCTION OF THE SIP PROXY SERVER TO

21  DO THE E.164 NUMBER TRANSLATION.  THAT'S ALL I HAVE, YOUR

22  HONOR.

23          THE COURT: I APPRECIATE EVERYONE'S COMMENTS.  I WILL

24  TAKE THIS UNDER ADVISEMENT AND HAVE AN ORDER OUT AS QUICKLY AS

25  POSSIBLE.  DID THE PARTIES MAKE YOUR SLIDES FROM YESTERDAY'S

1  TUTORIAL AND TODAY A PART OF THE RECORD?  HAVE YOU?  IF NOT,

2  LET --

3          MR. VERHOEVEN: WE WILL.

4          MR. MCANDREWS: WE HAVE NOT MADE THEM PART OF THE

5  RECORD.  WE HAVE HANDED THEM UP.

6          THE COURT: SO WHY DON'T I JUST SIMPLY -- MRS.

7  MARTIN, I DON'T WANT TO BURDEN THE RECORD TOO MUCH.  IF

8  SOMEONE HAS ALREADY MADE THOSE A PART OF THE RECORD, WE'LL NOT

9  MAKE TWO COPIES A PART, BUT --

10          MR. VERHOEVEN: I DON'T THINK -- WE HAVEN'T FORMALLY

11  MADE THEM PART OF THE RECORD, HAVE WE?

12          MR. MCANDREWS: NOT FORMALLY PART OF THE RECORD.

13          THE COURT: WELL, THEN WHY DON'T WE MAKE THESE

14  COURT'S COPIES PART OF THE RECORD.

15      NOW WHERE ARE THE PARTIES ON THE DISCOVERY ON THE MOTION

16  TO DISMISS THAT WAS THE SUBJECT OF A RECENT TELEPHONE

17  CONFERENCE?  IS THAT MOVING ALONG?  IF SO, HOW LONG?  HOW MUCH

18  MORE TIME IS NEEDED?

19          XXXXXXXXXXXXXXX SEALED XXXXXXXXXXXXXXXXXXXXX

20  XXXXXXXXXXXXXXXXXXXXXXXXXX SEALED XXXXXXXXXXXXXXXXXXXXX

21  XXXXXXXXXXXXXXXXXXXXXXXXXXXX SEALED XXXXXXXXXXXXXXXXXXXXXXXXX

22  XXXXXXXXXXXXXXXXXXXXXXXXXXX SEALED XXXXXXXXXXXXXXXXXXXXXXXXX

23  XXXXXXXXXXXXXXXXXXXXXXXXXXX SEALED XXXXXXXXXXXXXXXXXXXXXXXXXX

24  XXXXXXXXXXXXXXXXXXXXXXXXXXX SEALED XXXXXXXXXXXXXXXXXXXXXXXXX

25  XXXXXXXXXXXXXXXXXXXXXXXXXXXX SEALED XXXXXXXXXXXXXXXXXXXXXXXXXXX

1  XXXXXXXXXXXXXXXXXXXXXXXXXXXX SEALED XXXXXXXXXXXXXXXXXXXXXXXXXXX

2  XXXXXXXXXXXXXXXXXXXXXXXXXXX SEALED XXXXXXXXXXXXXXXXXXXXXX

3  XXXXXXXXXXXXXXXXXXXXXXXXXXX SEALED XXXXXXXXXXXXXXXXXXXXXXXXXXXX

4  XXXXXXXXXXXXXXXXXXXXXXXXXXX SEALED XXXXXXXXXXXXXXXXXXXXXXXX

5  XXXXXXXXXXXXXXXXXXXXXXXXXXX SEALED XXXXXXXXXXXXXXXXXXXX

6  XXXXXXXXXXXXXXXXXXXXXXXXXXX SEALED XXXXXXXXXXXXXXXXXXXXX

7  XXXXXXXXXXXXXXXXXXXXXXXXXXX SEALED XXXXXXXXXXXXXXXXXXXXX

8  XXXXXXXXXXXXXXXXXXXXXXXXXXX SEALED XXXXXXXXXXXXXXXXXXXXXXXXXX

9  XXXXXXXXXXXXXXXXXXXXXXXXXXX SEALED XXXXXXXXXXXXXXXXXXXXXXXXXX

10 XXXXXXXXXXXXXXXXXXXXXXXXXXX SEALED XXXXXXXXXXXXXXXXXXXXXXXXX

11 XXXXXXXXXXXXXXXXXXXXXXXXXXX SEALED XXXXXXXXXXXXXXXXXXXXXXXXXX

12 XXXXXXXXXXXXXXXXXXXXXXXXXXX SEALED XXXXXXXXXXXXXXXXXXXXXXXXXX

13 XXXXXXXXXXXX

14        THE COURT: WELL, I DON'T WANT AN ARGUMENT.  I DIDN'T

15 ASK FOR A SPEECH.  I ASKED FOR A --

16        MR. MCANDREWS: BUT WE'RE HAVING SOME DIFFICULTY,

17 YOUR HONOR.  WE HOPE THAT WE ARE GOING TO BE DONE IN THE 60

18 DAYS THE COURT ALLOWED IT.

19        THE COURT: YEAH.  WELL, AND I THINK I MADE IT CLEAR

20 TO THE PARTIES, QUITE CLEAR IN THE CONFERENCE CALL THAT I

21 DON'T WANT A BUNCH OF PROBLEMS. YOU KNOW WHAT YOU ARE GOING TO

22 RELY ON TO SUPPORT THIS MOTION TO DISMISS.  THE PLAINTIFF IS

23 ENTITLED TO DISCOVERY ON THOSE ISSUES AND I AM EXPECTING THE

24 PARTIES TO WORK THROUGH THIS.  IF YOU DON'T, I WANT THIS

25 BROUGHT TO MY ATTENTION BY WAY OF MOTION, AND THE LOSING PARTY

1   WILL FACE POSSIBLE SANCTIONS IF THE COURT'S INSTRUCTIONS HAVE

2   NOT BEEN FOLLOWED.  SIMPLE AS THAT --

3           MR. VERHOEVEN: UNDERSTOOD, YOUR HONOR.

4           THE COURT:  -- FROM BOTH SIDES.

5           MR. VERHOEVEN: UNDERSTOOD, YOUR HONOR.

6           THE COURT: YOU KNOW WHAT YOU NEED, WHAT YOU'RE

7   ENTITLED TO.  YOU KNOW WHAT THEY SHOULD BE ABLE TO HAVE

8   BENEFIT OF.  SO I WANT THIS DISCOVERY COMPLETED.  I WANT IT

9   COMPLETED TIMELY.  I AM HERE FOR DISPUTES, BUT YOU BETTER MAKE

10  SURE THEY ARE GOOD FAITH DISPUTES, BOTH SIDES.

11          MR. VERHOEVEN: UNDERSTOOD, YOUR HONOR.

12          THE COURT: NOW, HOW MUCH TIME REMAINS UNTIL THE

13  DISCOVERY -- I DON'T RECALL WHEN WE HAD THAT CONFERENCE.  IT'S

14  MY RECOLLECTION THAT ABOUT 60 DAYS WAS NEEDED.  SO WHEN DOES

15  THAT RUN?

16          MR. MCANDREWS: AND IT WOULD BE UP ON JULY 19TH AND

17  YOUR HONOR REQUESTED THAT WE FILE OUR OPPOSITION BRIEF ON JULY

18  19TH AS WELL.

19          THE COURT: IF YOU ARE HAVING PROBLEMS ON SOME OF

20  THESE ISSUES, I WOULD SUGGEST YOU ARE ALL HERE, MEET-AND-

21  CONFER AND TRY AND WORK THROUGH THEM.  IF YOU CAN'T WORK

22  THROUGH THEM, FILE YOUR APPROPRIATE MOTION.

23      WE WILL BE IN RECESS.

24      (ADJOURNED AT 11:48 A.M.)

25

1

2

3

4                   REPORTER'S CERTIFICATION

5         I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM

6   THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

7         DATED THIS 22ND DAY OF JUNE, 2009

8

9                               ___/S/LIBBY CRAWFORD___

10                              LIBBY CRAWFORD, CSR

11                             OFFICIAL COURT REPORTER

12

13

14

15

16

17

18

19

20

21

22

23

24

25